No. 23-50885

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

UNITED STATES, ET AL.

Plaintiffs-Appellees,

v.

WARREN KENNETH PAXTON, ET AL.,
Defendant-Appellants.

————————

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division
USDC No. 5:21-cv-0844-XR

————————

**PLAINTIFFS' RESPONSE TO DEFENDANT'S EMERGENCY**
**MOTION TO STAY DISTRICT COURT ORDER AND**
**PERMANENT INJUNCTION PENDING APPEAL**

SUBMITTED BY:

Hani Mirza
hani@texascivilrightsproject.org
Zachary Dolling
Zach@texascivilrightsproject.org
Sarah Chen
sarah@texascivilrightsproject.org
Veronikah Warms
veronikah@texascivilrightsproject.org
**TEXAS CIVIL RIGHTS**
**PROJECT**
1405 Montopolis Drive
Austin, Texas 78741
(512) 474-5073 (Telephone)
(512) 474-0726 (Facsimile)

Thomas Buser-Clancy
tbuser-clancy@aclutx.org
Edgar Saldivar
esaldivar@aclutx.org
Savannah Kumar
skumar@sclutx.org
Ashley Harris
aharris@aclutx.org
**ACLU FOUNDATION OF**
**TEXAS, INC.**
5225 Katy Freeway, Suite 350
Houston, Texas 77007
(713)942-8146 (Telephone)
(713) 642-6752 (Facsimile)

Adriel I. Cepeda Derieux*
acepedaderieux@aclu.org
Ari Savitzky*
Asavitzky@aclu.org
Sophia Link Lakin*
slakin@aclu.org
Dayton Campbell-Harris
Dcampbell-harris@aclu.org
**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**
125 Broad Street, 18th Floor
New York, NY 10004
(212) 284-7334 (Telephone)

Susan Mizner
smizner@aclu.org
**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**
3696 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (Telephone)

Brian Dimmick
bdimmick@aclu.org
**AMERICAN CIVIL
LIBERTIES UNION
FOUNDATION**
915 15th Street NW
Washington, DC 20005
(202) 731-2395 (Telephone)

Jerry Vattamala
jvattamala@aaldef.org
Susanna Lorenzo Giguere
Slorenzo-giguere@aaldef.org
Patrick Stegemoeller
pstegemoeller@aaldef.org
**ASIAN AMERICAN LEGAL
DEFENSE AND EDUCATION
FUND**
99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (Telephone)
(212) 966-4303 (Facsimile)

Lucia Romano
Lromano@drtx.org
Christopher McGreal
Cmcgreal@drtx.org
Peter Hofer
phofer@drtx.org
**DISABILITY RIGHTS TEXAS**
2222 W. Braker Lane
Austin, Texas 78758
(512) 454-4816 (Telephone)
(512) 454-3999 (Facsimile)

Jessica Ring Amunson
jamunson@jenner.com
Alyssa G. Bernstein
abernstein@jenner.com
**JENNER & BLOCK LLP**
1099 New York Ave. NW, Ste 900
Washington, DC 20001
(202) 639-6000

Gregory D. Washington
gwashington@jenner.com
**JENNER & BLOCK LLP**
455 Market St. Suite 2100
San Francisco, CA 94105

*Attorneys for OCA-Greater Houston,*
*League of Women Voters of Texas, and REVUP-Texas*

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5TH CIR. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1. Jane Nelson, Defendant-Appellant
2. Ken Paxton, Defendant-Appellant
3. State of Texas, Defendant-Appellant
4. Brent Webster, Counsel for Defendants-Appellants
5. Aaron L. Nielson, Counsel for Defendants-Appellants
6. Lanora C. Pettit, Counsel for Defendants-Appellants
7. Allison M. Collins, Counsel for Defendants-Appellants
8. Ryan Glen Kercher, Counsel for Defendants-Appellants
9. Kathleen T. Hunker, Counsel for Defendants-Appellants
10. William D. Wassdorf, Counsel for Defendants-Appellants
11. League of Women Voters of Texas, Plaintiff-Appellee
12. REVUP-Texas, Plaintiff-Appellee
13. OCA-Greater Houston, Plaintiff-Appellee
14. Texas Civil Rights Project, Counsel for Plaintiffs-Appellees
15. American Civil Liberties Union Foundation, Counsel for Plaintiffs-Appellees
16. ACLU Foundation of Texas, Inc., Counsel for Plaintiffs-Appellees
17. Disability Rights Texas, Counsel for Plaintiffs-Appellees
18. Jenner & Block LLP, Counsel for Plaintiffs-Appellees
19. Asian American Legal Defense and Education Fund, Counsel for Plaintiffs-Appellees
20. Zachary Dolling, Counsel for Plaintiffs-Appellees

21. Hani Mirza, Counsel for Plaintiffs-Appellees
22. Sarah Chen, Counsel for Plaintiffs-Appellees
23. Veronikah Warms, Counsel for Plaintiffs-Appellees
24. Thomas Buser-Clancy, Counsel for Plaintiffs-Appellees
25. Edgar Saldivar, Counsel for Plaintiffs-Appellees
26. Savannah Kumar, Counsel for Plaintiffs-Appellees
27. Ashley Harris, Counsel for Plaintiffs-Appellees
28. Adriel I. Cepeda Derieux, Counsel for Plaintiffs-Appellees
29. Ari Savitzky, Counsel for Plaintiffs-Appellees
30. Sophia Lin Lakin, Counsel for Plaintiffs-Appellees
31. Dayton Campbell-Harris, Counsel for Plaintiffs-Appellees
32. Lucia Romano, Counsel for Plaintiffs-Appellees
33. Peter Hofer, Counsel for Plaintiffs-Appellees
34. Christopher McGreal, Counsel for Plaintiffs-Appellees
35. Susan Mizner, Counsel for Plaintiffs-Appellees
36. Brian Dimmick, Counsel for Plaintiffs-Appellees
37. Jessica Ring Amunson, Counsel for Plaintiffs-Appellees
38. Alyssa G. Bernstein, Counsel for Plaintiffs-Appellees
39. Gregory D. Washington, Counsel for Plaintiffs-Appellees
40. Jerry Vattamala, Counsel for Plaintiffs-Appellees
41. Susana Lorenzo-Giguere, Counsel for Plaintiffs-Appellees
42. Patrick Stegemoeller, Counsel for Plaintiffs-Appellees
43. Jason Lee, Counsel for Plaintiff-Appellee United States
44. Tovah Calderon, Counsel for Plaintiff-Appellee United States
45. Daniel Joshua Freeman, Counsel for Plaintiff-Appellee United States
46. Harris County Republican Party, Intervenors-Appellants
47. Dallas County Republican Party, Intervenors-Appellants
48. Republican National Committee, Intervenors-Appellants
49. National Republican Senatorial Committee, Intervenors-Appellants
50. National Republican Congressional Committee, Intervenors-Appellants
51. John M. Gore, Counsel for Intervenors-Appellants

52. E. Stewart Crosland, Counsel for Intervenors-Appellants
53. Louis J. Capozzi, Counsel for Intervenors-Appellants
54. Ryan M. Proctor, Counsel for Intervenors-Appellants
55. Jones Day, Counsel for Intervenors-Appellants
56. Gregory W. Abbott, Defendant
57. Liza Wise, Defendant
58. Kim Ogg, Defendant
59. Jose Garza, Defendant
60. John Creuzot, Defendant
61. Jacquelyn Callanen, Defendant
62. Yvonne Ramon, Defendant
63. Michael Scarpello, Defendant
64. Dana DeBeauvior, Defendant
65. Mi Familia Vota
66. Houston Area Urban League
67. Delta Sigma Theta
68. Arc of Texas
69. La Union del Pueblo Entero
70. Friendship-West Baptist Church

Respectfully submitted this 11th day of December 2023.

/s/    *Hani Mirza*

Texas Bar Number: 24083512
Telephone: 972-333-9200 ext. 171
Attorney for Plaintiffs-Appellees

# TABLE OF CONTENTS

INTRODUCTION ................................................................................1

BACKGROUND ................................................................................2

I.  Senate Bill 1 ...........................................................................2

II. Procedural History ...............................................................4

ARGUMENT ....................................................................................5

I.  State Defendants Fail To Make A Strong Showing Of
Likelihood Of Success On The Merits .......................................5

   A. S.B. 1's Challenged Provisions Violate the Plain Language of the
      Materiality Provision. ...........................................................6

   B. HAVA Is Irrelevant Here ........................................................13

   C. The Materiality Provision Is Not Limited to Racial Discrimination,
      Voter Registration, or Permanent Disenfranchisement .................14

   D. Defendant SOS Can Enforce The District Court's Injunction. ......20

II. The Remaining Factors Weigh Against A Stay ........................21

   A. OCA Plaintiffs and Voters Will Be Harmed By The Stay .............21

   B. *Purcell* Does Not Apply ........................................................22

CONCLUSION ................................................................................26

# TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Ali v. Fed. Bureau of Prisons,*
   552 U.S. 214 (2008)..............................................................17

*Bostock v. Clayton Cnty., Ga.,*
   140 S. Ct. 1731 (2020)..........................................................15

*Broyles v. Texas,*
   618 F. Supp. 2d 661 (S.D. Tex. 2009) .................................15

*City of Boerne v. Flores,*
   521 U.S. 507 (1997)..............................................................16

*City of Mobile, Ala. v. Bolden,*
   446 U.S. 55 (1980)................................................................15

*Fla. State Conf. of N.A.A.C.P. v. Browning,*
   522 F.3d 1153 (11th Cir. 2008)................................ 13, 14, 15

*In re Ga. Senate Bill 202,*
   No. 1:21-mi-55555-JPB, 2023 WL 5334582 (N.D. Ga. Aug.
   18, 2023)................................................................................13

*Gonzaga Univ. v. Doe,*
   536 U.S. 273 (2002)..............................................................16

*Health & Hosp. Corp. of Marion Cnty. v. Talevski,*
   599 U.S. 166 (2023)..............................................................16

*Jacksonville Branch of NAACP v. City of Jacksonville,*
   No. 22-13544, 2022 WL 16754389 (11th Cir. Nov. 7, 2022)...............22

*Kirksey v. City of Jackson,*
   663 F.2d 659 (5th Cir. 1981)................................................15

*League of Women Voters of Ark. v. Thurston*,
  5:20-cv-05174, 2021 WL 5312640 (W.D. Ark. Nov. 15,
  2021) ................................................................................ 7

*Melot v. Bergami*,
  970 F.3d 596 (5th Cir. 2020) ............................................ 17

*Merrill v. Milligan*,
  142 S. Ct. 879 (2022) (Kavanaugh, J., concurring) ..................... 22, 23

*Migliori v. Cohen*
  36 F.4th 153 (3d Cir. 2022) ............................................. 17

*Milligan v. Allen*,
  599 U.S. 1 (2023) ......................................................... 15

*Nev. Dep't of Hum. Res. v. Hibbs*,
  538 U.S. 721 (2003) ....................................................... 15

*Nken v. Holder*,
  556 U.S. 418 (2009) ..................................................... 5, 21

*OCA-Greater Hous. v. Tex.*,
  1:15-cv-679-RP, 2018 WL 2224082 (W.D. Tex. May 15,
  2018) .............................................................................. 20

*OCA-Greater Hous. v. Tex.*,
  1:15-cv-679-RP, 2022 WL 2019295 (W.D. Tex. June 6,
  2022) ........................................................................ 20, 21

*OCA-Greater Hous. v. Texas*,
  867 F.3d 604 (5th Cir. 2017) ........................................... 11

*Pa. State Conf. of the NAACP v. Schmidt*,
  No. 1:22-cv-339, 2023 WL 8091601 (W.D. Pa. Nov. 21,
  2023) .............................................................................. 13

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) .................................................... *passim*

*Robinson v. Ardoin,*
    37 F.4th 208 (5th Cir. 2022) ................................................ 22

*Schwier v. Cox,*
    340 F.3d 1284 (11th Cir. 2003) ............................................ 7

*Schwier v. Cox,*
    412 F. Supp. 2d 1266 (N.D. Ga. 2005) ................................ 10

*S.C. v. Katzenbach,*
    383 U.S. 301 (1966) ............................................................ 16

*Tesfamichael v. Gonzales,*
    411 F.3d 169 (5th Cir. 2005) .............................................. 17

*Tex. Democratic Party v. Abbott,*
    961 F.3d 389 (5th Cir. 2020) ................................................ 6

*Thomas v. Bryant,*
    919 F.3d 298 (5th Cir. 2019) ......................................... 5, 25

*U.S. Navy Seals 1-26 v. Biden,*
    27 F.4th 336 (5th Cir. 2022) ............................................... 21

*Vote.Org v. Callenan*
    39 F.4th 297 (5th Cir. 2022) ........................................ 11, 12

*Wash. Ass'n of Churches v. Reed,*
    492 F. Supp. 2d 1264 (W.D. Wash. 2006) .......................... 14

*Wise v. Circosta,*
    978 F.3d 93 (4th Cir. 2020) ................................................ 23

**Statutes**

42 U.S.C. § 1983 ..................................................................... 16

52 U.S.C. § 10101(a)(2) .................................................. 2, 15, 19

52 U.S.C. § 10101(a)(2)(B) ........................................... *passim*

52 U.S.C. § 10101(a)(2)(C) ...................................................... 19

52 U.S.C. § 10101(a)(3)(A) ................................................................... 11, 19

52 U.S.C. § 21083(a)(5)(A)(i)–(ii) ............................................................ 13

Civil Rights Act of 1964 Section 1971 ........................................................ 2

Help America Vote Act, 52 U.S.C. § 20901 ..................................... 13, 14

Tex. Elec. Code § 11.002(a) ..................................................................... 18

Tex. Elec. Code § 31.003 .......................................................................... 20

Tex. Elec. Code § 86.001 .......................................................................... 10

Tex. Elec. Code § 86.007 ................................................................... 23, 24

Tex. Elec. Code § 87.041(b) ................................................................. 9, 10

Tex. Elec. Code § 87.0411(c) ................................................................... 24

## **INTRODUCTION**

Defendants Texas Secretary of State Jane Nelson, Texas Attorney General Warren Kenneth Paxton, and the State of Texas (collectively State Defendants) seek to stay a narrowly-tailored injunction of two unlawful provisions of the Texas Election Code that require officials to reject mail-ballot applications and exclude mail ballots submitted by registered, qualified voters based on number-matching errors or omissions that are immaterial to determining whether voters are qualified under Texas law to vote.

This Court should deny their Motion. After extensive discovery and motion practice, the district court issued a thorough summary judgment ruling and opinion based on undisputed facts. Defendants do not dispute any facts the district court relied on—including that in the short period of time the challenged provisions were in effect, they caused "pervasive confusion" and resulted in the disenfranchisement of tens of thousands of voters. State Defs'. Mot. and App. ("Mot.") 34–35. Instead, the Motion is based on rehashed legal theories and unsupported *Purcell* concerns. Courts around the country have rejected those legal theories and *Purcell* does not apply here because the injunction neither causes voter confusion

nor entails any administrative burden beyond simply opening and counting mail ballots.

## BACKGROUND

### I.    Senate Bill 1

On September 7, 2021, Texas Governor Greg Abbott signed Senate Bill 1 (S.B. 1) into law. Mot. 26. Plaintiffs OCA-Greater Houston, League of Women Voters of Texas, and REVUP-Texas (collectively OCA Plaintiffs) and the United States swiftly challenged the identification (ID) number-matching provisions of S.B. 1, Sections 5.07 and 5.13, as violating Section 1971 of the Civil Rights Act of 1964, now codified under 52 U.S.C. § 10101(a)(2).[1]

S.B. 1's number-matching provisions require qualified mail-ballot voters to supply either their driver's license or state ID number (DPS Number), or if the voter does not have a DPS Number, the last four digits of their social security number (SSN4). Mot. 28. The voter can check a box to indicate they do not have either form of ID. *Id.* Texas is required to keep a centralized voter registration list called the Texas Election Administration Management (TEAM) system, where each voter is

---

[1] Otherwise known as the "Materiality Provision."

associated with either a DPS number, SSN4, or, if they have neither, a voter unique identifier. Mot. 29.

Under S.B. 1, if the number the voter provides does not match the ID number in the TEAM database and they are unable to cure the mismatch, then a voter's mail-ballot application (ABBM) or mail-ballot is rejected. Mot. 32. Tens of thousands of Texas voters have had their ABBMs and/or mail ballots rejected for such mismatches during the 2022 Primary and General Elections. Mot. 34. Voters were often rejected, despite following the letter of law, because of flaws in the TEAM database entirely beyond their control. For instance, in January 2023, nearly 190,000 voters who had a DPS number did not have an associated DPS number in their TEAM record, and 90,000 had neither a DPS number nor an SSN4 in their TEAM record, despite having both numbers. Mot. 33–34. Additionally, about 2.4 million voters have only one of their multiple DPS numbers associated with their TEAM record. Mot. 34. It was thus undisputed that TEAM was riddled with "tens of thousands of errors, including over 60,000 DPS numbers inconsistent with DPS records and nearly 45,000 SSN4s inconsistent between the TEAM and DPS databases." *Id.*

## II.   Procedural History

The United States filed their amended complaint in November 2021, and OCA Plaintiffs filed their second amended complaint in January 2022. Mot. 36–37. State defendants filed motions to dismiss both claims, which were denied in relevant part. Mot. 37.

On May 26, 2023, Plaintiffs moved for summary judgment on the grounds that S.B. 1's number-matching provisions violated the Materiality Provision. *Id*. On August 17th, the district court issued a summary ruling granting the United States' motion and granting in part and denying in part OCA Plaintiffs' motion, and agreeing that the number-matching provisions were immaterial to a voter's qualification to vote. Mot. 38. On November 29th, the district court issued a Memorandum Opinion supplementing its August ruling. Mot. 26.

On December 1st, State Defendants filed a notice of appeal and filed a motion for a stay of the Opinion, requesting a decision by December 4th. P.App.A at 3. On December 4th, the district court denied the requested stay. P.App.A at 7. State Defendants filed this Motion two days later.

In violation of the Federal Rules of Appellate Procedure, State Defendants' Motion failed to state all the "reasons given by the district

court for" denying their motion to stay below. F. R. App. P. 8(a)(2)(A)(ii).

State Defendants also failed to provide the district court's order denying

their motion to stay below. *Id*. at 8(a)(2)(B)(iii). OCA Plaintiffs attach the

order. P.App.A.

This Court granted a temporary administrative stay on December

6th.

## ARGUMENT

The stay of a judgment pending appeal is "an extraordinary

remedy." *Thomas v. Bryant*, 919 F.3d 298, 303 (5th Cir. 2019). Four

factors guide this analysis:

> 1) whether the applicant has made a strong showing of
> likelihood to succeed on the merits; 2) whether the movant
> will be irreparably injured absent a stay; 3) whether issuance
> of a stay will substantially injure other interested parties; and
> 4) where the public interest lies.

*Id.*

## I.   State Defendants Fail To Make A Strong Showing Of Likelihood Of Success On The Merits

"It is not enough that the chance of success on the merits be better

than negligible." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Instead, a

"*likelihood* of success" is "a prerequisite" to granting the stay. *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 397 (5th Cir. 2020).

State Defendants cannot show such a likelihood here. The Materiality Provision expressly prohibits refusing to count a person's vote because of an immaterial error or omission on voting-related paperwork. 52 U.S.C. § 10101(a)(2)(B). S.B. 1's superfluous number-matching requirement for both the ABBM and the mail-ballot carrier envelope has resulted in the disenfranchisement of tens of thousands of registered and qualified Texas voters since S.B. 1's inception. Defendants cannot point to any reversible error in the district court's conclusion that refusing to allow Texans to vote based on this immaterial paperwork requirement violates federal law.

## A. S.B. 1's Challenged Provisions Violate the Plain Language of the Materiality Provision

The Materiality Provision prohibits

> deny[ing] the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

6

The statute applies in specific circumstances: where a person's right to vote is denied based on a minor error or omission on voting-related paperwork, if that error is unrelated to determining a voter's eligibility. *Id.* It prohibits states from "requiring unnecessary information" on voting-related paperwork from qualified voters as a condition to voting. *Schwier v. Cox*, 340 F.3d 1284, 1294, 1297 (11th Cir. 2003). Federal courts routinely apply the statute to bar "state election practices that increase the number of errors or omissions on papers or records related to voting" and thereby "disenfranchise otherwise qualified voters." *E.g., League of Women Voters of Ark. v. Thurston*, 5:20-cv-05174, 2021 WL 5312640, at *4 (W.D. Ark. Nov. 15, 2021).

The Materiality Provision applies here by its plain terms. The undisputed facts showed that under S.B. 1, thousands of Texas voters:

(1) are "den[ied] the right . . . to vote" (*i.e.*, because under S.B. 1, elections officials will reject voters' ABBMs pursuant to Section 5.07, or else reject their mail ballots such that they are not counted pursuant to Section 5.13),

(2) due to "an error or omission" (*i.e.*, a failure to write an ID number
that successfully matches a number in the voter's TEAM record, as
both Sections 5.07 and 5.13 require),

(3) "on [a] record or paper relating to any application, registration, or
other act requisite to voting" (*i.e.*, the ABBM or the mail-ballot
carrier envelope, both of which are required, voting-related
paperwork),

(4) where that error or omission is "not material in determining
whether such individual is qualified under State law to vote in such
election" (*i.e.*, because whether the voter can provide a number that
matches the number contained in their TEAM record undisputedly
has no bearing on whether they are qualified to vote in Texas).

52 U.S.C. § 10101(a)(2)(B).

State Defendant's arguments to the contrary are unavailing:

**First**, and with no citation to the record, State Defendants assert
that S.B. 1's number-matching requirement "is material to determining
whether an individual is qualified under State law because . . . it answers
whether the person seeking to vote is the relevant voter in the first place."
Mot. 12. State Defendants, and Republican Party Appellants-Intervenors

8

(GOP Intervenors) in a supporting brief, similarly assert that the ID number is used to prevent fraud. Mot. 13; GOP Br. in Support of Mot. (GOP Br.) 15–16.

The undisputed facts refute these assertions. The district court concluded, based on undisputed testimony from election officials, that "the DPS numbers and SSN4s required by S.B. 1 are not used to ensure that voters are qualified to vote or to cast a mail ballot under Texas law, to identify voters, or to flag potential fraud." Mot. 35; *see also* Mot. 56 ("[T]he undisputed evidence confirms that election officials do not use the ID numbers on ABBMs and [mail ballots] to confirm voters' identities but to reject their voting materials.").

Specifically, the district court found as a matter of undisputed fact that elections officials do not use the DPS number or SSN4 to ordinarily look up voter records, and Defendant SOS does not instruct election officials to do so. Mot. 35–36. Instead, as they did prior to S.B. 1, election officials use other information on mail-ballot materials—such as name, date of birth, and address—to look up voters; and officials verify a voter's identity using the signatures by which the voter attests to their identity and eligibility. *Id.* (citing Tex. Elec. Code § 87.041(b)(2)).

Indeed, on the undisputed facts presented, number matching *cannot* be used to ascertain a voter's identity, because

> to compare the DPS number or SSN4 on mail ballot materials with a voter's registration record, as S.B. 1 requires, officials must have *already discerned* the identity of the voter identified on [the voter-registration application].

Mot. 56 (citing Tex. Elec. Code §§ 86.001(f), 87.041(b)(8)).

State Defendants do not challenge the district court's conclusions based on undisputed facts in their Motion. Their unsupported assertions must be rejected. And even if the record did back up the assertion that number-matching somehow helps to prevent fraud (and it does not), a state's interest in preventing voter fraud "must yield to a qualified voter's right, under Section 101 . . . to have their ballot counted despite immaterial paperwork errors." Mot. 41 (citing *Schwier v. Cox*, 412 F. Supp. 2d 1266, 1276 (N.D. Ga. 2005), aff'd, 439 F.3d 1285 (11th Cir. 2006)).

**Second**, State Defendants suggest that the district court somehow "conflated the fundamental right to vote with a right to vote by mail," citing cases that stand for the irrelevant proposition that there is no constitutional right to vote by mail. Mot. 12. The district court did no such thing. To the contrary, it concluded that, "*[h]aving made mail ballot*

10

*voting available*, Texas is not permitted to refuse to count mail ballots solely because of an insignificant paperwork error." Mot. 63 (emphasis added).

The statute specifically defines "vote" as

> *all action* necessary to make a vote effective including, but not limited to . . . casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast.

52 U.S.C. §§ 10101(a)(3)(A), 10101(e) (emphasis added); *see also OCA-Greater Hous. v. Tex.*, 867 F.3d 604, 614–15 (5th Cir. 2017) (interpreting materially identical language in Section 208 of the Voting Rights Act as extending well beyond "the mechanical act of filling out the ballot sheet"). Defendants point to nothing in the statutory text and its capacious definition of voting that would carve out voting by mail or restrict the statute to in-person voting only.

**Third**, both State Defendants and GOP Intervenors wrongly assert that the district court's narrow injunction threatens all election regulations. Mot. 13; GOP Br. 16–18. Defendants repeatedly rely on a footnote from a non-precedential motions panel decision in *Vote.Org v. Callenan*, which stated "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies

the right of that individual to vote under" the Materiality Provision. 39 F.4th 297, 305 n.6 (5th Cir. 2022).

OCA Plaintiffs agree: *only* refusals to count a voter's ballot for *immaterial errors or omissions on voting-related records or paperwork* are actionable under the statute's plain terms. 52 U.S.C. § 10101(a)(2)(B). Other election rules (like regulations concerning failing to register, to show identification, to go to the right polling place, to vote at the right time, or overvoting the ballot) are not.

GOP Intervenors' attempt to identify other "paper-based" election rules that might run afoul of the Materiality Provision comes up short. For example, the Materiality Provision would not apply to prohibitions on overvoting a ballot (GOP Br. 17), because that error is not on some "paper" that is made "requisite to voting," but rather on the marking of the ballot itself. And it also may not apply to the failure to provide a voter's signature (GOP Br. 17) because, depending on the circumstances, a signature requirement *could* be considered material to determining whether a voter is qualified to vote. In the end, the main examples GOP Intervenors provide involve timely submitted mail ballots that were excluded based on superfluous paperwork requirements on the mail-

ballot envelope, like voters hand-writing their birth year or an arbitrary date. *See Pa. State Conf. of the NAACP v. Schmidt*, No. 1:22-cv-339, 2023 WL 8091601, at *34 (W.D. Pa. Nov. 21, 2023); *see also In re Ga. Senate Bill 202*, No. 1:21-mi-55555-JPB, 2023 WL 5334582, at *8 (N.D. Ga. Aug. 18, 2023).

## B.  HAVA Is Irrelevant Here

Relying on *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153 (11th Cir. 2008), State Defendants wrongly argue that the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901, *et seq.*, renders ID numbers *per se* material to determine voter eligibility. Mot. 13–14.

The district court correctly rejected this argument because HAVA concerns only voter registration, not procedures for voting by mail. Mot. 55. HAVA instructs states to assign voters unique identification numbers for purposes of constructing an electronic voter registration database, 52 U.S.C. 21083(a)(5)(A)(i)–(ii)—not to determine eligibility to vote.

> HAVA's matching requirement was intended as an administrative safeguard for "storing and managing the official list of registered voters," and not as a restriction on voter eligibility. This is evidenced by the requirement that a person who has no driver's license or social security number be given a unique identifying number, but not be matched, prior to registering to vote.

13

*Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1268–69 (W.D. Wash. 2006).

Further, although HAVA requires individuals to submit identification numbers when registering to vote, nothing in HAVA "require[s] that states authenticate these numbers by matching them against existing databases." *Browning*, 522 F.3d at 1174 & n.21; Mot. 28–30. As the district court found, HAVA's lack of an authentication requirement is "manifest in the thousands of errors in TEAM." Mot. 30. And, it cannot be that "a qualified voters' ability to guess the incorrect DPS number associated with [their] voter registration record in TEAM" is "material to [their] eligibility to vote." Mot. 55. HAVA imposes no such burden—and certainly not with respect to the mail-ballot process.

## C. The Materiality Provision Is Not Limited to Racial Discrimination, Voter Registration, or Permanent Disenfranchisement

State Defendants' atextual attempts to categorically limit the Materiality Provision's scope also fail. State Defendants argue that the Materiality Provision only bars denials of the right to vote that are racially discriminatory. Mot. 11–12. The statutory text could not be

clearer: the Materiality Provision protects "the right of *any individual* to vote" if "such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2) (emphasis added). The district court's faithful adherence to the text was exactly what is required by precedent.

> When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit.

*Bostock v. Clayton Cnty., Ga.*, 140 S. Ct. 1731, 1737 (2020).

And to the extent that State Defendants are obliquely suggesting that Congress lacked *authority* to craft the Materiality Provision in this fashion, that argument fails, too. Congress can and has enacted prophylactic, race-neutral laws curbing discrimination before. *E.g.*, *Nev. Dep't of Hum. Res. v. Hibbs*, 538 U.S. 721, 727–28 (2003); *Browning*, 522 F.3d at 1173.[2] Indeed, federal voting rights protections are the

---

[2] Defendants' intent argument relies exclusively on *Broyles v. Tex.*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009). The district court in *Broyles* mistakenly relied on *Kirksey v. City of Jackson*, 663 F.2d 659 (5th Cir. 1981) to support its understanding that the Materiality Provision requires showing intentional racial discrimination. But *Kirksey* involved claims under Section 2 of the Voting Rights Act, which were then subject to an intentional discrimination requirement under *City of Mobile, Ala. v. Bolden*, 446 U.S. 55, 60–61 (1980). *City of Mobile* was then abrogated by Congress. *See Milligan v. Allen*, 599 U.S. 1, 13 (2023).

paradigmatic example of permissible prophylactic legislation, enacted under the Fourteenth and Fifteenth Amendments.[3] *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997); *accord S.C. v. Katzenbach*, 383 U.S. 301, 324 (1966). The district court's analysis is consistent with that binding caselaw. Mot. 71–72.[4]

The plain language of the Materiality Provision also forecloses the GOP Intervenors' arguments that the statute only applies in the context of voter registration and qualification. GOP Br. 5–12. The Materiality

---

[3] In addition to its power to regulate federal elections under the Elections Clause, U.S. Const. art. I, § 4.

[4] In a footnote (Mot. 11 n.8), State Defendants argue that OCA Plaintiffs lack a private right of action to enforce the Materiality Provision. That is wrong (*see* Mot. 44 n.15), but regardless, OCA Plaintiffs still have a right to sue under Section 1983. *See* Am. Compl., ECF No. 200, at 45 (setting forth cause of action under 42 U.S.C. § 1983). A plaintiff proceeding under Section 1983 need only show that the federal law includes a private *right*; after that, Section 1983 presumptively supplies a remedy. *See, e.g.*, *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284–85 (2002). Here, there can be no doubt that the Materiality Provision safeguards "the right of any individual to vote in any election," thereby recognizing individual rights. 52 U.S.C. § 10101(a)(2)(B). That the United States can also enforce the Materiality Provision is of no moment at all:

> § 1983 can play its textually prescribed role as a vehicle for enforcing [federal] rights, even alongside a detailed enforcement regime that also protects those interests, so long as § 1983 enforcement is not 'incompatible' with Congress's handiwork.

*Health & Hosp. Corp. of Marion Cnty. v. Talevski*, 599 U.S. 166, 188–189 (2023); Mot. 44 n.15.

Provision prohibits denial of the right to vote based on immaterial errors or omissions "on *any* record or paper relating to any application, registration, *or other act requisite to voting*." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Limiting the statute's scope to papers relating to qualification determinations or voter registration itself would render the other listed categories (including the broad term "or other act requisite to voting") a dead letter. *Tesfamichael v. Gonzales*, 411 F.3d 169, 175 (5th Cir. 2005) ("[C]ourts should strive to give operative meaning to every word in a statute."); *see e.g.*, *Migliori v. Cohen*, 36 F.4th 153, 162 n.56 (3d Cir. 2022), *vacated as moot*, 143 S. Ct. 297 (Mem) (2022).[5] Nor could the *ejusdem generis* cannon limit the Materiality Provision's ambit, given the double usage of the expansive term, "any." *See, e.g.*, *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 225 (2008).

GOP Intervenors are similarly wrong to suggest that the Materiality Provision applies only when the erroneous or omitted information *is* used to determine any individual's qualifications to vote.

---

[5] *Migliori* was vacated as moot in a procedural order but remains "persuasive" authority. *See Melot v. Bergami*, 970 F.3d 596, 599 (5th Cir. 2020) (treating a "thoughtful opinion" from the Tenth Circuit as persuasive even though it had been vacated as moot).

GOP Br. 9–12. This misreads the statute, which prohibits refusing to count a person's vote based on a paperwork error or omission whenever the erroneous or omitted information "is *not* material" to determining a voter's qualifications. 52 U.S.C. § 10101(a)(2)(B) (emphasis added).[6] GOP Intervenors' attempt to limit the statute to instances where the error or omission *is* used in determining voter qualifications would allow all manner of irrelevant paperwork errors to be used to disenfranchise voters. GOP Intervenors' concession that the number-matching requirement is "not used to assess voter qualifications," GOP Br. 15, shows why summary judgment was properly granted: the number-matching requirement prevents voters' ballots from being accepted and counted based on paperwork errors and omissions that have nothing to do with a voter's qualifications—precisely what the Materiality Provision forbids.

---

[6] The qualifications to vote in Texas, which include criteria like age and residency, do not include possessing a particular ID number or being able to match it on a form. Tex. Elec. Code § 11.002(a); Tex. Const. art. VI, § 2(a). It was undisputed that, in the words of the Director of Defendant SOS's Elections Division, these "individual eligibility criteria" to vote "ha[ve] nothing to [d]o with the [DPS] number." Mot. 35.

GOP Intervenors fare no better in their argument that the Materiality Provision applies only where a voter is being permanently stripped of the right to vote or removed from the list of registered voters (and not, as here, where they have their vote thrown out for an arbitrary and immaterial paperwork mistake). GOP Br. 14–16. Again, the text forecloses that argument. The Materiality Provision applies to "all action necessary to make a vote effective," including any "action required by State law prerequisite to voting, casting a ballot, and having such ballot counted" in the election. 52 U.S.C. §§ 10101(a)(3)(A), 10101(e). It protects voters from having their votes excluded based on immaterial paperwork errors that are irrelevant to their qualification to vote "in such election." *Id.* at § 101010(a)(2)(B). As a matter of plain text, wholesale disqualification and removal from the voter rolls is not required.[7]

---

[7] GOP Intervenors also point (GOP Br. 10-12) to other provisions of Section 10101(a)(2) containing varied uses of the term "qualification," but none of those support their proposed limiting construction. For example, Section 10101(a)(2)(C) prohibits the use of literacy tests "as a qualification for voting in any election." 52 U.S.C. § 10101(a)(2)(C). But GOP Intervenors cite no support for their assertion that this usage limits the federal prohibition on literacy tests to voter qualifications, thereby allowing literacy tests at the polls or on other pre-voting paperwork. Nor do they explain how those separate provisions limit the very different language of the Materiality Provision.

### D.  Defendant SOS Can Enforce The District Court's Injunction

State Defendants claim that there are no actions that Defendant SOS is "legally authorized to take that will insure compliance with the district court's permanent injunction in a uniform manner." Mot. 14. That is inconsistent with the position State Defendants took below, where they sought a stay based on the Texas Election Code's uniformity provision, which requires Defendant SOS to "obtain and maintain uniformity in the application, operation, and interpretation of" the Texas Election Code and of election laws outside that code by "*prepar[ing]* detailed and comprehensive written directives and instructions relating to and based on" such laws, and then "*distribut[ing]* these materials" to election officials. Tex. Elec. Code § 31.003 (emphasis added); Pl.App.A at 5 & n.2; *see* State Defs.' Dist. Ct. Mot. for Stay, ECF 824, at 8.

Defendant SOS has taken exactly such action to obtain uniformity in other election cases. *See OCA-Greater Hous. v. Tex.*, 1:15-cv-679-RP, 2018 WL 2224082, at *5 (W.D. Tex. May 15, 2018) (ordering Defendant SOS to "distribute notice to all county elections departments clarifying that they are not to enforce [federally preempted Election Code provision]" and to "explicitly explain" correct rules); *see also OCA-Greater*

20

*Hous. v. Tex.*, 1:15-cv-679-RP, 2022 WL 2019295, at *5 (W.D. Tex. June 6, 2022) (same).

Regardless, State Defendants' argument here is a red herring, since the United States obtained relief and the injunction applies against "the entire *State of Texas*," including all its counties and other relevant legal subdivisions. P.App.A at 5.

## II. The Remaining Factors Weigh Against A Stay

### A. OCA Plaintiffs and Voters Will Be Harmed By The Stay

State Defendants argue that because they are "the appealing party, [their] interest and harm merge with that of the public." Mot. 17 (quoting *Veasey v. Abbott* 870 F.3d 387, 391 (5th Cir. 2017)). "That is mistaken. Those factors merge 'when the Government is the opposing party[,]' i.e., when the government is not the party applying for a stay." *U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022) (citing *Nken*, 556 U.S. at 435). In comparison, OCA Plaintiffs and voters face irreparable harm from a stay that far outweighs any harm State Defendants face in enforcing S.B. 1's unlawful provisions because those provisions restrict the fundamental right to vote. Mot. 73–75.

## B. *Purcell* Does Not Apply

State Defendants argue that a stay is also justified under *Purcell* principles because the district court's narrow injunction issued when early voting was occurring for the December 9th Runoff Election. The *Purcell* principle does not apply here.

The *Purcell* principle exists to minimize the risk of "voter confusion" or infeasible mandates that can result from changes in the voting process close to or during an election. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006); *see Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring). Absent a showing of such confusion or infeasibility, this Court and others have denied requests to stay lower court orders. *Robinson v. Ardoin*, 37 F.4th 208, 231 (5th Cir. 2022) (stay denied where movants had not "shown that the risks of chaos, distrust, or voter confusion at the heart of *Purcell* are present"); *Jacksonville Branch of NAACP v. City of Jacksonville*, No. 22-13544, 2022 WL 16754389, at *3 (11th Cir. Nov. 7, 2022) ("[W]e find *Purcell*'s heightened standard is not appropriate because the district court found the primary reason for applying that standard—risk of voter confusion—to be lacking."). And a stay on *Purcell* grounds is especially unwarranted where, as here, the

underlying merits are "clearcut" in light of plain statutory text, *supra* at 5–19, and the right to vote will be irreparably lost if a stay is granted, *supra* at 21. *See Merrill*, 142 S. Ct. at 881 (Kavanaugh, J., concurring).

As the district court correctly concluded, the *Purcell* principle is not implicated by the narrow injunction here. Mot. 75–76. From the voter's perspective, the injunction does not affect the experience of voting at all, and thus cannot cause voter confusion during the December 9th Runoff Elections or any other election. *See Wise v. Circosta*, 978 F.3d 93, 99 n.6 (4th Cir. 2020) (*Purcell* concerns not present where rule would not change voter behavior and "more votes cast by mail will be counted rather than discarded"). Indeed, far from creating voter confusion, the injunction puts an end to the "pervasive confusion" caused by S.B. 1's number-matching rejections of ABBMs and mail ballots. Mot. 35.

State Defendants' contrary arguments rely on speculation and other faulty premises and should be rejected.

**First**, State Defendants speculate that there will be voter confusion with respect to curing ABBMs. Mot. 16. However, this Court's administrative stay has mooted this issue. For the December 9th Runoff Election, mail ballots must be received by Monday, December 11th. Tex.

Elec. Code 86.007(d-1). Briefing on the Motion will conclude on Tuesday, December 12th—meaning that this Court's ruling on the Motion will issue after the deadline for receipt of mail ballots. As such, the time will have passed to cure a wrongly rejected ABBM and then timely submit a mail ballot. As the district court noted, "[n]othing in the Court's order requires election officials to accept untimely voting materials." P.App.A at 6.

**Second**, State Defendants imply that there will be unequal treatment of mail ballots because counties have already begun rejecting them. Mot. 8. But while counties may have begun contacting voters to initiate the cure process for their mail ballots, those cure processes mandate that ballots flagged for potential rejection will not be finally rejected until after December 15th—the sixth day following the election. Tex. Elec. Code § 87.0411(c). Accordingly, if this Court denies State Defendants' Motion and lifts its administrative stay, counties will be able to uniformly count any ballots that may have been set aside for failing to meet the number-matching requirement. Importantly, no one has even attempted to argue that merely opening and counting timely submitted mail ballots from qualified voters is infeasible—and it plainly is not. And because the December 9th Runoff Election has now been held and

tabulation has begun, it is clear that none of the contests are close enough for the excluded mail ballots to alter the results, further undercutting any suggestion of infeasibility or irreparable harm that might justify a stay from simply including qualified voters' ballots

**Third**, State Defendants argue that the injunction cannot be implemented uniformly in the Houston December 9th Runoff Election because only Harris County is a named county defendant, and the City of Houston encompasses other counties not named as defendants. Mot. 8. As explained above, this argument fails because of Defendant SOS's duties under the uniformity provision and because the injunction applies against Defendant State of Texas. *Supra* at 20–21.

**Finally**, even if they could be credited, State Defendants' *Purcell* arguments at best justify a short stay limited to the December 9th Runoff Election. State Defendants fail to show any risk of voter confusion with respect to the 2024 Primary or General Election, which are still months away. As such, to the extent this Court grants a stay, it should be limited in duration. *Thomas*, 919 F.3d at 315 ("Primary voting is more than four months away; the general election is more than seven months away. That

distance to the election means the potential for voter confusion that animates [*Purcell*] is absent.").

## <u>CONCLUSION</u>

The Court should lift the administrative stay, and deny State Defendants' request for stay. In the alternative, it should stay the injunction only as to those specific elections for which the Court believes State Defendants have met their burden.

Respectfully submitted this 11th day of December 2023,

<u>/s/ *Hani Mirza*</u>

**TEXAS CIVIL RIGHTS PROJECT**

Hani Mirza
Texas Bar No. 24083512
hani@texascivilrightsproject.org
Zachary Dolling
Texas Bar No. 24105809
zachary@texascivilrightsproject.org
Sarah Chen
California Bar No. 325327
schen@texascivilrightsproject.org
Veronikah Warms
Texas Bar No. 24132682
veronikah@texascivilrightsproject.org

1405 Montopolis Drive
Austin, TX 78741
512-474-5073 (Telephone)
512-474-0726 (Facsimile)

**ACLU FOUNDATION OF TEXAS, INC.**

Thomas Buser-Clancy
Texas Bar No. 24078344
tbuser-clancy@aclutx.org
Edgar Saldivar
Texas Bar No. 24038188
esaldivar@aclutx.org
Savannah Kumar
Texas Bar No. 24120098
skumar@aclutx.org
Ashley Harris
Texas Bar No. 24123238
aharris@aclutx.org

5225 Katy Freeway, Suite 350
Houston, TX 77007
Telephone: (713) 942-8146
Fax: (915) 642-6752

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Adriel I. Cepeda Derieux
acepedaderieux@aclu.org
Ari Savitzky
asavitzky@aclu.org
Sophia Lin Lakin
slakin@aclu.org
Dayton Campbell-Harris
dcampbell-harris@aclu.org

125 Broad St., 18th Floor
New York, NY 10004
(212) 284-7334

Susan Mizner
smizner@aclu.org

39 Drumm St.
San Francisco, CA 94111
(415) 343-0781 (phone)

Brian Dimmick
bdimmick@aclu.org

915 15th St. NW
Washington, DC 20005
(202) 731-2395 (phone)

**DISABILITY RIGHTS TEXAS**

Lucia Romano
Texas State Bar No. 24033013
lromano@drtx.org
Peter Hofer
Texas State Bar No. 09777275
phofer@drtx.org
Christopher Mcgreal
Texas State Bar No. 24051774
cmcgreal@drtx.org

2222 West Braker Lane
Austin, Texas 78758-1024
(512) 454-4816 (phone)
(512) 454-3999 (fax)

**ASIAN AMERICAN LEGAL DEFENSE
AND EDUCATION FUND**

Jerry Vattamala
jvattamala@aaldef.org
Susana Lorenzo-Giguere
slorenzo-giguere@aaldef.org
Patrick Stegemoeller
pstegemoeller@aaldef.org

99 Hudson Street, 12th Floor
New York, NY 10013
(212) 966-5932 (phone)
(212) 966 4303 (fax)

**JENNER & BLOCK LLP**

Jessica Ring Amunson
jamunson@jenner.com
Alyssa G. Bernstein
abernstein@jenner.com

1099 New York Ave. NW, Suite 900
Washington, DC 20001
(202) 639-6000

Gregory D. Washington
gwashington@jenner.com

455 Market St. Suite 2100
San Francisco, CA 94105

*COUNSEL FOR OCA PLAINTIFFS*

## Certificate of Compliance

Pursuant to FED. R. APP. P. 27(d) & 32(a) undersigned counsel certifies that this response complies with the type-volume limitations contained therein, and states that:

1. Exclusive of the portions exempted by FED. R. APP. P. 27(a)(2)(B), this Response contains 5,192 words;

2. This Response is printed in a proportionally spaced, serif typeface using Century Schoolbook 14-point font in text and Century Schoolbook 12-point font in footnotes produced by Microsoft Word software; and

3. Upon request, undersigned counsel will provide an electronic version of this Response and/or a copy of the word printout to the Court.

/s/ *Hani Mirza*

## Certificate of Service

On December 11, 2023, this Response was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned and is free of viruses.

/s *Hani Mirza*