No. 23-50885

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA, *et al.,*

*Plaintiffs-Appellees,*

v.

WARREN KENNETH PAXTON, *et al.,*

*Defendants-Appellants.*

## On Appeal from the United States District Court for the
## Western District of Texas, San Antonio Division

## REPUBLICAN PARTY APPELLANTS' REPLY BRIEF IN
## SUPPORT OF DEFENDANTS' MOTION TO STAY

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants Harris County Republican Party, Dallas County
Republican Party, Republican National Committee, National
Republican Senatorial Committee, and National Republican
Congressional Committee*

## CERTIFICATE OF INTERESTED PERSONS

**No. 23-50885,** *United States of America, et al. v. Warren Kenneth Paxton, et al.*

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Local Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

1.    Defendants-Appellants:

- Ken Paxton, Attorney General, State of Texas
- Jane Nelson, in her official capacity as Texas Secretary of State
- State of Texas

2.    Counsel for Defendants-Appellants:

- Aaron Lloyd Nielson
- Kathleen Theresa Hunker
- Ryan Glen Kercher
- Lanora Christine Pettit
- William D. Wassdorf

3.    Intervenors-Appellants:

- Harris County Republican Party
- Dallas County Republican Party
- Republican National Committee
- National Republican Senatorial Committee
- National Republican Congressional Committee

4.    Counsel for Intervenors-Appellants:

- John M. Gore
- E. Stewart Crosland
- Louis J. Capozzi III
- Ryan M. Proctor
- Jones Day

5.    Defendants Not Party to this Appeal:

- Gregory W. Abbott, in his official capacity as Governor of Texas
- Jose A. Esparza, in his official capacity as Deputy Secretary of the State of Texas
- Lupe C. Torres, in her official capacity as Medina County Elections Administrator
- Lisa Wise, in her official capacity as the El Paso County Elections Administrator
- Kim Ogg, Harris County District Attorney
- Joe Gonzales, Bexar County District Attorney
- Jose Garza, Travis County District Attorney
- John Creuzot, Dallas County District Attorney
- Ricardo Rodriguez, Jr.
- Yvonne Rosales, in her official capacity as El Paso County District Attorney
- Rebecca Guerrero
- Teneshia Hudspeth, Harris County Clerk, in her official capacity
- Dyana Limon-Mercado
- Isabel Longoria, Harris County Elections Administrator
- Jacque Callanen, in her official capacity as Elections Administrator of Bexar County
- Yvonne Ramon, in her official capacity as the Hidalgo County Elections Administrator
- Michael Scarpello, in his official capacity as the Dallas County Elections Administrator
- Dana DeBeauvoir, in her official capacity as the Travis County Clerk

6.     Plaintiffs-Appellees:

- United States of America
- OCA-Greater Houston
- League of Women Voters of Texas
- REVUP-Texas

7.     Counsel for Plaintiff-Appellee United States of America:

- Jason Lee
- Tovah Calderon
- Daniel Joshua Freeman

8.     Counsel for Plaintiffs-Appellees OCA-Greater Houston, League of Women Voters of Texas, and REVUP-Texas:

- Alyssa G. Bernsein
- Adriel I. Cepeda Derieux
- Brian Dimmick
- Andre Segura
- Jenner & Block, L.L.P.
- American Civil Liberties Union Foundation
- American Civil Liberties Union
- American Civil Liberties Union of Texas

9.     Plaintiffs Not Party to the Appeal:

- Mi Familia Vota
- Marlon Lopez
- Marla Lopez
- Paul Rutledge
- Houston Area Urban League
- Delta Sigma Theta
- Arc of Texas
- Jeffrey Clemmons
- La Union del Pueblo Entero
- Friendship-West Baptist Church

- Anti-Defamation League Austin, Southwest, and Texoma Regions
- Southwest Voter Registration Education Project
- Texas Impact
- Mexican American Bar Association of Texas
- Texas Hispanics Organized for Political Education
- Jolt Action
- William C. Velasquez Institute
- FIEL Houston Inc.
- James Lewin
- LULAC Texas
- Voto Latino
- Texas Alliance for Retired Americans
- Texas AFT

Dated: December 12, 2023          Respectfully submitted,

*/s/ John M. Gore*
_____

*Counsel of Record for*
*Intervenors-Appellants*

## INTRODUCTION

The United States' and OCA Plaintiffs' oppositions confirm that their novel and sweeping interpretation of the Civil Rights Act's Materiality Provision is meritless. This Court should stay the District Court's injunction and allow Texas's duly enacted election laws to remain in effect.

## ARGUMENT

As this Court previously suggested, the Materiality Provision applies "to only voter registration specifically," not the act of requesting or submitting a mail-in ballot. *Vote.Org v. Callanen*, 39 F.4th 297, 306 n.6 (5th Cir. 2022). Accordingly, SB 1's commonsense regulation of mail-in voting does not even *implicate*, let alone *violate* the Materiality Provision, and the Court should enter a stay. *See* Republican Party Appellants' Brief In Support Of Emergency Motion To Stay 1-14 (Dkt. No. 37) ("Stay Br.").

The United States and the OCA Plaintiffs variously offer four main arguments to avoid this conclusion. All contradict the plain statutory text and would transform the narrow Materiality Provision into a

1

sweeping judicial mandate to invalidate scores of longstanding, commonsense election laws.

A. *The Materiality Provision Covers Only Voter Registration Materials.*

The Materiality Provision applies only to an "application, registration, or other act requisite to voting." 52 U.S.C. § 10101(a)(2)(B); *see* Stay Br. 5-9. Neither the United States nor the OCA Plaintiffs contest that the terms "application" and "registration" refer only to the act of voter registration. *See* Plaintiffs' Resp. To Def.'s Emergency Motion To Stay 16-17 (Dkt. No. 47) ("OCA Opp.").[1] OCA Plaintiffs instead claim that the catchall phrase "other act requisite to voting" is not limited by the *ejusdem generis* canon because it begins with the word "any." *Id.* at 17 (citing *Ali v. BOP*, 552 U.S. 214, 225 (2008)).

This purported exception to *ejusdem generis* does not exist. Courts regularly apply the canon to phrases containing the term "any." *See, e.g.*,

---

[1] The Republican Party Appellants address the arguments the United States makes in its opposition. To the extent the United States incorporates by reference arguments it has made elsewhere, *see* United States' Opp. to Defs.-Appellant's Emergency Motion To Stay 18 n.6 (Dkt. No. 43) ("U.S. Opp."), the Republican Party Appellants responded to them in their summary judgement reply brief below, *see* ECF No. 663 at 1-12.

*Circuit City Stores v. Adams*, 532 U.S. 105, 109 (2001); *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77-78 (1990); *McBoyle v. United States*, 283 U.S. 25, 26 (1931) (Holmes, J.); A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 200-02 (2012) (citing with approval several cases applying the canon to phrases including "any"). *Ali* is not to the contrary. The Court there found *ejusdem generis* inapplicable because the phrase at issue did not consist of "a list of specific items separated by commas and followed by a general or collective term," not because it included "any." 552 U.S. at 225; *see Scalia & Garner, supra*, at 206-07 (explaining *ejusdem generis* did not apply in *Ali* because there were not "at least two words to establish a genus … before the other phrase").

Nor does application of *ejusdem generis* make the catchall superfluous. This phrase helps prevent state and local election officials from circumventing the Materiality Provision based on labeling: Referring to a qualification-determining practice as something other than a voter "application" or "registration" does not liberate such officials to disqualify voters for immaterial paperwork "error[s] or omission[s]." 52 U.S.C. § 10101(a)(2)(B). In addition, the phrase may cover any forms citizens must submit to remain registered to vote besides initial

3

applications and registrations, such as a declaration by a released felon that he has paid all outstanding fines or by an inactive voter that she continues to reside at her registered address.

In contrast, Plaintiffs' reading would make "application" and "registration" utterly superfluous, since they would be subsumed by the catchall. *See* U.S. Opp. 14-15 (reading the catchall to refer to all "voting-related paperwork"); OCA Opp. 6 (same). The Court should not read these essential words out of the Materiality Provision. *See, e.g.*, *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012).

B. *The Materiality Provision Applies Only to Voter Qualification Determinations.*

The Materiality Provision only covers records used "in determining" the voter's qualifications. 52 U.S.C. § 10101(a)(2)(B); *see* Stay Br. 9-12. The OCA Plaintiffs claim instead that the Provision prohibits any paper-based error "'not material' *to* determining a voter's qualifications." OCA Opp. 18 (emphasis added). This formulation, however, swaps out the key statutory term "in" for the very different word "to." *See Ball v. Chapman*, 289 A.3d 1, 38 (Pa. 2023) (opinion of Brobson, J.) ("[I]t is not enough that the error or omission be immaterial *to* whether the individual is qualified to vote; the paper or record must also be used 'in determining' the voter's

4

qualifications.").  Plaintiffs make no attempt to grapple with the meaning of "in," which in this context is equivalent to "when."  *See* Stay Br. 9.

Plaintiffs also fail to engage with statutory structure, which reinforces this reading.  The OCA Plaintiffs ignore the subparagraph before the Materiality Provision, which uses a substantially identical "in determining" phrase to introduce a provision that clearly applies only to voter-qualification determinations.  52 U.S.C. § 10101(a)(2)(A); *see* OCA Opp. 19 n.7.  They also bizarrely claim that there is "no support" for the assertion that subparagraph (C)'s prohibition on "literacy test[s] *as a qualification for voting*," 52 U.S.C. § 10101(a)(2)(C) (emphasis added), is limited to the voter-qualification context, OCA Opp. 19 n.7.[2]  For its part, the United States previously *admitted* that both of the Materiality Provision's neighboring subparagraphs are limited to voter-qualification determinations, but it never explained why Congress would cram a sweeping regulation of all "voting-related paperwork" between them.  *See*

---

[2] As for why the prohibition on literacy tests applies only to voter qualification, "a page of history is worth a volume of logic."  *N.Y. Tr. Co. v. Eisner*, 256 U.S. 345, 349 (1921).  In the 1960s, southern states used literacy tests as part of the voter-registration process, *e.g.*, *Lassiter v. Northampton Cnty. Bd. of Elections*, 360 U.S. 45, 46 (1959), so Congress adopted a remedy that fit the evil it sought to address.

ECF No. 637 at 21. And none of the Plaintiffs have any explanation, on their construction of the Materiality Provision, for why subsection (e)'s remedy for a violation of "*any* right … secured by subsection (a)" is a declaration that the individual is qualified to vote. 52 U.S.C. § 10101(e) (emphasis added); *see* Stay Br. 11-12.

C. *The Materiality Provision Prohibits Only the Denial of the Right to Vote.*

The Materiality Provision only prohibits the "den[ial]" of "the right … to vote." *Id.* § 10101(a)(2)(B); *see* Stay Br. 12-14. Although the United States and the OCA Plaintiffs emphasize the broad definition of the term "vote," they ignore the well-established meaning of the "*right … to vote.*" Stay Br. 12-14 (emphasis added). The application of evenhanded, mandatory state voting rules that regulate how individuals cast their ballots do not "disenfranchise" anyone or deny anyone the right to vote, even when such rules require election officials to decline to count a noncompliant ballot. *See, e.g.*, *Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973); *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurral). ("[A] State's election [rule] does not

disenfranchise voters who are capable of [following it] but fail to do so."); *Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissental).[3]

The United States argues SB 1's mail ballot identification rules disenfranchise voters because Texas's voter-registration database contains errors. *See* U.S. Opp. 15. To start, database errors are commonplace and unavoidable, *e.g.*, *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1838 (2018), and the United States cites no case suggesting that a state cannot administer election rules merely because its database contains some errors. Further, SB 1 provides extensive notice-and-cure remedies for noncompliant ballots, with multiple curing options and the ability to vote in-person. *See* S.B. 1 §§ 5.06, 5.07, 5.10 (Internet curing option), 5.12 (allowing curing for six days after Election Day), 5.14. Beyond that, election officials throughout Texas have successfully encouraged voters to correct erroneous voter registration records by filing new voter registration applications. *See* State Ex. A at

---

[3] The OCA Plaintiffs misleadingly cite *Schwier v. Cox* for the proposition that the Materiality Provision "prohibits states from 'requiring unnecessary information' on voting-related paperwork." OCA Opp. 7 (quoting 340 F.3d 1284, 1294, 1297 (11th Cir. 2003)). In reality, *Schwier* is clear that the Provision covers only "disqualifying potential voters" based on immaterial errors. 340 F.3d at 1294.

9. And in any event, an individual unable to vote in one election due to a database error is not "disqualif[ied]" from voting on equal terms—either in person or by mail after submitting an accurate voter registration—with other voters in future elections. *Schwier*, 340 F.3d at 1294. Thus, any such individual has not been denied "the right to vote" within the meaning of the Materiality Provision. *Id.* at 129-45.

Nor does the statutory reference to voting "in any election" change matters. *See* OCA Opp. 19 n.7. A successfully qualified voter *does* have the right to vote in any election. *E.g.*, *Schwier*, 340 F.3d at 1294. And the Materiality Provision's neighboring subparagraphs likewise protect voting "in any election," 52 U.S.C. § 10101(a)(2)(A), (C), but they clearly protect only an individual's right to be deemed *qualified* to vote, *supra* at 4-6.

D. *Plaintiffs' Reading Would Invalidate Many Longstanding, Commonsense Election Laws.*

On Plaintiffs' telling, in 1965, Congress disabled the states from pursuing *any* interest in regulating elections through paper-based requirements other than determining voter eligibility. OCA Opp. 7; U.S. Opp. 13-15. Republican Party Appellants have already identified several longstanding state election laws that will be on the chopping block if

Plaintiffs' interpretation of the Materiality Provision is correct, including mail-ballot signature requirements, mail-ballot date requirements, overvote prohibitions, pollbook-maintenance requirements, and voter-assistance-form requirements. *See* Stay Br. 17. A comprehensive review of state electoral codes would undoubtedly reveal more laws for the chopping block—like requirements that witnesses sign mail ballots. *E.g.*, *Andino v. Middleton*, 141 S. Ct. 9, 9-10 (2020) (permitting enforcement of South Carolina's witness requirement).

In response, both the United States and the OCA Plaintiffs add atextual epicycles to their reading of the Provision in an attempt to blunt its radical and disruptive consequences. None is persuasive.

The United States claims that "[a]nti-fraud measures like voter-ID or signature-matching requirements can be material," but only if they are truly "*needed* for this purpose." U.S. Opp. 15-16. But "prevention of fraud" has traditionally been understood to be a distinct interest from determining eligibility. *Smiley v. Holm*, 285 U.S. 355, 366 (1932). Rather, as the OCA Plaintiffs rightly recognize, even the most necessary voter-ID laws are not material to determining eligibility, because neither Texas nor any other state makes "possessing a particular ID number" a

criterion for voter eligibility. OCA Opp. 18 n.6. If Plaintiffs are right about the scope of the Materiality Provision, anti-fraud laws for mail voting must go.

But even if the United States were correct that "*necessary*" anti-fraud laws counted as material, the Materiality Provision would still effect an astonishing transfer of legislative authority from state legislatures to federal courts. Determining whether anti-fraud measures are "necessary" inherently requires a policy judgment as to the relative costs of allowing fraud to go undetected and imposing compliance burdens on honest voters—a quintessentially legislative question. *Cf. Brnovich v. DNC*, 141 S. Ct. 2321, 2348 (2021) (rejecting Ninth Circuit's attempt to second-guess state legislature's decision to enact anti-fraud rules). Yet, if the United States is to be believed, nearly 60 years ago, Congress meant for courts to exercise that judgment with nothing to structure their inquiry other than the vague word "material."

For their part, the OCA Plaintiffs claim that the Materiality Provision does not invalidate overvote prohibitions, because the "ballot itself" is not a paper relating to an act requisite to voting. OCA Opp. 12.

10

But if Plaintiffs are right that the Provision covers all "voting-related paperwork," *see id.* at 6, that is clearly incorrect.

The OCA Plaintiffs also assert without explanation that, "depending on the circumstances, a signature requirement *could* be considered material to determining whether a voter is qualified to vote." OCA Opp. 12. Completing a signature is not a criterion for voter eligibility in any state, however. *Id.* at 18 n.6. And even if OCA Plaintiffs are right, that a fact-intensive, case-by-case analysis is needed to know whether requiring something as banal as *signing one's ballot* amounts to a federal civil rights violation itself suffices to show the absurdity of Plaintiffs' position.

Unable to disguise the radical implications of their revisionist Materiality Provision, the OCA Plaintiffs ultimately show their hand. With respect to the "main examples" of state laws Republican Party Appellants identified as endangered by the District Court's rationale, the OCA Plaintiffs eagerly agree that federal courts should sweep away "superfluous paperwork requirements" like mail-ballot date requirements. *Id.* at 12-13.

To effect this bold gambit and its corresponding shift of authority away from the states, Plaintiffs must point to "exceedingly clear [statutory] language." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021). Yet Plaintiffs do not even attempt to make this showing—providing the Court yet another basis to reject their position.

E. *Constitutional Avoidance Forecloses Plaintiffs' Reading.*

If Plaintiffs' nonsensical and atextual interpretation of the Materiality Provision is correct, the statute is likely unconstitutional. Because the Materiality Provision governs both federal *and* state elections, Congress could only have enacted it using its powers to enforce the 14th and 15th Amendments, *see* Stay Br. 19, a point the OCA Plaintiffs acknowledge, OCA Opp. 15-16. As the OCA Plaintiffs again admit, the Court limited the scope of permissible enforcement legislation in *City of Boerne*. *Id.* at 16 (citing *City of Boerne v. Flores*, 521 U.S. 507, 518 (1997)). There, the Supreme Court explained that, whenever Congress enacts prophylactic legislation to "remedy or prevent unconstitutional actions … [t]here must be a congruence and proportionality between the injury to be prevented or remedied and the means adopted to that end." *City of Boerne*, 521 U.S. at 519-20. Courts

12

must consult Congress's legislative "record" to identify what unconstitutional practices Congress was legitimately targeting. *Id.* at 530.

As Republican Party Appellants have explained, the Congress that enacted the Materiality Provision was responding to racially discriminatory practices *in voter registration*. Stay Br. 8-9. Plaintiffs have not meaningfully contested that point—nor could they. There is no evidence that Congress was concerned with states applying voting rules outside voter registration that served goals unrelated to voter qualifications—let alone a legislative record showing *constitutional* violations occurring in such situations. If Plaintiffs are right that the Materiality Provision reaches far beyond racially discriminatory voter-registration practices, the Materiality Provision is likely unconstitutional. *See, e.g.*, *City of Boerne*, 521 U.S. at 530-36; *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 365-374 (2001) (holding that Americans with Disabilities Act is not valid prophylactic legislation under congruence-and-proportionality test).

The Materiality Provision's plain text forecloses Plaintiffs' arguments. But even if this Court deems the statute ambiguous,

constitutional avoidance demands reading it to apply only to voter registration. *E.g.*, *Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

## CONCLUSION

This Court should stay the District Court's order pending appeal and ultimately reverse its atextual and unreasonable interpretation of the Materiality Provision.

Dated:  December 12, 2023          Respectfully submitted,

*/s/* John M. Gore

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee*

# CERTIFICATE OF SERVICE

On December 12, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: December 12, 2023

/s/ John M. Gore

John M. Gore

*Counsel for Intervenors-Appellants*

# CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,355 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

Dated: December 12, 2023

*/s/* John M. Gore

John M. Gore

*Counsel for Intervenors-Appellants*