No. 23-50885

# In the United States Court of Appeals for the Fifth Circuit

UNITED STATES OF AMERICA, ET AL.,
*Plaintiffs-Appellees,*

*v.*

WARREN KENNETH PAXTON, ET AL.,
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## REPLY IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

AARON L. NIELSON
Solicitor General
Aaron.Nielson@oag.texas.gov

LANORA C. PETTIT
Principal Deputy Solicitor General

WILLIAM F. COLE
Assistant Solicitor General

KATHLEEN T. HUNKER
Special Counsel

ZACHARY W. BERG
Special Counsel

Counsel for Defendants-Appellants

# TABLE OF CONTENTS

Introduction ................................................................. 1

Argument ..................................................................... 2

    I.  The Equities Favor a Stay. ................................... 2

    II.  The State Defendants are Likely to Succeed on Appeal. .......... 4

        A.  S.B. 1's identification requirement complies with federal law. ..................................................................... 5

        B.  The district court lacked jurisdiction to enjoin the Secretary. ................................................................. 9

Conclusion .................................................................. 11

Certificate of Service ..................................................... 12

Certificate of Compliance .................................................. 12

# Introduction

Appellees' responses confirm that a stay of the district court's injunction is urgently needed to prevent administrative chaos and voter confusion. Appellees argue that this Court's temporary administrative stay has already cured any irreparable injury or harm to the public interest by preventing the district court's order from meddling with the December 9 run-off elections. But Plaintiffs simultaneously ask the Court to lift the administrative stay and require county officials to count ballots that do not comply with S.B. 1's identification requirement *before the canvas*, altering the status quo in the days between when ballots were cast and when S.B. 1 requires the EVBB[1] to reject them. Even apart from the ongoing December 9 elections, Appellees invite the Court to upend the status quo, which has governed Texas elections for years, just before the January special election and in the run-up to the March 2024 primary. Such a result is foreclosed by routine application of *Purcell v. Gonzalez*, 549 U.S. 1 (2006), and its progeny.

Apart from the equities, which tip decisively in Appellants' favor, they are likely to succeed on the merits. Appellees misconstrue the evidentiary record, which leaves little doubt that S.B. 1's identification requirement is "material" because local election officials utilize it to verify voter identities and safeguard the security of those elections. Moreover, if Appellees' view were correct, it would take the Materiality Provision, 52 U.S.C. § 10101(a)(2)(B), well outside of Congress's enforcement powers under the Fifteenth Amendment. And Appellees cannot sidestep the

---

[1] Terms defined in the stay motion are given the same meaning here.

impropriety of the district court's injunction against the Secretary of State, who does not enforce these challenged provisions of S.B. 1, by arguing that it is "irrelevant" since the district court also purported to enjoin the State itself. Because any one of these defects requires, at a minimum, modification of the district court's injunction, the Court should enter a stay pending appeal.

## ARGUMENT

### I.    The Equities Favor a Stay.

To start, the equities heavily favor continuing the administrative stay. Mot.15-18. "When a statute is enjoined, the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws." *Veasey v. Abbott*, 870 F.3d 387, 391 (5th Cir. 2017) (per curiam). And "[b]ecause the State is the appealing party, its interest and harm merge with that of the public." *Id.* That is doubly true where, as here, a stay would both maintain the status quo, Mot.17, and prevent administrative chaos and voter confusion in upcoming elections, Mot.15-17 (discussing *Purcell*). Appellees offer three principal rejoinders; none has merit.

*First*, Plaintiffs (at 23-25) and the United States (at 18-19) argue that no confusion will ensue now that the Harris County run-off election has taken place. But in the same breath, Plaintiffs encourage (at 24-25) the Court to lift the administrative stay and require EVBBs to count mail-in ballots that do not meet S.B. 1's identification requirement *before* the EVBB-rejection process is final, Tex. Elec. Code § 87.0411(c)—let alone the canvas.

Regardless, *Purcell*'s prohibition on judicial tinkering with election rules extends up to "120 days before the primary election date." *Petteway v. Galveston County*, No. 23-40582, 2023 WL8467821, at *1 (5th Cir. Dec. 7, 2023) (en banc) (Oldham, J., concurring); *contra* OCA.Opp.25. The district court issued its injunction well within that prohibited window regarding the upcoming March 2024 primary. Indeed, overseas ballots for that election must be mailed to Federal Postcard Application voters next month, on January 16. *See* Tex. Elec. Code § 86.004(b).

*Second*, Plaintiffs (at 25) and the United States (at 19-20) suggest the district court has not caused any dis-uniformity because the United States' relief should apply to officials in all 254 Texas counties. But such an assertion depends upon an unresolved and nettlesome state-law assumption that enjoining the State binds all counties throughout the State. *Infra* Part II.B. If true, that only makes the *Purcell* problem *worse*: Election Day for the Special Election for Texas House District 2, which covers Hopkins, Hunt, and Van Zandt Counties, falls on January 30, 2024. Gov. Greg Abbott, Proclamation of Nov. 20, 2023, *at* https://www.sos.state.tx.us/elections/forms/proclamation-hd-2-special-runoff-election.pdf. Under the theory advanced by Plaintiffs (at 21, 25) and the United States (at 18, 19-20), these counties would be subject to the district court's injunction; but the *Purcell* window has well and truly closed because mail-in balloting has already begun.

*Third*, Plaintiffs (at 23) and the United States (at 20-21) contend that the district court's injunction cures pre-existing voter confusion engendered by S.B. 1, including the rejection of correctly completed ABBMs. To start, Plaintiffs (at 3) and the United States (at 15, 21) overstate the "confusion" and "errors" in the TEAM

database. The United States' own expert stated that only 6,355 of the 330,000 mail-in ballots cast in the November 2022 General Election, Dkt.609-8 at 126-28, were rejected but not cured in the November 2022 General Election due to the identification requirement. Dkt.645-3 at 45-46; *see also* Dkt.609-8 at 129.[2] The summary-judgment record does not establish how these rejections were caused by a problem with the TEAM database rather than the voter's failure to follow instructions. Moreover, had this claim been allowed to proceed to trial—the key issue in this summary-judgment appeal—the record *would* have shown that the ballot rejection rates under S.B. 1 are "very close" to pre-S.B. 1 rates. Oct. 12 Tr. 3845 (discussing Denton County); *see also* Oct. 18 Tr. at 4414 (discussing statewide rejection rates). In at least one county, the rejection rate was actually *lower* following S.B. 1. Sept. 19 Tr. 1106-1107. Rather than ameliorate confusion amongst voters and local officials, any changes at this late hour will exacerbate confusion and thwart progress that local officials have made over the last two years in implementing S.B. 1's procedures.

## II.    The State Defendants are Likely to Succeed on Appeal.

Apart from the equities, a stay is warranted because Appellants are likely to prevail on the merits. All appellants are likely to show that S.B. 1 complies with federal law. The Secretary is also likely to show that the district court lacked jurisdiction to issue an injunction, which subjects her personally to the risk of contempt.

---

[2] Due to constraints imposed by the schedule, Appellants have not attached the filings cited herein but are happy to provide them.

**A.  S.B. 1's identification requirement complies with federal law.**

**1.**  Assuming the Materiality Provision applies (and it does not, *infra* Part II.A.2), Appellants are likely to show that S.B. 1's identification requirement satisfies that provision. County officials utilize it to determine whether the person seeking to vote is the relevant voter, thus protecting the integrity of the election. Mot.12-14. The district court's contrary conclusion conflates the fundamental right to vote with a right to vote by mail, *Tex. Democratic Party v. Abbott*, 961 F.3d 389, 408-09 (5th Cir. 2020); is in tension with Congress's requirement that voter-registration applications include identification numbers, HAVA, 52 U.S.C. § 20901 *et seq.*; and is contrary to *Florida State Conference of the NAACP v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008). None of Appellees' three overarching responses has merit.

*First*, though the United States expressly concedes (at 15-16) that S.B. 1's identification requirement would be "material" if used as an "[a]nti-fraud measure[]" "to confirm voters' identities" or that a voter is eligible to vote, Appellees insist that county officials actually "look up voters using other information." U.S.Opp.16; OCA.Opp.8-10. This misapprehends the record. For example, it is the "standard operating procedure" of the Denton County Elections Administrator to use the identification numbers "as a reliable way to positively identify voters." Dkt.645-4 at 30. Moreover, the Administrator explained, in 2020 S.B. 1's identification requirement would have helped detect a scheme by which a mayoral candidate tried to sway the election by forging more than 100 ABBMs. Dkt.645-4 at 30; *see also* Dkt.645-5 at 17-18. Likewise, the Secretary of State's former

Director of Elections expressly stated that the identification numbers "are used to make sure the voter has properly identified themself on the application, yes." Dkt.646 at 40.

*Second*, the United States also vaguely suggests (at 16) that a voting requirement cannot be "material" unless the State can prove that it is "*needed*" for the purpose of combatting fraud. The United States nowhere explains how to reconcile this position with *Crawford v. Marion County Election Board*, which allowed States to adopt "neutral, nondiscriminatory" regulations to reduce the "risk of voter fraud" even where mathematical proof of necessity was unavailable. 553 U.S. 181, 196, 203 (2008). But assuming the United States articulated the right test, the identification requirement targeted gaps in Texas election law that made it difficult, if not impossible, to verify a voter's identity. For example, before S.B. 1, Texas relied on signature matching to verify a voter's identity, which—as this Court knows— presents its own challenges for voters who may be illiterate or disabled. *See Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 226-27 (5th Cir. 2020). Or signatures may change over time. Dkt.645-5 at 15, 18, 22. The identification requirement helped close those gaps by having the voter submit a unique identifier, unlikely to change, at each juncture of the vote-by-mail process.

*Third*, Plaintiffs argue (at 13) that this Court should depart from the Eleventh Circuit, *Browning*, 522 F.3d at 1174, and hold that HAVA is irrelevant to the materiality inquiry because HAVA "concerns only voter registration, not procedures for voting by mail" and does not require States to authenticate those numbers. The United States agrees (at 17) that HAVA merely "helps to facilitate

the creation of a state database identifier for the voter." This distinction makes no difference. HAVA *forbids* Texas from accepting a voter-registration application unless that application includes the requisite identification numbers. 52 U.S.C. § 21083(a)(5)(A)(i). That prohibition cannot be decoupled from the ABBM procedure because without having registered to vote, a putative voter is not "qualified" to cast *any* ballot, including a mail-in ballot, under state law. *See* Tex. Elec. Code § 11.002(a)(6); *id.* § 84.002(a)(1). Given this interrelationship, if Congress thought it material to provide an identification number to register to vote *at all*, Texas was *at least* entitled to proceed to trial on the question of whether such a requirement was material to vote by mail.

*Finally*, Plaintiffs (at 10–11) and United States (at 13–14) insist that the district court's analysis presents no risk to run-of-the-mill voting regulations because it properly distinguished between the right to vote and the privilege to vote by mail. But Appellees present no principled distinction between S.B. 1's identification requirement and the requirement of physical signatures for faxed voter-registration applications at issue in *Vote.org v. Callanen*, 39 F.4th 297, 305-07 (5th Cir. 2022). In holding the latter requirement likely did not violate the Materiality Provision or "result in anyone being deprived of the right to vote," the Court noted that "the Texas Election Code confers a right to cure and allows other means of registration." *Id.* at 305. And it rejected a theory that "an individual's failure to comply with *any* registration requirement would deprive that person of the right to vote," as "prov[ing] too much." *Id.* at 306. As in *Vote.org*, S.B. 1's identification requirement "may prohibit an individual from voting if the individual fails to comply," but it

"cannot be" that such a result "denies the right of that individual to vote under" the Materiality Provision. *Id.* at 305 n.6, 306. To say otherwise would render the already "complex procedure" that is mail-in balloting, *Veasey v. Abbott*, 830 F.3d 216, 255 (5th Cir. 2016) (en banc), entirely ungovernable.

**2.** Apart from being likely to show that S.B. 1's identification requirement *satisfies* the Materiality Provision, Appellants are also likely to show that it was never *subject* to that law because it is both racially neutral and uniformly applied. Mot.11-12 (citing *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009)). Plaintiffs (at 14-16) and the United States (at 11-13) make several responses based on text, statutory context, and precedent. These arguments ignore that section 10101(a) expressly references "[r]ace, color, or previous condition not to affect right to vote," 52 U.S.C. § 10101(a), and thereby violate longstanding rules of statutory construction, *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989).

Perhaps more concerning, Appellees' interpretation puts the Materiality Provision—which was enacted pursuant to Congress's power to enforce the Fifteenth Amendment, *United States v. Mississippi*, 380 U.S. 128, 138 (1965)—on a collision course with the Constitution. The States "have 'broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Shelby County v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)) And while Congress can employ "strong remedial and preventative measures to respond to the widespread and persisting deprivations of constitutional rights," it cannot engineer "a substantive change in constitutional protections." *City of Boerne v. Flores*, 521 U.S. 507, 526, 532 (1997). The Fifteenth Amendment

forbids the denial or abridgement of the "right … to vote" only "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, §1. That "right" is, however, not implicated—or at least not "abridged"—by S.B. 1's identification requirement because it does not guarantee a right to vote by mail. *See generally Tex. Democratic Party v. Abbott*, 978 F.3d 168, 184-92 (5th Cir. 2020). Even if it were, a facially neutral, equally applied law by no means discriminates "on account of" race or color. Because Appellees' interpretation would work a "substantive change" to the Fifteenth Amendment's standard, *City of Boerne*, 521 U.S. at 509, it is likely to be rejected under the canon of constitutional avoidance.

## B.  The district court lacked jurisdiction to enjoin the Secretary.

The Court is also likely to at least narrow the injunction to exclude the Secretary because local election officials enforce S.B. 1's identification requirement. Mot.14-15. The district court therefore lacked jurisdiction to enjoin the Secretary under basic principles of Article III standing and sovereign immunity. *Id.* Neither of Appellees' responses has merit.

*First*, Plaintiffs argue (at 20) that the Secretary *can* enforce S.B. 1's identification requirement by issuing election advisories. But this Court has repeatedly held that the Secretary's "advisory duties fall short" of establishing that she "enforces" a challenged provision of the Election Code. *Ostrewich v. Tatum*, 72 F.4th 94, 100 (5th Cir. 2023); *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 674 (5th Cir. 2022).

*Second*, Plaintiffs (at 21) and the United States (at 18) insist this argument is a "red herring" because the United States' injunction runs against the State and binds local officials in every county throughout the State. Yet *that* rejoinder does not save

Plaintiffs' injunction. It assumes that any injunction against the State runs against counties, which is far from clear given that the State and counties often do not see eye to eye regarding the mechanics of implementing state law. *See, e.g.*, *State v. Hollins*, 620 S.W.3d 400 (Tex. 2020) (per curiam). And, perhaps most troubling, it does not explain how it is appropriate to subject the *Secretary* to the possibility of contempt given that history demonstrates that *she* cannot force counties comply with her advisories. *See United States v. Texas*, 430 F. Supp. 920, 928 (S.D. Tex. 1977) (discussing how the Attorney General was given limited authority to enforce election laws following *Ballas v. Symm*, 351 F. Supp. 876 (S.D. Tex. 1972)); *accord Bullock v. Calvert*, 480 S.W.2d 367, 372 (Tex. 1972).

## CONCLUSION

The Court should stay the district court's order and injunction pending appeal.

Respectfully submitted.

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

/s/ AARON L. NIELSON
AARON L. NIELSON
Solicitor General
Aaron.Nielson@oag.texas.gov

LANORA C. PETTIT
Principal Deputy Solicitor General

WILLIAM F. COLE
Assistant Attorney General

KATHLEEN T. HUNKER
Special Counsel

ZACHARY W. BERG
Special Counsel

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Counsel for Defendants-Appellants

## CERTIFICATE OF SERVICE

On December 12, 2023, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Aaron L. Nielson
AARON L. NIELSON

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,598 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Aaron L. Nielson
AARON L. NIELSON