## JONES DAY

51 LOUISIANA AVE. NW • WASHINGTON, DC 20001

TELEPHONE: +1.202.879.3939 • FACSIMILE: +1.202.626.1700

DIRECT NUMBER: (202) 879-3930
JMGORE@JonesDay.com

December 13, 2023

Lyle W. Cayce, Clerk of Court
United States Court of Appeals for the Fifth Circuit
Office of the Clerk
F. Edward Hebert Building
600 S. Maestri Place
New Orleans, LA 70130

Re: *United States v. Paxton*, No. 23-50885

Dear Mr. Cayce:

Pursuant to Fed. R. App. P. 28(j), I write on behalf of the Republican Party Appellants to notify the Court that today, the Third Circuit stayed pending appeal the judgment of the district court in *Pennsylvania State Conference of the NAACP v. Schmidt*, 2023 WL 8091601 (W.D. Pa. Nov. 21, 2023). At issue in *Schmidt* was a Pennsylvania requirement that voters write the correct date on the envelope containing their mail-in ballot in order for their vote to be counted. *Id.* at *1. The district court there, like the District Court below, held the challenged requirement violated the federal Materiality Provision, because the date a voter submits his ballot is not material to determining the voter's qualifications under state law. *Id.* at *29. Also like the District Court below, it relied on the Third Circuit's vacated decision in *Migliori v. Cohen*, 36 F.4th 153 (3d Cir. 2022), finding it more persuasive than Justice Alito's dissental in *Ritter v. Migliori*, 142 S. Ct. 1824 (2022). *Schmidt*, 2023 WL 8091601 at *28-29. In this case, the OCA Plaintiffs cite both *Migliori* and *Schmidt* approvingly. Dkt. No. 47 at 13, 17.

In the Third Circuit, the appellants in *Schmidt*, like the Republican Party Appellants here, argued the district court's decision was likely wrong, because the Materiality Provision applies only to voter-qualification determinations made during the voter-registration process.

JONES DAY

Lyle W. Case, Clerk of Court
December 13, 2023
Page 2

Ex. B at 13-27.  And the Third Circuit found at least some merit to this argument.  In granting a stay, the court relied on a case applying the traditional stay standard, not the *Purcell* standard.  Ex. A (Jordan and Shwartz, JJ.) (citing *In re Revel AC, Inc.*, 802 F.3d 558, 568-69 (3d Cir. 2015)).  The court thus found appellants had at least "a reasonable chance … of winning" on the merits.  *Revel*, 802 F.3d at 568.  This also means the court did not see *Migliori* as having effectively resolved the issue already.  That even the Third Circuit views its own vacated decision in *Migliori*—the only appellate decision in Plaintiffs' favor—as non-dispositive underscores the lack of support for Plaintiffs' untenable reading of the Materiality Provision.

Respectfully submitted,

*/s/ John M. Gore*
John M. Gore
Counsel for Intervenor-Appellants

cc:  Counsel of Record via CM/ECF

JONES DAY

Lyle W. Case, Clerk of Court
December 13, 2023
Page 3

## **CERTIFICATION**

I hereby certify that the body of this Letter pursuant to Fed. R. App. P. 28(j), beginning with the first word after the salutation and ending with the last word before the complimentary close, contains 350 words according to the word-processing software used to prepare this Letter. I also certify that on December 13, 2023, I served a copy of the foregoing on all counsel of record by CM/ECF.

Dated: December 13, 2023

*/s/ John M. Gore*
John M. Gore

# EXHIBIT A

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

ECO-015-E

No. 23-3166

PENNSYLVANIA STATE CONFERENCE OF NAACP BRANCHES; LEAGUE OF
WOMAN VOTERS OF PENNSYLVANIA; PHILADELPHIANS ORGANIZED TO
WITNESS EMPOWER AND REBUILD; COMMON CAUSE PENNSYLVANIA;
BLACK POLITICAL EMPOWERMENT PROJECT; MAKE THE ROAD
PENNSYLVANIA; BARRY M. SEASTEAD; MARLENE G. GUTIERREZ; AYNNE
MARGARET PLEBAN POLINSKI; JOEL BENCAN; LAURENCE M. SMITH

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA; ADAMS COUNTY
BOARD OF ELECTIONS; ALLEGHENY COUNTY BOARD OF ELECTIONS;
ARMSTRONG COUNTY BOARD OF ELECTIONS; BEAVER COUNTY BOARD OF
ELECTIONS; BEDFORD COUNTY BOARD OF ELECTIONS; BERKS COUNTY
BOARD OF ELECTIONS; BLAIR COUNTY BOARD OF ELECTIONS; BRADFORD
COUNTY BOARD OF ELECTIONS; BUCKS COUNTY BOARD OF ELECTIONS;
BUTLER COUNTY BOARD OF ELECTIONS; CAMBRIA COUNTY BOARD OF
ELECTIONS; CAMERON COUNTY BOARD OF ELECTIONS; CARBON COUNTY
BOARD OF ELECTIONS; CENTRE COUNTY BOARD OF ELECTIONS; CHESTER
COUNTY BOARD OF ELECTIONS; CLARION COUNTY BOARD OF ELECTIONS;
CLEARFIELD COUNTY BOARD OF ELECTIONS; CLINTON COUNTY BOARD
OF ELECTIONS; COLUMBIA COUNTY BOARD OF ELECTIONS; CRAWFORD
COUNTY BOARD OF ELECTIONS; CUMBERLAND COUNTY BOARD OF
ELECTIONS; DAUPHIN COUNTY BOARD OF ELECTIONS; DELAWARE
COUNTY BOARD OF ELECTIONS; ELK COUNTY BOARD OF ELECTIONS; ERIE
COUNTY BOARD OF ELECTIONS; FAYETTE COUNTY BOARD OF ELECTIONS;
FOREST COUNTY BOARD OF ELECTIONS; FRANKLIN COUNTY BOARD OF
ELECTIONS; FULTON COUNTY BOARD OF ELECTIONS; GREENE COUNTY
BOARD OF ELECTIONS; HUNTINGDON COUNTY BOARD OF ELECTIONS;
INDIANA COUNTY BOARD OF ELECTIONS; JEFFERSON COUNTY BOARD OF
ELECTIONS; JUNIATA COUNTY BOARD OF ELECTIONS; LACKAWANNA
COUNTY BOARD OF ELECTIONS; LANCASTER COUNTY BOARD OF
ELECTIONS; LAWRENCE COUNTY BOARD OF ELECTIONS; LEBANON
COUNTY BOARD OF ELECTIONS; LEHIGH COUNTY BOARD OF ELECTIONS;
LUZERNE COUNTY BOARD OF ELECTIONS; LYCOMING COUNTY BOARD OF
ELECTIONS; MCKEAN COUNTY BOARD OF ELECTIONS; MERCER COUNTY
BOARD OF ELECTIONS; MIFFLIN COUNTY BOARD OF ELECTIONS; MONROE
COUNTY BOARD OF ELECTIONS; MONTGOMERY COUNTY BOARD OF

ELECTIONS; MONTOUR COUNTY BOARD OF ELECTIONS; NORTHAMPTON
COUNTY BOARD OF ELECTIONS; NORTHUMBERLAND COUNTY BOARD OF
ELECTIONS; PERRY COUNTY BOARD OF ELECTIONS; PHILADELPHIA
COUNTY BOARD OF ELECTIONS; PIKE COUNTY BOARD OF ELECTIONS;
POTTER COUNTY BOARD OF ELECTIONS; SCHUYLKILL COUNTY BOARD OF
ELECTIONS; SNYDER COUNTY BOARD OF ELECTIONS; SOMERSET COUNTY
BOARD OF ELECTIONS; SULLIVAN COUNTY BOARD OF ELECTIONS;
SUSQUEHANNA COUNTY BOARD OF ELECTIONS; TIOGA COUNTY BOARD
OF ELECTIONS; UNION COUNTY BOARD OF ELECTIONS; VENANGO COUNTY
BOARD OF ELECTIONS; WARREN COUNTY BOARD OF ELECTIONS;
WASHINGTON COUNTY BOARD OF ELECTIONS; WAYNE COUNTY
BOARD OF ELECTIONS; WESTMORELAND COUNTY BOARD OF ELECTIONS;
WYOMING COUNTY BOARD OF ELECTIONS; YORK COUNTY
BOARD OF ELECTIONS

REPUBLICAN NATIONAL COMMITTEE; NATIONAL
REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,
                                                    Appellants

(Intervenors in D.C.)

(W.D. Pa. No. 1-22-cv-00339)

Present:  JORDAN and SHWARTZ, <u>Circuit Judges</u>

1.  Motion by Richard Marino to Proceed as Intervenor in Support of Appellants

2.  Motion by Appellants and Proposed Intervenor Richard Marino to Stay
    District Court's Order Pending Appeal

3.  Response in Opposition by Appellees' Joel Bencan, Black Political
    Empowerment Project, Common Cause Pennsylvania, Marlene G. Gutierrez,
    League of Woman Voters of Pennsylvania, Make the Road Pennsylvania,
    Pennsylvania State Conference of NAACP Branches, Philadelphians
    Organized to Witness Empower and Rebuild, Aynee Margaret Pleban Polinski,
    Barry M. Seastead and Laurence M. Smith to Motion to Proceed as Intervenor

4.  Response in Opposition by Appellees' Joel Bencan, Black Political
    Empowerment Project, Common Cause Pennsylvania, Marlene G. Gutierrez,
    League of Woman Voters of Pennsylvania, Make the Road Pennsylvania,
    Pennsylvania State Conference of NAACP Branches, Philadelphians
    Organized to Witness Empower and Rebuild, Aynee Margaret Pleban Polinski,
    Barry M. Seastead and Laurence M. Smith to Motion for Stay

5. Response by Appellee Chester County Board of Elections to Motion for Stay

6. Response in Opposition by Appellee Philadelphia County Board of Elections to Motion for Stay

7. Response in Opposition by Appellee Secretary Commonwealth of Pennsylvania to Motion for Intervene and Motion to Stay.

8. Response in Opposition by Appellee Bucks County Board of Elections to Motion for Stay

9. Response in Opposition by Appellee Montgomery County Board of Elections to Motion for Stay

10. Response in Opposition by Appellee Montgomery County Board of Elections to Motion to Proceed as Intervenor of Richard Marino

11. Reply by Appellants to Responses

Respectfully,
Clerk/kr

ORDER

PER CURIAM

The foregoing motion to intervene is granted.

The foregoing motion to stay the order entered November 21, 2023 is granted. While we need not and do not conclude here that the movants' likelihood of winning on appeal is more likely than not, we do conclude that the movants have satisfied the requisites for a stay. See In re Revel AC, Inc., 802 F.3d 558, 568–69 (3d Cir. 2015). The issues warrant full merits briefing on an expedited basis. The Clerk shall assign the case to a merits panel and set a briefing schedule. Nothing herein constitutes a ruling on the certification of any election. In their merits briefing, the parties should address the effect, if any, of certification on the jurisdiction of this court.

Dated: December 13, 2023

cc: All Counsel of Record



A True Copy:

Patricia S. Dodszuweit, Clerk

# EXHIBIT B

No. 23-3166

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

————————

PENNSYLVANIA CONFERENCE OF THE NAACP, *et al.,*

v.

SECRETARY COMMONWEALTH OF PENNSYLVANIA, *et al.*

REPUBLICAN NATIONAL COMMITTEE;
NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE;
THE REPUBLICAN PARTY OF PENNSYLVANIA,

*Appellants.*

————————

### On Appeal from the United States District Court for the
### Western District of Pennsylvania, Case No. 1:22-cv-00339

————————

## APPELLANTS' AND PROPOSED INTERVENOR'S
## EMERGENCY MOTION FOR A STAY

————————

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

John M. Gore
 *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC 20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants*

## INTRODUCTION

For weeks after Election Day, the people of Towamencin Township, Pennsylvania, believed that Richard Marino had won reelection to the Board of Supervisors. When election officials counted all ballots under the rules in effect on Election Day, Marino won by four votes. Then came the District Court's order. Two weeks after Election Day, the District Court invoked the Civil Rights Act's Materiality Provision, 52 U.S.C. § 10101(a)(2)(B), to declare unlawful Pennsylvania's longstanding rule that voters must date their absentee or mail-in ballots. Relying on that order, the Montgomery County Board of Elections belatedly counted ballots that do not comply with the date requirement and certified Marino's opponent, Kofi Osei, the winner.

This happened only because Towamencin Township is located in one of the 12 counties subject to the District Court's order. It could not have happened in any of the 55 Pennsylvania counties the District Court dismissed: those county boards remain bound by the Pennsylvania Supreme Court's 2022 order, which upheld the date requirement and prohibited counting ballots that fail to comply with it. *See Ball v. Chapman*, 284 A.3d 1189, 1192 (Pa. 2022).

1

The District Court's ruling conflicts not only with *Ball*, but also with the statement of three Justices that the conclusion that the date requirement violates the Materiality Provision is "very likely wrong." *Ritter v. Migliori*, 142 S. Ct. 1824, 1824 (2022) (Alito, J., dissental). And it runs counter to the Fifth Circuit's construction of the Materiality Provision. *See Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022).

The public interest overwhelmingly favors a stay of the District Court's order and judgment pending appeal. The District Court improperly changed the rules of Marino's election *after* the votes were tallied, undermining the election's legitimacy and risking "severe[] damage [to] the electoral system." *Republican Party of Pa. v. Degraffenreid*, 141 S. Ct. 732, 735 (2021) (Thomas, J., dissental). The order, moreover, threatens to unleash chaos in Pennsylvania's 2024 elections. In three recent years—2020, 2021, and (apparently) 2023—an election result was flipped when officials counted ballots that did not comply with the date requirement. It is easy to foresee that happening again in the hotly contested 2024 elections in which millions of Pennsylvanians will vote for President, U.S. Senator, and other important offices. And the order mandates disparate treatment of ballots

between the 12 counties subject to it and the 55 dismissed counties, promising confusion, an erosion of voter confidence, and even a potential violation of the Equal Protection Clause. *See Bush v. Gore*, 531 U.S. 98, 105-07 (2000) (violation where "the standards for accepting or rejecting … ballots … vary …  from county to county").

The order also threatens multiple types of irreparable harm.  Most obviously, Mr. Marino is barred from taking office, frustrating the will of Towamencin Township voters.  Appellants, their voters, and their candidates face irreparable harm to their right to participate in free and fair elections—and the Commonwealth is irreparably harmed by invalidation of the General Assembly's duly enacted law.

In election-law cases, federal courts frequently enter stays *regardless* of the merits to head off judicial changes to election rules close-in-time to an election.  *See, e.g.*, *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *Merrill v. Milligan*, 142 S. Ct. 879, 880 (2022) (Kavanaugh, J., concurral).  The Court should likewise do so here.  Even if the Court applies the traditional requirements for a stay, Appellants easily satisfy them.  Appellants are likely to prevail on the merits because the District Court's interpretation of the Materiality Provision is incorrect.  The

Court should enter a stay and clarify that the order does not impose any obligations on election officials in the 2023 election or future elections, pending review by this Court and the U.S. Supreme Court.

Time is of the essence. Osei is scheduled to be sworn into office on January 2, 2024. Expedited consideration is warranted to ensure that Marino is timely certified as the winner and that Appellants can seek further review in the U.S. Supreme Court if necessary. Appellants therefore respectfully request that the Court expedite briefing and issue a decision no later than December 15, 2023.

## BACKGROUND

A. *The Pennsylvania Supreme Court Upholds The Date Requirement In 2022.*

Pennsylvania has long required individuals voting by mail to date their ballot. *See* 1945 Pa. Laws 29, 37; 25 P.S. §§ 3146.6(a), 3150.16(a). This requirement has been the target of continual litigation in recent years. After several failed state-court challenges, individuals filed a federal lawsuit claiming that the requirement violates the Materiality Provision. This Court agreed, but the U.S. Supreme Court vacated that decision. *See Migliori v. Cohen*, 36 F.4th 153, *vacated sub nom. Ritter v. Migliori*, 143 S. Ct. 297 (2022). When addressing a stay request on the

emergency docket, three Justices opined that this Court's now-vacated holding was "very likely wrong." *Ritter*, 142 S. Ct. at 1824 (Alito, J., dissental).

The Pennsylvania Supreme Court has also declined to follow *Migliori*. In 2022, it affirmed that any absentee or mail-in ballot that fails to comply with the date requirement is invalid and ruled, by an equally divided vote, that the requirement does not violate the Materiality Provision. *Ball*, 284 A.3d at 1192; *see Ball v. Chapman*, 289 A.3d 1 (Pa. 2023); *Bonner v. Chapman*, 298 A.3d 153, 167-68 (Pa. Commw. Ct. 2023). It therefore prohibited all 67 county boards from counting such noncompliant ballots. *See Ball*, 289 A.3d 1.

   B. *The District Court Invalidates The Date Requirement In 12 Counties.*

Plaintiffs filed this lawsuit shortly thereafter against all 67 Pennsylvania counties and the Secretary of the Commonwealth. ECF No. 1 ¶ 1. Appellants intervened as defendants. ECF No. 167.

On competing summary judgment motions, the District Court concluded that Plaintiffs had standing to bring their Materiality Provision claim against the Secretary and 12 county boards, but not against the remaining 55 county boards, which it dismissed. ADD.34.

On the merits, it held that the date requirement violates the Materiality Provision and entered a "declaratory judgment" against the 12 county boards and the Secretary.  ADD.61-73; ECF No. 348 at 4.

The "declaratory judgment" does not run against the 55 dismissed county boards.  Nor does the District Court's injunction against the Secretary, *see* ECF No. 348 at 5, change the obligations of any county board.  The Secretary "does not have control over the County Boards' administration of elections, as the General Assembly conferred such authority solely upon the County Boards." *RNC v. Schmidt*, No. 447 M.D. 2022 (Pa. Commw. Ct. Mar. 23, 2023) (slip op. at 19-20); *see also* 25 P.S. § 2642.  The 55 dismissed county boards therefore remain subject to the Pennsylvania Supreme Court's order to enforce the date requirement by not counting any noncompliant ballot. *See Ball*, 289 A.3d 1.

C.   *Election Officials Belatedly Flip The Apparent Result Of A 2023 Race.*

Marino is the vice chairman of the Towamencin Township Board of Supervisors who ran for reelection in the November 7, 2023 election. Marino Decl., ADD.78 ¶¶ 3, 6.  Under the rules in effect on Election Day—and under which Towamencin Township citizens voted—Marino prevailed by 4 votes. *Id.* ¶ 7.

6

The District Court's order issued two weeks later. The Montgomery County Board of Elections then invoked the order to flip the apparent result of Marino's race. *See* ADD.78-79 ¶¶ 8-16. It did so by counting 6 noncompliant ballots, declaring the race a tie, and, on November 30, declaring Osei the winner through a casting of lots. *See id.* ¶¶ 9-12. Absent a stay, Osei will be sworn into office on January 2, 2024. *See* ADD.79 ¶ 15.

D. *Voters File A Contest And Appellants Seek A Stay.*

Towamencin Township voters have filed a contest to the Montgomery County Board's certification of Osei as the winner. *See* Petition, *In Re: Contest of Nov. 7, 2023 Election of Towamencin Township Supervisor*, No. 2023-26306 (Ct. Comm. Pls. of Mont. Cty.) (ADD.86). The Montgomery County Board's sole basis for counting the noncompliant ballots is the District Court's order. *See* Montgomery County General Election Certification Postponed Due To Court Ruling (Nov. 22, 2023) (ADD.113-14).

A stay of the order, therefore, will eliminate the Montgomery County Board's only basis for certifying Osei as the winner. *See* ADD.93-96 ¶¶ 17-30. Accordingly, Appellants moved the District Court for a stay

7

and, given the imminent expiration of Marino's term, asked for an expedited ruling by December 8, 2023.  ECF No. 353 at 1-2.  On December 4, the District Court denied the request for expedition without explanation and set a December 11 response deadline, ECF No. 361, meaning it will not rule by December 8.  It also provided no timeline for a ruling.  *See id.*  Marino needs immediate review by this Court to ensure he can seek Supreme Court review before his term expires and Osei takes office.  *See* Fed. R. App. P. 8(a)(2)(A).

Appellants filed a notice of appeal on December 6, 2023.

## STANDARD OF REVIEW

In election-law cases, the "traditional test for a stay does not apply" and the public interest alone is often dispositive.  *Merrill*, 142 S. Ct. at 880 (Kavanaugh, J., concurral).  Courts can stay injunctions based solely on the disruption caused by election-rule changes while expressing "no opinion" on the merits.  *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006) (per curiam).

Under the traditional stay factors, this Court weighs (1) Appellants' likelihood of success on the merits, (2) their irreparable harm absent a

stay, (3) whether a stay would substantially injure Plaintiffs, and (4) the public interest. *In re Citizens Bank*, 15 F.4th 607, 615 (3d Cir. 2021).

## ARGUMENT

This Court should grant a stay. The District Court's order has resulted in retroactively changing the rules and outcome of an election, has created inconsistent election rules across the Commonwealth, and threatens electoral chaos in 2024. It also will impose severe irreparable harms and is likely to be reversed.

## I. THE PUBLIC INTEREST FAVORS A STAY.

For at least three reasons, the public interest demands a stay.

*First*, the District Court's order has resulted in changing the rules and apparent outcome of Marino's election—and did so *weeks after* balloting. Judicial changes to election rules are not allowed even shortly *before* Election Day because they undermine "[c]onfidence in the integrity of our electoral processes." *Purcell*, 549 U.S. at 4. That rule applies "with much more force on the back end of elections." *Trump v. Wis. Elections Comm'n*, 983 F.3d 919, 925 (7th Cir. 2020). Orders before Election Day are made behind the veil of ignorance; neither the court nor the public knows what effect, if any, they will have on the outcome. By contrast,

orders "after election day" create suspicions that federal courts are picking election winners—particularly where, as here, they *do* flip an apparent result. *Republican Party of Pa.*, 141 S. Ct. at 735 (Thomas, J., dissental). A stay reiterating that the date requirement governed the 2023 election results avoids that harm.

*Second*, the order has created disuniformity in the application of the date requirement across the Commonwealth. The District Court's order declares that noncompliant ballots *must* be counted in 12 counties, but the Pennsylvania Supreme Court's *Ball* judgment mandates that such ballots *must not* be counted in the other 55 counties. The order's disparate treatment of otherwise-identical ballots creates a serious Equal Protection problem and frustrates the public interest in uniform election administration. *See Reynolds*, 377 U.S. at 555 ("[T]he right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise of the franchise."); *Bush*, 531 U.S. at 105-07.

*Third*, the order will result in uncertainty, an erosion of voter confidence, and potential chaos in 2024. Pennsylvania elections have been hotly contested in recent years—and counting undated ballots has

changed the outcome in three races since 2020.  *See* Alleman Decl., ADD.84-85 ¶¶ 34-37.

The order could plausibly change the outcome of at least one race in 2024.  That outcome would be particularly damaging to the public interest if the race, such as the Senate or Presidential race, involves voters from multiple counties, some of which are—and others of which are not—subject to the order.  In that scenario, the election result could be flipped by the combination of *counting* noncompliant ballots in a county subject to the order but *not counting* identical ballots in another county.  Such an outcome would both raise Equal Protection concerns, *see Reynolds*, 377 U.S. at 555; *Bush*, 531 U.S. at 105-07, and erode voter confidence in the election, *see Purcell*, 549 U.S. at 4-5.  The Court should grant a stay and prevent this parade of harms from being unleashed on the Commonwealth, its citizens, and its elections.

## II.  A STAY AVOIDS SEVERE IRREPARABLE HARM.

Multiple irreparable harms will occur absent a stay.

*First*, denying Marino "the opportunity to serve" causes "irreparable injury" to him and "serious[] harm" to the voters who "elected him." *Kupau v. Yamamoto*, 622 F.2d 449, 457 (9th Cir. 1980).

Every day from January 1 onwards that Mr. Marino is denied office is a day of irreparable harm.

*Second*, Appellants, their voters, and their candidates face various irreparable harms in future elections. Those harms include being subjected to disparate treatment based on county geography, *see supra* at 10-11, changes to the competitive environment in which they exercise their constitutional rights to participate in elections, *see* ADD.84-85 ¶¶ 32-38, and the potential flipping of future election results to their detriment, *see id.* The harms also include the diversion of resources away from the Republican Party of Pennsylvania's mission of nominating, promoting, and assisting Republican candidates and voters and toward modifying its training and voter-education materials to reflect the order. *See id.* ¶¶ 9-28.

*Third*, the order inflicts irreparable harm on Pennsylvania and its citizens. Invalidating a sovereign state's law "clearly inflicts irreparable harm," *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018), and does irreparable "damage … to the authority of" the General Assembly, *DNC v. Wis. State Legislature*, 141 S. Ct. 28, 30 (2020) (Gorsuch, J., concurral). This federal judicial interference also confuses voters, confounds election

administrators, deters voting, erodes confidence in election outcomes, and causes many other "unanticipated consequences." *Id.* at 31 (Kavanaugh, J., concurral).

*Finally,* Plaintiffs will not be "substantially injure[d]" by a stay. *Citizens Bank*, 15 F.4th at 615. Pennsylvania's date requirement has governed mail ballots since the 1940s. Plaintiffs waited until 2022 to challenge it, suggesting they will not be especially injured by temporarily maintaining the status quo. Indeed, Plaintiffs never asked for a preliminary injunction—even after the District Court endorsed their merits theory in June, ECF No. 329—suggesting their potential harms are not urgent. *See Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) ("[A] party's failure to act with speed or urgency in moving for a preliminary injunction necessarily undermines a finding of irreparable harm."). The Court should grant a stay.

## III. APPELLANTS ARE LIKELY TO SUCCEED ON THE MERITS.

A. *The Date Requirement Cannot Violate the Materiality Provision.*

"States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). Yet according to the District Court, the Materiality Provision

prohibits states from adopting *any* mandatory paper-based election rule unless it is used to determine voter eligibility.  *See* ADD.66.

That makes no sense: "[i]t cannot be that any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under" the Materiality Provision. *Vote.Org*, 39 F.4th at 305 n.6.  Almost every state, including Pennsylvania, determines voter eligibility during a voter-registration process.  *See, e.g.*, U.S. Election Assistance Comm'n, *Voter FAQs*, https://www.eac.gov/voters/voter-faqs (last visited Dec. 2, 2023) (noting 49 states require voters "to be registered to vote to participate in an election" and that "[e]ligibility requirements" assessed during process "vary by state").  The Materiality Provision governs only qualification determinations during *that* process, not "the counting of ballots by individuals *already deemed qualified to vote*." *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004); *see Vote.Org*, 39 F.4th at 305 n.6. Thus, the date requirement *cannot* violate the Materiality Provision because it is inapplicable to voter registration.

The Materiality Provision forbids state actors to:

deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any

application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2)(B).

In at least three ways, the Materiality Provision's plain text confirms that the date requirement cannot violate it. *First*, it applies only to a "record or paper" related to an "application, registration, or other act requisite to voting." *Id*. The words "registration" and "application" refer to documents used in "voter registration specifically." *Vote.Org*, 39 F.4th at 305 n.6. The relevant legislative history shows Congress used those words interchangeably to refer to voter registration. H.R. Rep. 88-914 at 2445 (1963) (referring to "application to register"); *id*. at 2491 (referring to efforts to "defeat [African-American] registration" by "rejecting [African-American] applications" to vote); *id*. (faulting "registrars" for "rejecting [African-American] application[s]" in registration process); *cf. In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989) (Easterbrook, J.) (endorsing such use of legislative history).

The date requirement is not applied during Pennsylvania's voter registration process. It governs the casting of absentee and mail-in ballots and, as the District Court explained, applies only to voters who

"ha[ve] previously been determined to be eligible and qualified to vote." ADD.67.

Nor is dating a ballot an "other act requisite to voting" under the Materiality Provision, because that catchall phrase likewise refers only to voter registration. § 10101(a)(2)(B). "[W]here general words follow an enumeration of specific items, [they] are read as applying only to other items akin to those specifically enumerated." *Harrison v. PPG Indus.*, 446 U.S. 578, 588 (1980). Thus, the phrase "other act requisite to voting" must be "controlled and defined by reference to the enumerated categories," *Circuit City Stores v. Adams*, 532 U.S. 105, 115 (2001), of "application" and "registration," *see Ball*, 289 A.3d at 38 n.11 (opinion of Brobson, J.). Indeed, failure to apply the *ejusdem generis* canon would render the words "registration" and "application" superfluous—an outcome courts must "avoid[]." *Freeman v. Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012).

Only that reading of the Materiality Provision harmonizes with precedent and Congress's statutory aim: preventing states from "defeat[ing] [African-American voter] registration." H.R. Rep. No. 88-914, pt. 2, at 5. During the 1960s, southern states blocked African

16

Americans' voter registrations through the "practice of requiring unnecessary information for voter registration"—like listing the registrant's "exact number of months and days in his age." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). "Such trivial information served no purpose other than as a means of inducing voter-generated errors that could be used to justify rejecting applicants." *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008). Simultaneously, "registrars" in southern states "overlook[ed] minor misspelling errors or mistakes in age or length of residence of white applicants, while rejecting" African-Americans' applications "for the same or more trivial reasons." H.R. Rep. No. 88-914, pt. 2, at 5.

The Materiality Provision barred that practice by prohibiting the "[d]enial of the right to vote in any federal election because of immaterial omissions or errors in registration forms." Warren M. Christopher, *The Constitutionality of the Voting Rights Act of 1965,* 18 Stan. L. Rev. 1, 7 (1965); H.R. Rep. No. 88-914, pt. 2, at 5. That is why the Materiality Provision applies "only" in the context of "voter registration specifically." *Vote.Org*, 39 F.4th at 305 n.6. And that is why, until *very* recently, courts "have applied the [Materiality Provision]" only "in the context of voter

registration." *Thrasher v. Ill. Republican Party*, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013); *Friedman*, 345 F. Supp. at 1371.

*Second*, the Materiality Provision requires that the paper or record be used "in determining" the voter's qualifications. § 10101(a)(2)(B). When used with a "verbal noun[]"—here, "determining"—the word "in" is typically "equivalent in sense to a temporal clause introduced by *when*, *while*, *if*." *In*, prep., def. 21(b), *Oxford English Dictionary* (3d ed. 2021, rev. online Mar. 2023). The provision thus only applies to actions state officials take *when determining* a voter's eligibility. *See Ball*, 289 A.3d at 38 (opinion of Brobson, J.).

In Pennsylvania, as in virtually every state, the "determin[ation] whether [an] individual is qualified to vote" happens during the *voter-registration process*. *See* 25 P.S. § 1301(b). As a regulation of mail-in voting, the date requirement applies only after the Commonwealth has *already* found the voter qualified. *See* ADD.67. Asking whether rules *outside* the voter-registration process (like the date requirement) are material to making a qualification determination that must occur *during* the voter-registration process is like asking if a football player struck out

18

swinging.  The Materiality Provision's reference to voter "qualifi[cation]" proves that it applies only to the registration process.

The structure of § 10101 underscores this point.  The subparagraph immediately preceding the Materiality Provision uses a substantially identical phrase—"in determining whether any individual is qualified under State law or laws to vote in any election"—to introduce a prohibition on disparate treatment in voter-eligibility determinations during voter registration.  § 10101(a)(2)(A).  And the subparagraph following the Materiality Provision, banning literacy tests commonly used in southern states during voter registration, *e.g.*, *Lassiter v. Northampton Cty. Bd. of Elections*, 360 U.S. 45, 46 (1959), is likewise limited to "qualification" determinations, § 10101(a)(2)(C).  *See* H.R. Rep. No. 88-914, pt. 2, at 19 ("Section [10]101(a) is designed to insure nondiscriminatory practices in the registration of voters").  In contrast, when Congress wanted to prohibit intimidation in the *act* of voting, it sensibly set that topic apart in its own subsection, § 10101(b), rather than stuff it between provisions about voter registration and qualification.

Further, subsection (e) empowers courts to address systemic violations of "*any* right or privilege secured by subsection (a)," including

19

the Materiality Provision (emphasis added).  Yet the only remedy it
authorizes is a declaration that an individual "is qualified under State
law to vote" but has been denied the opportunity "to register … or
otherwise qualify to vote" or has been wrongly "found not qualified to
vote."  *Id.*  If the Materiality Provision extended beyond voter-
qualification determinations, this subsection would not enable courts to
address the violation of "*any* right" secured by it.  *Id.* (emphasis added).

*Third*, the Materiality Provision prohibits only "deny[ing] the right
of any individual to vote," not imposing mandatory ballot-casting rules
like the date requirement.  § 10101(a)(2)(B).  The phrase "right ... to vote"
had a well-established meaning in the mid-1960s.  *E.g.*, *Baker v. Carr*,
369 U.S. 186, 247 (1962) (Douglas, J., concurring) (the "right to vote" was
"protected by the judiciary long before that right received the explicit
protection it is now accorded" in the civil-rights statutes).  The
Materiality Provision's "right … to vote" would not have been originally
understood to protect voting by mail.  *McDonald v. Bd. of Election
Comm'rs*, 394 U.S. 802, 807 (1969).  And it certainly does not prohibit
application of neutral state-law voting rules to the act of voting.  *Rosario
v. Rockefeller*, 410 U.S. 752, 757 (1973); *Wis. State Leg.*, 141 S. Ct. at 35

(Kavanaugh, J., concurral). ("[A] State's election [rule] does not disenfranchise voters who are capable of [following it] but fail to do so."). Instead, it forbids baselessly denying a voter's registration application— an action that actually disenfranchises the applicant. *See Reynolds*, 377 U.S. at 555.

The date requirement cannot "deny" the "right … to vote." Election officials enforcing the date requirement do not "disqualify potential voters," remove them from the voter-registration list, or prevent future voting. *Schwier*, 340 F.3d at 1294. Instead, they do not count noncompliant ballots "because [individuals] did not follow the rules for casting [them]." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissental).

B. *The District Court's Reasoning Is Flawed.*

The District Court gave three reasons for rejecting Appellants' arguments. All are unpersuasive.

*First*, the District Court held that the *sole* legitimate purpose of *any* paper-based election regulation is "determining whether [an] individual is qualified to vote under Pennsylvania law." ADD.62. But *many* state-law voting rules laws have nothing to do with voter registration or assessing qualifications. *E.g.*, *Anderson v. Celebrezze*, 460 U.S. 780, 788

(1983) (distinguishing between state laws that "govern[] the registration and qualifications of voters" and "the voting process itself"). The Materiality Provision regulates only *qualification* determinations during the *voter-registration* process, but the date requirement applies only *outside* voter registration and only to voters previously found "eligible and qualified to vote." ADD.69. That the date requirement is not used to assess voter qualifications only illustrates the District Court's error, not a Materiality Provision violation.

Indeed, the date requirement serves other purposes, like "prevention of fraud" and facilitating the "counting of votes." *Smiley v. Holm*, 285 U.S. 355, 366 (1932); *see In re Canvass of Absentee and Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1090-91 (2020) (opinion of Dougherty, J., joined by Saylor, C.J., and Mundy, J.) (discussing date requirement's purposes). In 2022, for instance, the date requirement helped prove a ballot was fraudulently cast after a citizen's death. *See* ECF No. 272, Statement of Facts ¶¶ 48-55.

The District Court's reading prohibits states from using paper-based requirements to further *any* interests besides assessing voter qualifications. This is true no matter how vital the state's interest or how

necessary the rule is to secure it. *See* ADD.67 n.39 (rejecting as "irrelevant" evidence that date requirement was used to detect fraud). This approach would render the Materiality Provision startlingly unique in election law. *Cf. Crawford v. Marion Cnty Election Bd.*, 553 U.S. 181, 189-90 (2008) (instructing courts to consider range of state interests for right-to-vote claims); *Brnovich v. DNC,* 141 S. Ct. 2321, 2339-40 (2021) (same for claims under Section 2 of the Voting Rights Act).

The District Court's approach would jeopardize many longstanding election rules nationwide, as recent experience has shown. From 1964 until *Migliori*, courts enjoined hardly any state-law rules under the Materiality Provision. But in the ensuing year-and-a-half, courts around the country have adopted *Migliori*'s rationale to hold unlawful important state laws regulating mail voting. *E.g.*, *La Unión del Pueblo Entero v. Abbott*, 2023 WL 8263348, at *14 (W.D. Tex. Nov. 29, 2023) (Texas requirement to list identification number on mail ballot); *In re Ga. Senate Bill 202*, 2023 WL 5334582, at *8 (N.D. Ga. Aug. 18, 2023) (Georgia requirement to list birthdate on ballot); *Vote.org v. Ga. State Election Bd.*, 2023 WL 2432011, at *1 (N.D. Ga. Mar. 9, 2023) (Georgia requirement to sign absentee ballot application).

This is only the beginning.  Under the District Court's logic, many other widespread, commonsense paper-based regulations are now federal civil-rights violations, because they further interests besides determining eligibility.  These include:

- Mail-ballot signature requirements, *e.g.* 25 P.S. §§ 3146.6(a), 3150.16(a); N.J. Stat. § 19:62-11(c); 15 Del. Code § 5514(a)(1);

- Prohibitions on voting for more candidates than there are offices, *e.g.*, P.S. § 3063(a); Ariz. Rev. Stat. § 16-611; 15 Del. Code § 4972(b)(6).

- Requirements to maintain pollbooks, *e.g.*, 25 P.S. § 3050; Va. Code § 24.2-611; Tex. Elec. Code § 63.003; and

- Voter assistance forms, *e.g.*, 25 P.S. § 3058; Ind. Code § 3-11.5-4-13.

*See Ball*, 289 A.3d at 38-39 (opinion of Brobson, J.).

Basic principles of federalism counsel against this extreme result. Courts must not read a statute "to significantly alter the balance between federal and state power" absent "exceedingly clear language." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).  And federal statutes should not be read to "hamper the ability of States to run efficient and equitable elections, and compel federal courts to rewrite state electoral codes." *Clingman v. Beaver*, 544 U.S. 581, 593 (2005).  But that is what follows from the District Court's reasoning.

It is also implausible that so many commonplace rules would stand unchallenged for generations if, in fact, the Materiality Provision outlawed them *all* nearly sixty years ago. *See West Virginia v. EPA*, 142 S. Ct. 2587, 2610 (2022) ("[J]ust as established practice may shed light on the extent of power conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."). Congress did not "hide [this] elephant[]" in the Materiality Provision's obscure "mousehole[]." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).

Moreover, the District Court's construction risks rendering the Materiality Provision unconstitutional. Congress enacted the Materiality Provision under its power "to enforce th[e] [Fifteenth] Amendment[.]" *United States v. Mississippi*, 380 U.S. 128, 138 (1965). That power is subject to important limits. *See Nw. Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 205 (2009). Among them, an enforcement statute must be justified by the "evidence in the record" assembled by the enacting Congress. *City of Boerne v. Flores*, 521 U.S. 507, 525 (1997). When enacting the Materiality Provision, Congress

marshalled evidence of racially discriminatory practices *in voter registration*. *See supra* at 16-17. The District Court's reinterpretation would decouple the provision's reach from Congress's findings—placing the statute in constitutional jeopardy. Constitutional avoidance therefore requires rejecting the District Court's interpretation. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005).

*Second*, the District Court justified its decoupling of the Materiality Provision from voter registration by relying on the statutory definition of "vote," which it claimed is "expansive." ECF No. 347 at 65. But the provision only protects against errors *during voter registration*. *Supra* at 19. In any event, "vote" is not the relevant statutory term. The Materiality Provision reaches only denials of the "*right* … to vote," not neutral and mandatory rules that govern the *act* of voting. *See Rosario*, 410 U.S. at 757; *supra* at 20.

*Third*, the District Court relied on thin and unpersuasive authority to support its ruling. Its primary authority was this Court's vacated opinion in *Migliori*, but vacatur "of necessity … deprive[d] [*Migliori*] of precedential effect." *L.A. Cty. v. Davis*, 440 U.S. 625, 634 n.6 (1979).

Nor is *Migliori* persuasive. This Court considered *Migliori* on an

26

"expedited" basis, 36 F.4th at 156, and underdeveloped briefing that one panel member faulted for overlooking important arguments, *see id.* at 165-66 (Matey, J., concurring in the judgment).  Indeed, the *Migliori* briefing did not make most of Appellants' current arguments and barely developed the rest.  Presented with new information, this Court should adopt the reasoning of three Justices of the Supreme Court, the Pennsylvania Supreme Court, and the Fifth Circuit.  Reinstating *Migliori* would only exacerbate intrastate division and create a circuit split, necessitating Supreme Court review.

The only other on-point cases cited by the District Court were from out-of-circuit district courts.  Those decisions—which prove that the reinvented Materiality Provision will sweep aside many paper-based election rules—reinforce the urgency of not following *Migliori*.

## CONCLUSION

This Court should stay the District Court's order pending appeal by December 15, 2023.

Dated:  December 7, 2023

Respectfully submitted,

/s/ John M. Gore

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

Kathleen A. Gallagher
THE GALLAGHER FIRM, LLC
436 Seventh Ave., 31st Floor
Pittsburgh, PA 15219
(412) 717-1900
kag@gallagherlawllc.com

Thomas W. King, III
Thomas E. Breth
DILLON, MCCANDLESS, KING,
COULTER & GRAHAM, LLP
128 W. Cunningham St.
Butler, PA 16001
(724) 283-2200
tking@dmkcg.com
tbreth@gmkcg.com

## COMBINED CERTIFICATIONS

1.    Pursuant to Third Circuit L.A.R. 28.3(d), at least one of the attorneys whose names appear on this motion, including the undersigned, is a member in good standing of the bar of this Court.

2.    This brief complies with the word limit of Fed. R. App. P. 27(d)(2) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,200 words.  This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced 14-point serif font (Century Schoolbook Std), using Microsoft Word.

3.    Pursuant to Third Circuit L.A.R. 31.1(c), Microsoft Safety Scanner version 1.387.711.0 has been run on this electronic file and no virus was detected.

Dated: December 7, 2023          */s/* John M. Gore

                              John M. Gore
                              *Counsel for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2023, this motion was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the district court's CM/ECF system attaching a copy of this filing.

Dated: December 7, 2023          */s/* John M. Gore
                                 John M. Gore
                                 *Counsel for Intervenor-Defendants*