No. 23-50885

---

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA, *et al.,*

*Plaintiffs-Appellees,*

v.

WARREN KENNETH PAXTON, *et al.,*

*Defendants-Appellants.*

**On Appeal from the United States District Court for the
Western District of Texas, San Antonio Division**

**REPUBLICAN PARTY APPELLANTS' OPPOSITION TO THE
UNITED STATES' MOTION TO CLARIFY THE RECORD**

John M. Gore
  *Counsel of Record*
E. Stewart Crosland
Louis J. Capozzi, III
Ryan M. Proctor
JONES DAY
51 Louisiana Ave. NW
Washington, DC  20001
(202) 879-3939
jmgore@jonesday.com
scrosland@jonesday.com
lcapozzi@jonesday.com
rproctor@jonesday.com

*Counsel for Appellants Harris County Republican Party, Dallas County
Republican Party, Republican National Committee, National
Republican Senatorial Committee, and National Republican
Congressional Committee*

The Court should deny the United States' inaptly titled Motion To Clarify The Scope And Content Of The Record On Appeal. The United States does not seek "correction or modification of the record" due to a discrepancy or "omission" in the record below. Fed. R. App. P. 10(e). Instead, the United States asks the motions panel to order the merits panel *not* to consider record evidence that contradicts the Plaintiffs' representations at summary judgment and underscores that the District Court erred in granting summary judgment on the Plaintiffs' Materiality Provision claims. In fact, the United States' motion is so flawed that it manages to be *both* premature *and* untimely. And the United States' fundamental premise is faulty because the filings and transcripts from the trial—which predated the order and injunction appealed here—are part of the record on appeal.

## BACKGROUND

In the proceedings below, the United States and various groups of Private Plaintiffs raise an array of challenges to multiple provisions of Texas's Election Protection and Integrity Act of 2021 ("SB 1"). This appeal concerns only the claim brought by the United States and one group of private Plaintiffs (the "OCA Plaintiffs") that SB 1's voter-

1

identification requirements for voting by mail violate the so-called Materiality Provision of the Civil Rights Act of 1964, 42 U.S.C. § 10101(a)(2)(B). *See* ECF No. 80-1 at 2-3.[1]

On August 17, 2023, the District Court issued a "Summary Ruling" granting summary judgment on the substance of the United States' and the OCA Plaintiffs' Materiality Provision claims. Doc. 724 at 1. The District Court did not fully explain its reasoning at that time, nor did it grant any relief to the Plaintiffs. Rather, it specified that "[a] written order awarding the declaratory and injunctive relief … requested" by the United States and the OCA Plaintiffs "will follow." *Id.* at 6; *see also id.* at 3 ("The summary ruling will be followed in the coming weeks by a final written opinion and order."). The August 17 ruling also did not adjudicate most of the other claims in this case, which proceeded to a bench trial. *See id.* at 1-2. Nor did the District Court designate that ruling a final judgment pursuant to Federal Rule of Civil Procedure 54(b).

Trial began on the private Plaintiffs' remaining claims on September 11, 2023, Doc. 772, and concluded on October 20, Doc. 814.

---

[1] "ECF" refers to this Court's docket; "Doc." refers to the District Court's docket.

The record at trial contradicted representations made by the OCA Plaintiffs in their summary judgment filings. For example, the OCA Plaintiffs represented that they have standing because one of their members, Teri Saltzman, had her mail ballots rejected in the March and November 2022 elections due to SB 1's voter-identification requirements. Doc. 611 at 38-39. At trial, however, Ms. Saltzman testified that her ballot was rejected in the March 2022 election for a non-SB 1-related failure to check a certain box on it, not for failing to comply with SB 1's voter-identification requirement. Trial Tr. 3357:2-8 (Ex. A). She further testified that she believed her ballot had been accepted without incident in the November 2022 election. *Id.* at 3361:25-3362:16.

The United States and the OCA Plaintiffs also made various representations that the ballot rejection rate had increased substantially under SB 1's voter-identification provisions, *see, e.g.*, Doc. 611 at 14-18; Doc. 609 at 6-7, 13, but trial revealed a much lower rate that continues to decline with each election as voters become more familiar with the voter-identification provisions, *see, e.g.*, Trial Tr. 1106:10-24, 3844:25-3845:8, 4399:19-4402:6. In fact, in Bexar County, the overall rejection

rate for all mail ballots in November 2022 was actually *lower* than it was in the last pre-SB 1 election. *Id.* at 1038:4-6.

The trial record was before the District Court on November 29, 2023, when it issued the opinion and order granting summary judgment on the Plaintiffs' Materiality Provision claims that it had promised in its August 17 ruling. Doc. 821. In finding that the OCA Plaintiffs had standing, the District Court recounted their summary judgment representation regarding Ms. Saltzman, but not Ms. Saltzman's own testimony at trial. *Id.* at 22-23. The November 29 order was the first time that the District Court granted the Plaintiffs any relief in connection with their Materiality Provision claims. *See id.* at 52-53. That relief included a permanent injunction against enforcement of SB 1's voter-identification provisions. *Id.* The District Court again did not issue a judgment under Rule 54(b).

Various State Defendants, *see* Doc. 823, and the Republican Party Appellants, *see* Doc. 827, filed timely notices of appeal. Both notices identified the District Court's November 29 order as the order appealed. And both notices invoked this Court's jurisdiction under 28 U.S.C.

§ 1292(a)(1), which confers jurisdiction over "[i]nterlocutory orders … granting … injunctions."

Thereafter, on December 20, 2023, this Court ordered that the District Court transmit the record on appeal by January 4, 2024. ECF No. 83. The same day, the District Court Clerk's office moved for an extension, given the "voluminous exhibits" in the record. ECF No. 84. This Court granted the motion, also on December 20, extending the deadline to February 5, 2024. ECF No. 88.

Over a month later, and less than two weeks before the record was due, the United States filed its motion on January 25, 2024. ECF No. 103 ("Mot."). The motion argues that, since the District Court granted summary judgment on August 17, this Court should clarify that the record "excludes testimony and exhibits that were introduced at the subsequent bench trial." *Id.* ¶ 5. The motion does not mention that the order appealed from is the District Court's November 29, 2023 opinion and order. *See id.* ¶ 2.

## ARGUMENT

Under the guise of seeking "clarification" of the record, the United States in fact asks the motions panel to prohibit the merits panel from

considering record evidence confirming that the District Court erred in granting summary judgment.  In other words, the United States asks the Court to bury its head in the sand, ignore record evidence bearing directly on the Materiality Provision claims, and declare the Texas Legislature's duly enacted SB 1 unlawful based upon the incomplete record the United States favors.

The Court should deny this request for three reasons.  *First*, the motion is premature.  The proper course is for the United States to present any disputes about the record evidence to the merits panel after Appellants file their opening brief; indeed, the motions panel lacks authority to bind the merits panel in the manner the United States requests.  *Second*, at the same time, the motion is untimely: the United States waited 36 days—and until only two weeks before the record is due—to file it, and granting it now would prejudice the District Court Clerk.  *Third*, in any event, the trial filings and transcripts were before the District Court when it issued the order appealed from and are part of the record on appeal.

**I.**  The United States' motion is premature.  The United States does not cite even a single instance where an appellate court—let alone a

motions panel—has preemptively declared a category of record evidence outside the record on appeal in the manner the United States seeks here. Nor would that course make any sense, since Appellants have not yet had the opportunity to indicate in their opening briefs what, if any, records and testimony from the trial they will rely on in their appellate arguments, let alone make their case for why that evidence is proper for this Court to consider.

Instead, the ordinary practice is for a party to file a motion to strike after the opposing party has included in its brief or appendix evidence the party believes to be outside the record. *See, e.g.*, *Stephens v. Montford*, 236 F. App'x 145, 145 (5th Cir. 2007); *Heitman v. Edwards*, 136 F.3d 1328, 1998 WL 44498, at \*2 (5th Cir. 1998); *Muckleroy v. OPI Int'l, Inc.*, 42 F.3d 641, 1994 WL 708830, at \*2 n.9  (5th Cir. 1994); *cf. Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) (observing that the "better practice is to deal with questions of admissibility of evidence as they arise," rather than to "exclude broad categories of evidence" in advance).  The United States is free to do that after Appellants file their opening briefs—and the merits panel can address any such motion then.

Further, it would not meaningfully promote efficiency for a motions panel to address the scope of the record on appeal at this stage.  In this Circuit, the "opinions and orders of a panel with initial responsibility for resolving motions filed in an appeal are not binding on the later panel that is assigned the appeal for resolution." *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 176 (5th Cir. 2020).  So even if this Court ruled now that the proceedings from trial fall outside the record on appeal, the issue would still remain live in the merits briefing.  The more sensible approach is simply to follow the ordinary course, wait for Appellants to file their opening briefs, and allow Appellees to raise any objections to evidence at that point.

**II.**  At the same time, the United States' motion is untimely.  Even if, in general, it were appropriate for a motions panel to rule preemptively on the scope of the record on appeal, it is too late to do so here.  The United States was on notice by December 8 that Appellants might rely on records from trial in their briefs on appeal.  *See* Mot. ¶ 6 (objecting to the Republican Party Appellants' citation to a trial transcript in their December 8 stay brief).  The Court granted the District Court Clerk an extension to prepare the record—including the "voluminous exhibits" and

8

transcripts from trial—on December 20.  ECF Nos. 84, 88.  Yet the United States did not file its motion until 36 days after that, on January 25.

This delay is prejudicial to the District Court's Clerk's office.  The Clerk's office must submit the record—which is large and complex with or without the filings from trial—by February 5.  ECF No. 88.  It is not fair to the Clerk's office for the United States to inject uncertainty about the scope of the record so close to the deadline, when it had ample opportunity to do so earlier.  *See Abraham v. Alpha Chi Omega*, 708 F.3d 614, 624 (5th Cir. 2013) (relief should be denied on the basis of "laches" where there are "(1) delay, (2) lack of excuse, and (3) undue prejudice").  In contrast, denying the United States' motion causes no prejudice to any party; the United States can always move to strike any allegedly improper portions of Appellants' briefs and appendices after they are filed.

**III.**  Regardless of the foregoing, the United States' motion should be denied because the filings and proceedings from trial are part of the record on appeal.

Both "the original papers and exhibits filed in the district court" and "the transcript of proceedings, if any," "constitute the record on

appeal." Fed. R. App. P. 10(a). Naturally, that includes transcripts from a trial and filings made during a trial.

To be sure, courts have read an implicit limit to the "literal[]" language of Rule 10(a), namely that filings and transcripts from "*after the date of the judgment or order that is challenged on appeal*" are not part of the record. Wright & Miller, *Federal Practice and Procedure* § 3956.1 & n.11 (Apr. 2023 update) (collecting cases). But that poses no obstacle here. The order under review—the District Court's order enjoining enforcement of SB 1's voter-identification provisions—was issued on November 29. Doc. 821; *see* Docs. 823, 827. The trial took place earlier, concluding on October 20, and the trial record was before the District Court when it issued its November 29 opinion and order.

The United States suggests otherwise only by mischaracterizing the District Court's rulings below. The United States claims that the "order" under review here is the District Court's August 17 ruling and that its November 29 order was simply an "opinion setting forth the reasoning for its order." Mot. ¶ 2. To the contrary, as an "order granting partial summary judgment" and entering no relief, the August 17 ruling was an unappealable, "interlocutory" ruling that did not affect the legal

rights or obligations of any party. *Cabral v. Brennan*, 853 F.3d 763, 766 (5th Cir. 2017). Its only function was to notify the parties that they need not prepare to argue the Materiality Provision claims at trial. *See* Doc. 724 at 1-2. And it expressly contemplated a future "final written opinion *and order*." *Id.* at 3 (emphasis added). That order was issued on November 29, when the District Court actually entered an injunction. Doc. 821 at 52-53. And only the act of "granting" an "injunction[]" made the District Court's summary judgment ruling appealable. 28 U.S.C. § 1292(a)(1). Thus, the District Court's November 29 order, not its August 17 order, is the order under review. All District Court filings and proceedings preceding that order, including the trial, are part of the record on appeal.

That should be the end of the matter. The United States objects that evidence from trial cannot affect the correctness of the District Court's summary judgment ruling. Mot. ¶ 6. Even if that were true, however, that would not affect the scope of the record on appeal. The record on appeal is defined by Rule 10(a), which unambiguously includes the filings and transcripts from trial. Even if those records are not relevant to the issue of summary judgment, they are still part of the

record on appeal. The parties' "pleadings are not summary judgment evidence," *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996), for instance, but they still remain part of the record on appeal under Rule 10(a).

And regardless, in this case, the transcripts and filings from trial *are* relevant to the correctness of the District Court's summary judgment ruling. As a grant of partial summary judgment, the District Court's August 17 ruling could "be revised at any time." Fed. R. Civ. P. 54(b). Thus, when issuing its November 29 order, the District Court was "free to reconsider and reverse its decision for any reason it deem[ed] sufficient," including the existence of "new evidence." *McKethan v. Tex. Farm Bureau*, 996 F.2d 734, 738 n.6 (5th Cir. 1993).

That included Ms. Saltzman's testimony at trial, which *contradicted* the OCA Plaintiffs' theory of standing at summary judgment. *See supra* pp.3-4. Given that a plaintiff's lack of standing can be raised "at any time," *Johnson v. City of Dallas*, 61 F.3d 442, 444 (5th Cir. 1995), and that the District Court has a "special obligation to 'satisfy itself … of its own jurisdiction,'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998), it was dubious at best for it to find no material

dispute about Plaintiffs' standing in the face of directly contrary evidence at trial. Accordingly, the records from the trial are not only properly part of the record on appeal; they contain important evidence relevant to the issues in this appeal.

## CONCLUSION

The Court should deny the United States' motion.

Dated: February 5, 2024                Respectfully submitted,

                                        */s/* John M. Gore
                                        John M. Gore
                                          *Counsel of Record*
                                        E. Stewart Crosland
                                        Louis J. Capozzi, III
                                        Ryan M. Proctor
                                        JONES DAY
                                        51 Louisiana Ave. NW
                                        Washington, DC  20001
                                        (202) 879-3939
                                        jmgore@jonesday.com
                                        scrosland@jonesday.com
                                        lcapozzi@jonesday.com
                                        rproctor@jonesday.com


*Counsel for Appellants Harris County Republican Party, Dallas County Republican Party, Republican National Committee, National Republican Senatorial Committee, and National Republican Congressional Committee*

# CERTIFICATE OF SERVICE

On February 5, 2024, this document was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free from viruses.

Dated: February 5, 2024

*/s/* John M. Gore

John M. Gore

*Counsel for Intervenors-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,543 words, excluding the parts of the motion exempted by rule; and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word (the same program used to calculate the word count).

Dated: February 5, 2024

*/s/* John M. Gore

John M. Gore

*Counsel for Intervenors-Appellants*