No. 23-50885

# In the United States Court of Appeals for the Fifth Circuit

---

United States of America; OCA-Greater Houston, League of Women Voters of Texas; REVUP-Texas,

*Plaintiffs-Appellees*,

*v.*

Ken Paxton, Attorney General, State of Texas; Jane Nelson, in her official capacity as Texas Secretary of State; State of Texas; Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee,

*Defendants-Appellants.*

---

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

---

## BRIEF FOR APPELLANTS

---

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General

Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Coy Allen Westbrook
Assistant Attorney General

Counsel for State Defendants-Appellants

## Certificate of Interested Persons

No. 23-50885

United States of America; OCA-Greater Houston, League of Women Voters of Texas; REVUP-Texas,

*Plaintiffs-Appellees,*

*v.*

Ken Paxton, Attorney General, State of Texas; Jane Nelson, in her official capacity as Texas Secretary of State; State of Texas; Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee,

*Defendants-Appellants.*

Under the fourth sentence of Fifth Circuit Rule 28.2.1, Appellants Ken Paxton, Jane Nelson, and the State of Texas, as governmental parties, need not furnish a certificate of interested persons.

/s/ Kateland R. Jackson

Kateland R. Jackson
*Counsel of Record for*
*State Defendants-Appellants*

### Statement Regarding Oral Argument

Defendants-Appellants Ken Paxton, Jane Nelson, and the State of Texas ("State Defendants") request oral argument. This is the fifth appeal arising from a consolidated action in which more than two dozen plaintiffs have challenged more than three dozen separate provisions of the Texas Election Integrity Protection Act of 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Gen. Laws 3873 ("S.B. 1"). Here, the federal government together with a private plaintiff group alleged—and the district court agreed—that by requiring voters seeking to vote by mail to provide identification numbers to show that they are who they say they are Texas violated a federal law designed to combat Jim Crow. In doing so, the district court demonstrated confusion about the scope of this Court's precedent regarding when the Texas Secretary of State is the proper defendant in a challenge to a Texas election law. Given the complexity of the record, the volume of intertwining provisions of the Texas Election Code at issue, and the array of overlapping precedents, oral discussion of the facts and applicable law would likely aid the Court's decisional process.

# TABLE OF CONTENTS

Page

Certificate of Interested Persons ...............................................................ii

Statement Regarding Oral Argument .......................................................iii

Table of Authorities ................................................................................... v

Introduction ................................................................................................ 1

Statement of Jurisdiction ........................................................................... 4

Issues Presented ......................................................................................... 4

Statement of the Case ................................................................................. 4

    I.   The Materiality Provision ............................................................ 4

    II.  Senate Bill 1 ................................................................................. 5

    III. Procedural History .................................................................... 10

Summary of the Argument........................................................................ 15

Standard of Review ................................................................................... 17

Argument................................................................................................... 18

    I.   S.B. 1 Complies With Federal Law. ......................................... 18

        A.  S.B. 1 is not subject to the Materiality Provision. ..............20

            1.   S.B. 1 does not implicate the Materiality Provision because it does not prevent eligible voters from registering to vote. .......... 21

            2.   The Materiality Provision does not extend to regulations relating to vote by mail.................................................... 23

            3.   The Materiality Provision does not apply to race-neutral election regulations................................................. 26

        B.  Even if the Materiality Provision applies, S.B. 1's identification requirement satisfies it................................28

    II.  The District Court Lacked Jurisdiction to Enjoin the Secretary............... 37

        A.  The Secretary is entitled to sovereign immunity. ...............38

        B.  The OCA-Plaintiffs lack standing to sue the Secretary.....................42

Conclusion................................................................................................. 45

Certificate of Service................................................................................. 46

Certificate of Compliance ......................................................................... 46

# Table of Authorities

Page(s)

**Cases:**

*In re Abbott*,
809 F. App'x 200 (5th Cir. 2020) (per curiam) ................................... 3

*In re Abbott*,
954 F.3d 772 (5th Cir. 2020) ............................................................ 3

*Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*,
851 F.3d 507 (5th Cir. 2017) ..................................................... 39, 43

*Alden v. Maine*,
527 U.S. 706 (1999) ........................................................................ 38

*Alexander v. S.C. State Conference of the NAACP*,
144 S. Ct. 1221 (2024) .................................................................... 20

*Alice L. v. Dusek*,
492 F.3d 563 (5th Cir. 2007) (per curiam) ...................................... 40

*Allen v. U.S. Postal Serv.*,
63 F.4th 292 (5th Cir. 2023) ........................................................... 18

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ........................................................................ 19

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........................................................................ 17

*Ball v. LeBlanc*,
792 F.3d 584 (5th Cir. 2015) ........................................................... 18

*Brnovich v. DNC*,
594 U.S. 647 (2021) ........................................................................ 24

*Broyles v. Texas*,
618 F. Supp. 2d 661 (S.D. Tex. 2009),
*aff'd*, 381 F. App'x 370 (5th Cir. 2011) ............................................ 26

*California v. Texas*,
593 U.S. 659 (2021) .......................................................... 18, 37, 43

*Carrington v. Rash*,
380 U.S. 89 (1965) .......................................................................... 27

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ................................... 17, 38, 39, 43

*City of Boerne v. Flores,*
    521 U.S. 507 (1997) ......................................................... 27

*Clapper v. Amnesty Int'l. USA,*
    568 U.S. 398 (2013)......................................................... 43

*Clingman v. Beaver,*
    544 U.S. 581 (2005) ........................................................ 31

*Common Cause v. Thomsen,*
    574 F. Supp. 3d 634 (W.D. Wis. 2021) ............................. 36

*Condon v. Reno,*
    913 F. Supp. 946 (D.S.C. 1995) ................................... 21, 22

*Crawford v. Marion Cnty. Elec. Bd.,*
    553 U.S. 181 (2008)....................................... 1, 2, 3, 34

*Democratic Nat'l Comm. v. Wis. State Leg.,*
    141 S. Ct. 28 (2020) ........................................................ 26

*Fla. State Conf. of NAACP v. Browning,*
    522 F.3d 1153 (11th Cir. 2008) ........................... 19, 22, 37

*Friedman v. Snipes,*
    345 F. Supp. 2d 1356 (S.D. Fla. 2004)................... 5, 22, 30

*In re Gee,*
    941 F.3d 153 (5th Cir. 2019) (per curiam)......................... 43

*In re State,*
    602 S.W.3d 549 (Tex. 2020) ........................................... 35

*Goosby v. Osser,*
    409 U.S. 512 (1973) ........................................................ 25

*Haverkamp v. Linthicum,*
    6 F.4th 662 (5th Cir. 2021) (per curiam) ......................... 38

*Horton v. Bank One, N.A.,*
    387 F.3d 426 (5th Cir. 2004) ........................................... 21

*In re Hotze,*
    610 S.W.3d 909 (Tex. 2020) (orig. proceeding) ................. 6

*Jackson v. Wright,*
    82 F.4th 362 (5th Cir. 2023)....................................... 40, 41

*Kramer v. Union Free Sch. Dist. No. 15,*
    395 U.S. 621 (1969).................................................... 21-22

*La Union del Pueblo Entero v. Abbott,*
    29 F.4th 299 (5th Cir. 2022) ....................................... 6, 39

*Lewis v. Scott*,
28 F.4th 659 (5th Cir. 2022) ..................................................... 16, 40

*Liebert v. Millis*,
23-cv-672, 2024 WL 2078216 (W.D. Wis. May 9, 2024) ......................23, 32, 34

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ........................................................ 18, 37, 42, 44

*McDonald v. Bd. of Election Comm'rs of Chi.*,
394 U.S. 802 (1969) .................................................. 2, 21, 24, 25, 32

*McKay v. Altobello*,
No. 2:96-cv-3458, 1996 WL 635987 (E.D. La. Oct. 31, 1996) ...........................20

*McKay v. Thompson*,
226 F.3d 752 (6th Cir. 2000) ...........................................................20

*Miller v. Johnson*,
515 U.S. 900 (1995) ...................................................................20

*Monessen Sw. Ry. Co. v. Morgan*,
486 U.S. 330 (1988) ..................................................................24

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
597 U.S. 1 (2022) .....................................................................23

*Nat'l Press Photographers Ass'n v. McCraw*,
90 F.4th 770 (5th Cir. 2024) ..........................................................43

*O'Brien v. Skinner*,
414 U.S. 524 (1974) ...................................................................25

*Ortiz v. Jordan*,
562 U.S. 180 (2011) ...................................................................13

*Ostrewich v. Tatum*,
72 F.4th 94 (5th Cir. 2023), *cert. denied sub nom.*
*Ostrewich v. Hudspeth*, 144 S. Ct. 570 (2024) ................................... 40, 41

*Pa. State Conf. of NAACP Branches v. Schmidt*,
97 F.4th 120 (3d Cir. 2024) .....................3, 9, 15, 18, 19, 23, 25, 27, 29, 30, 31, 34

*Purcell v. Gonzalez*,
549 U.S. 1 (2006) (per curiam)................................................... 1-2, 34

*Raj v. La. State Univ.*,
714 F.3d 322 (5th Cir. 2013) .........................................................11

*Reno v. Bossier Parish Sch. Bd.*,
528 U.S. 320 (2000)...................................................................22

*Richardson v. Tex. Sec'y of State*,
  978 F.3d 220 (5th Cir. 2020) ..................................................1, 33

*Ritter v. Migliori*,
  142 S. Ct. 1824 (2022) ...................................... 3, 9, 19, 25, 27, 29, 30

*Rosario v. Rockefeller*,
  410 U.S. 752 (1973) ...........................................................25-26

*Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*,
  547 U.S. 47 (2006) ..............................................................42-43

*Russell v. Jones*,
  49 F.4th 507 (5th Cir. 2022) .......................................................38

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003) ............................... 9, 22, 25, 30

*Shelby County v. Holder*,
  570 U.S. 529 (2013)................................................................27

*Smiley v. Holm*,
  285 U.S. 355 (1932) ................................................................19

*State v. Hollins*,
  620 S.W.3d 400 (Tex. 2020) (per curiam) .........................................6

*State v. Zurawski*,
  No. 23-0629, 2024 WL 2787913 (Tex. May 31, 2024) ............................... 42, 43

*Storer v. Brown*,
  415 U.S. 724 (1974) .................................................................1

*Tex. All. For Retired Ams. v. Hughs*,
  976 F.3d 564 (5th Cir. 2020) (per curiam)..........................................6

*Tex. All. for Retired Ams. v. Scott*,
  28 F.4th 669 (5th Cir. 2022) .....................................16, 39, 40, 41, 43

*Tex. Dem. Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ................................. 2, 22, 24, 38, 39, 41

*Tex. Dem. Party v. Abbott*,
  961 F.3d 389 (5th Cir. 2020) .......................................... 19, 24, 25, 32

*Texas v. Nuclear Regul. Comm'n*,
  78 F.4th 827 (5th Cir. 2023) .......................................................43

*Thrasher v. Ill. Republican Party*,
  2013 WL 442832 (C.D. Ill. Feb. 5, 2013)............................................22

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997) ................................................................18

*TransUnion LLC v. Ramirez*,
   594 U.S. 413 (2021) ................................................................ 37-38
*United States v. Goldenberg*,
   1468 U.S. 95 (1897) ..................................................................... 29
*United States v. Mississippi*,
   380 U.S. 128 (1965) .................................................................... 26
*United States v. Texas*,
   143 U.S. 621 (1892) .................................................................... 43
*United States v. Transocean Deepwater Drilling, Inc.*,
   767 F.3d 485 (5th Cir. 2014) ..................................................... 29
*Valentine v. Collier*,
   956 F.3d 797 (5th Cir. 2020) (per curiam) ................................. 3
*Veasey v. Abbott*,
   830 F.3d 216 (5th Cir. 2016) (en banc) ................................. 2, 3, 32, 37
*Vote.Org v. Callanen*,
   89 F.4th 459 (5th Cir. 2023) .................... 1, 3, 15-16, 18, 20, 22-23, 27, 28, 29, 32
*Vote.Org v. Callanen*,
   39 F.4th 297 (5th Cir. 2022) ....................................... 2, 3, 29, 30, 31, 35
*Ex parte Young*,
   209 U.S. 123 (1908) ................................... 11, 16-17, 38, 39, 41, 43, 44

**Constitutional Provision, Statutes and Rules:**

U.S. Const.:
   amend. XV ....................................................................... 26, 27
   amend. XV, § 1 ...................................................................... 27
28 U.S.C.:
   § 1292(a)(1) ............................................................................ 4
   § 1331 .................................................................................... 4
42 U.S.C.:
   § 1983 ....................................................................... 11, 20, 38

**Constitutional Provision, Statutes and Rules con't:**

52 U.S.C.:

§ 10101(a)(2)(B) .......................................... 2, 4, 5, 20, 21, 22, 28, 29, 34

§ 10101(c) ................................................................................ 20

§ 10101(e) ........................................................................... 22, 24

§ 10301(a) ............................................................................. 5, 21

§ 20901 *et seq.* ...................................................................... 19, 36

§ 21083(a)(5)(A) ......................................................................... 7

§ 21083(a)(5)(A)(i) ..................................................................... 36

Election Integrity Protection Act of 2021 ("S.B. 1"):

§ 1.03 ........................................................................................ 1

§ 1.04 ..................................................................................... 1, 32

§ 2.07 ........................................................................................ 5

§ 5.02 ................................................................................... 10, 30

§ 5.03 ....................................................................................... 10

§ 5.07 ............................................................................10, 13, 14, 30

§ 5.08 ....................................................................................... 10

§ 5.10 ....................................................................................... 10

§ 5.12 ....................................................................................... 10

§ 5.13 ................................................................................... 10, 14

§ 5.14 ....................................................................................... 10

Tex. Elec. Code:

§ 1.0015 ..................................................................................... 7

§ 11.002(a) ................................................................................ 37

§ 13.002 .................................................................................... 34

§ 13.002(c)(8) ......................................................................... 7, 36

§ 18.068(a) .................................................................................. 5

§ 31.001 .................................................................................... 40

§ 31.003 .................................................................................... 41

§§ 31.003-.004 ........................................................................... 41

§ 31.005 .................................................................................... 41

§ 63.001 ...................................................................................... 3

§ 82.001-82.004 ......................................................................... 35

§ 82.005 .................................................................................... 35

§§ 83.001-83.009 ......................................................................... 8

§ 84.001 .................................................................................... 35

§ 84.001(a) ................................................................................ 35

**Constitutional Provision, Statutes and Rules con't:**

§ 84.001(b) ................................................................................ 31

§ 84.002 .................................................................................. 2, 35

§ 84.002(a)(1) ............................................................................ 37

§ 84.002(1-a) ......................................................................... 7, 10

§ 84.007(c) ................................................................................. 10

§ 84.011(a)(3-a) ........................................................................ 10

§ 84.031(b) ........................................................................... 10, 33

§ 84.032 ...................................................................................... 10

§ 84.035 ...................................................................................... 10

§ 84.0029(a)(1-a) ...................................................................... 30

§ 86.001 ....................................................................................... 8

§ 86.001(a) ................................................................................... 8

§ 86.001(b) ................................................................................... 8

§ 86.001(c) ........................................................... 8, 17, 40, 41

§ 86.001(f) ............................................................................. 9, 10

§ 86.001(f)-(f-2) ..................................................................... 7, 30

§ 86.002 .................................................................................. 2, 31

§ 86.002(a) ................................................................................... 8

§ 86.002(g)-(i) .............................................................................. 7

§ 86.002(g) ................................................................................. 10

§ 86.005 ...................................................................................... 31

§ 86.007(a)(2) ............................................................................ 31

§ 86.008 ........................................................................................ 9

§ 86.013 ........................................................................................ 7

§ 86.015(c)(4) ............................................................................ 10

§ 87.001 ........................................................................................ 8

§ 87.002 ...................................................................................... 40

§ 87.021 ...................................................................................... 10

§ 87.027(a) ................................................................................... 8

§ 87.041 ........................................................................................ 7

§ 87.041(a) ............................................................. 17, 40, 41

§ 87.041(b) .............................................................................. 7, 9

§ 87.041(b)(2) ........................................................................... 31

§ 87.041(b)(6) ........................................................................... 31

§ 87.041(b)(8) ........................................................................ 9, 10

§ 87.041(d-1) ............................................................................... 7

**Constitutional Provision, Statutes and Rules con't:**

    § 87.041(b)(8) ................................................................... 10, 35

    § 87.041(e) ..............................................................................7

    § 87.0271 ............................................................................. 10

    § 87.0411 ............................................................... 9, 10, 31

    § 87.0411(b)(1) ................................................................... 31

Fed. R. Civ. P. 56(a) ............................................................ 17

Fed. R. Civ. P. 56(e) ................................................... 42, 44

Fifth Cir. R. 28.2.1 ..................................................................i

Civil Rights Act of 1964

    § 101(a) ..................................................................................4

    § 1971 .....................................................................................2

Voting Rights Act § 2 ...................................................... 5, 21

**Other Authorities:**

Black's Law Dictionary (5th ed. 1979) ................................ 29

*Election Advisory No. 2020-14*, Tex. Sec'y of State (April 6, 2020),
    https://tinyurl.com/mr9kmxpk ........................................6

National Conf. of State Legislatures, *Voter ID Laws*,
    https://perma.cc/4HGH-7NS6 ........................................2

Note, *The Submerged Constitutional Right to an Absentee Ballot*, 72
    Mich. L. Rev. 157, 159-61 (1973) ................................ 24

*Table 14: How States Verify Voted Absentee/Mail Ballots*, National
    Conference of State Legislatures (Mar. 15, 2022),
    https://tinyurl.com/3fwkysxz ........................................ 32

The Governor of the State of Tex., Proclamation No. 41-3752, 45 Tex.
    Reg. 5449 (2020) ...............................................................6

U.S. Election Assistance Comm'n, *Voter FAQs*,
    https://perma.cc/FNQ3-SLC4 ...................................... 31

Websters Third International Dictionary (1961) .............. 22, 29

# Introduction

Among a State's most fundamental duties are enacting clear and uniform laws for voting, ensuring "fair and honest" elections, bringing "order, rather than chaos, [to] the democratic process[]," and protecting the right to vote. *Storer v. Brown*, 415 U.S. 724, 730 (1974). Accordingly, "[v]oter integrity" is "a substantial interest" that Texas has a right to protect. *Vote.Org v. Callanen*, 89 F.4th 459, 4888 (5th Cir. 2023) (*Vote.Org II*); *see Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 239 (5th Cir. 2020) ("Texas indisputably has a compelling interest in preserving the integrity of its election process." (cleaned up)). Like every other State, Texas "[o]bviously . . . has considerable discretion in deciding what is an adequate level of effectiveness to serve its important interests in voter integrity" and significan[t] . . . authority to set its electoral rules." *Vote.Org II*, 89 F.4th at 481, 485. "While the most effective method of preventing election fraud may well be debatable, the propriety of doing so is perfectly clear." *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 196 (2008). That is why when reviewing state election laws, federal courts give "considerable deference [to those] election procedures so long as they do not constitute invidious discrimination." *Vote.Org II*, 89 F.4th at 481.

Passed "to prevent fraud in the electoral process," promote "voter access," "increas[e] the stability of [] constitutional democracy," and make "the conduct of elections ... uniform and consistent throughout this state," S.B. 1—and specifically its provisions to enhance security in early mail-voting at issue here—involves no such discrimination. S.B. 1 §§ 1.03, 1.04. Because "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government," *Purcell*

*v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam), most States require voters to provide identification to vote in person. *See, e.g.*, National Conf. of State Legislatures, *Voter ID Laws*, https://perma.cc/4HGH-7NS6. Increasingly, States require voters casting a ballot by mail to do the same because "the potential and reality of fraud is much greater" with mail-in ballots "than with in-person voting." *Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (en banc). The provisions of S.B. 1 at issue in this appeal do precisely that by requiring voters seeking to vote by mail to provide a government-issued identification number (or a statement that the voter has no such number). Tex. Elec. Code §§ 84.002, 86.002.

Like other regulations of its kind, S.B. 1's identification requirement does not burden the right to vote, which does not extend to a right to vote by mail. *Tex. Dem. Party v. Abbott*, 978 F.3d 168, 185 (5th Cir. 2020) (*TDP II*) (citing *inter alia McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802 (1969)). But the requirement does support Texas's "interest in deterring and detecting voter fraud." *Crawford*, 553 U.S. at 191.

Nevertheless, the district court enjoined the State Defendants from enforcing S.B. 1's identification requirement as supposedly violating section 1971 of the Civil Rights Act of 1964, now codified under 52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision"). But this Court has rejected the notion that "any requirement that may prohibit an individual from voting if the individual fails to comply denies the right of that individual to vote under the [Materiality Provision]. Otherwise, virtually every rule governing how citizens vote would [be] suspect." *Vote.Org v. Callanen*, 39 F.4th 297, 305 n.6 (5th Cir. 2022) (*Vote.Org I*).

The Materiality Provision does not bar S.B. 1's identification requirement because it applies only to rules that govern the voter-registration process to determine whether an individual is qualified to vote. *See Pa. State Conf. of NAACP Branches v. Schmidt*, 97 F.4th 120, 131 (3d Cir. 2024), *reh'g denied* (Apr. 30, 2024); *see also Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting); *Vote.Org I*, 39 F.4th at 305 n.6; *Vote.Org II*, 89 F.4th at 479 n.7. Properly construed, it does *not* bar a State's neutral rules—like S.B.1's identification requirement—that govern the process for already-registered voters. *Cf. Crawford*, 553 U.S. at 196; *Veasey*, 830 F.3d at 239. And it does not prohibit a requirement that, when a voter casts a ballot in person, he provides identification to prove he is the same person who registered to vote. Tex. Elec. Code § 63.001. S.B. 1 imposes an analogous requirement on those seeking to vote by mail. Because "[e]ven the most permissive voting rules must contain some requirements," the district court erred in concluding that such a rule imposes an improper burden on the right to vote. *Vote.Org I*, 39 F.4th at 305 n.6. True, certain voters may "fail[] to follow these rules," but that would merely "constitute[] the forfeiture of the right to vote, not the *denial* of that right." *Id.* (emphasis added).

To make matters worse, the district court issued its injunction while this Court was already considering whether federal courts even have jurisdiction over such claims against Texas's Secretary of State. As such, the district court's injunction is "patently wrong," *In re Abbott*, 954 F.3d 772, 778 (5th Cir. 2020); *see also In re Abbott*, 809 F. App'x 200, 202 (5th Cir. 2020) (per curiam); *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir. 2020) (per curiam), and it should be reversed.

## Statement of Jurisdiction

Plaintiffs invoked the original jurisdiction of the district court 28 U.S.C. § 1331. *But see* Part II (explaining why that jurisdiction does not extend to all State Defendants). This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1) because State Defendants timely appealed, ROA.33271-72, the district court's grant of a permanent injunction, ROA.33266-67.

## Issues Presented

1. Whether S.B. 1's neutral, ballot-casting requirements violate the Materiality Provision of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B).

2. Whether the district court erred because it lacked jurisdiction to enjoin the Secretary.

## Statement of the Case

### I. The Materiality Provision

Section 101(a) of the Civil Rights Act of 1964 prohibits State voter registration officials from denying anyone the right to vote for reasons that have no bearing on the individual's voter qualifications. *See* § 10101(a)(2)(B). Specifically, the Materiality Provision provides that no State actor may

> deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election[.]

52 U.S.C. § 10101(a)(2)(B).

Congress enacted the Materiality Provision to prevent state efforts during the Jim Crow period that sought to disenfranchise certain groups based on race. To do so, the Materiality Provision applies during voter "registration" and "other" similar processes that assess an individual's qualifications to vote. *Id*.; *see also Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004) (holding that the Materiality Provision has no application beyond whether a voter is "qualified to vote"). The Provision prohibits outright "den[ials]" of "the right . . . to vote" based on "not material" errors or omissions in voter-registration paperwork. *Id*.; *see also* ECF 80-1 at 5. It does not prohibit the State from enforcing neutral, ballot-casting rules that have no bearing on a voter's qualifications. The Provision is notably different in scope than the perhaps more famous Section 2 of the Voting Rights Act, which prohibits not just certain actions that "deny the right of any individual to vote," 52 U.S.C. § 10101(a)(2)(B), but "standard, practice, or procedure" that "results in a denial *or abridgment* of the right of any citizen … to vote," *id.* § 10301(a) (emphasis added).

## II.  Senate Bill 1

Passed in response to the 2020 election, which proved to be a stress test of a kind never before seen for local Texas election officials, the challenged provisions of S.B. 1 have nothing to do with voter registration and do not deny (or abridge) anyone's right to vote.[1] Specifically, because of the COVID-19 pandemic, Governor

---

[1] Notably, Article 2 of S.B. 1 *did* update Texas's voter-registration rules. For example, section 2.07 directs the Secretary to give the voter registrar notice if she determines that a voter on the registration list no longer lives in the county where that

Greg Abbott extended the early-voting period ahead of the November 2020 general election and allowed counties to accept hand delivery of mail-in ballots before election day. *See* The Governor of the State of Tex., Proclamation No. 41-3752, 45 Tex. Reg. 5449, 5456 (2020). The Secretary also provided detailed guidance to local officials regarding the administration of the election during the pandemic. *See Election Advisory No. 2020-14*, Tex. Sec'y of State (April 6, 2020), https://tinyurl.com/mr9kmxpk. Nevertheless, local officials throughout the State began creating their own voting rules, leading to disuniformity, widespread uncertainty, and extensive litigation both here and in state court. *See, e.g.*, *Tex. All. For Retired Ams. v. Hughs*, 976 F.3d 564 (5th Cir. 2020) (per curiam); *State v. Hollins*, 620 S.W.3d 400 (Tex. 2020) (per curiam); *In re Hotze*, 610 S.W.3d 909 (Tex. 2020) (orig. proceeding) (Devine, J., dissenting from denial of mandamus relief).

In the aftermath of that chaotic election cycle, the Texas Legislature enacted, and the Governor signed, the Election Protection and Integrity Act of 2021, an omnibus election law commonly referred to as "S.B. 1." *See* Election Integrity Protection Act of 2021, 87th Leg., 2d C.S., ch. 1, 2021 Tex. Gen. Laws 3873 ("S.B. 1"). Responding specifically to issues arising in 2020, S.B. 1 updates numerous aspects of the Texas Election Code. *See La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 304 (5th Cir. 2022). As the Legislature expressly explained, the purpose of the bill, and each of the provisions at issue here, was to "reduce the likelihood of fraud in the

---

person is registered to vote. Tex. Elec. Code § 18.068(a). The private Plaintiffs did not allege the Materiality Provision is implicated by these updates. ROA.6290-6423.

conduct of elections, protect the secrecy of the ballot, promote voter access, and ensure that all legally cast ballots are counted." Tex Elec. Code § 1.0015.

As relevant to this appeal, S.B. 1 requires already-registered voters seeking to cast a mail-in ballot to provide information to ensure that a voter's ballot is provided to only that voter. Texans have long provided a government-issued identification number when registering to vote, *see id.* § 13.002(c)(8)—as they must to satisfy the Help America Vote Act ("HAVA"), 52 U.S.C. § 21083(a)(5)(A). And even before S.B. 1, voters were required to provide certain information on a mail-in ballot carrier envelope (including name, home address, and signature). *Id.* § 86.013.

After S.B. 1, the voter must include on their ballot-by-mail application:

(a) the number of the applicant's driver's license, election identification certificate, or personal identification card issued by the Department of Public Safety;

(b) if the applicant has not been issued a number described by Paragraph (a), the last four digits of the applicant's social security number; or

(c) a statement by the applicant that the applicant has not been issued a number described by Paragraph (a) or (b).

Tex. Elec. Code § 84.002(1-a); *id.* § 86.001(f)-(f-2); *cf.* 52 U.S.C. § 21083(a)(5)(A) (federal law providing the same framework). Voters must then record on the carrier envelope one of these same numbers, Tex. Elec. Code § 86.002(g)-(i), or their ballot will be rejected, *id.* § 87.041(b), (d-1), (e). Accordingly, S.B. 1 requires that an applicant's identification number appears both on the mail-in ballot application and mail-in ballot envelope. *Id.* § 87.041.

S.B. 1 requires early-voting clerks, who are local rather than state officials,[2] to "review each application for a ballot to be voted by mail." *Id.* § 86.001(a). Early-voting clerks must evaluate mail-in ballot applications and determine whether an application is deficient, including for failure to provide the necessary identification number or failure to match the identification number to the voter's registration records. *Id.* § 86.001. If the clerk determines that an applicant is not eligible to vote by mail, he must reject the application and deliver written notice to the applicant. *Id.* § 86.001(c). Otherwise, the clerk will mail the voter "an official ballot," *id.* § 86.001(b), along with the official ballot envelope and the mail-in ballot carrier envelope, *id.* § 86.002(a). Only if the application satisfies Texas law will the voter receive a mail-in ballot.

To facilitate this process, voters are permitted to provide either a driver's license number or a DPS identification number, and local election officials have encouraged voters to include both numbers (if available) on applications and ballot carrier envelopes. *See* ROA.33224. And "to process early voting results from the territory served by the early voting clerk," the Election Code requires the creation of early-voting ballot boards, Tex. Elec. Code § 87.001, and allows for a signature verification committee to assist with processing mail-in ballots, *id.* § 87.027(a). Early-voting ballot boards open and evaluate mail-in ballots to determine whether they

---

[2] The exact identity of the early-voting clerk differs based on, among other things, the type of election. Tex. Elec. Code §§ 83.001-83.009. The distinctions are not pertinent to this appeal: None of the officers specified report to any of the statewide officials named as Defendants.

should be accepted pursuant to the Code, including S.B. 1's identification requirement. *Id.* § 87.041(b). In practice, election officials have accepted mail-voting applications and ballots with either or both numbers, so long as one of the numbers provided matches a number recorded for the voter in the State's voter-registration database, Texas Election Administration Management ("TEAM"). ROA.33224; *see also id.* §§ 86.001(f), 87.041(b)(8) (instructing local officials to accept if the number "provided by the voter identifies the same voter identified" in the voter's registration file).

Nothing in S.B. 1 requires early-voting clerks—or anyone else applying S.B. 1's identification requirement—to determine whether an individual is *qualified* to vote. *See, e.g.*, ROA.33224. Nor do early-voting clerks "disqualify" individuals who fail to comply with S.B. 1's identification requirements or otherwise prevent them from exercising the right to vote. *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). Early-voting clerks merely reject noncompliant applications or ballots if an already registered voter "did not follow the rules for" submitting an application or "casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting); *cf. Pa. State Conf. of NAACP*, 97 F.4th at 133.

Far from seeking to "deny the right of any individual to vote," S.B. 1 provides that if a voter submits a defective ballot that must be rejected, including due to noncompliance with S.B. 1's identification requirement, the voter has an opportunity to cure. Tex. Elec. Code §§ 86.008, 87.0411; ROA.33221-22. The law requires that the voter be notified if either his application or ballot has been flagged for rejection. Voters may cure defects online, by mail, or in person within six days of Election Day.

Tex. Elec. Code § 87.0271; ROA.33221-22. And if a voter is unable to cure a defect, he can always vote in person. *See* Tex. Elec. Code §§ 84.007(c), 84.031(b), 84.032, 84.035.

### III. Procedural History

**A.**  Shortly after S.B. 1's enactment, multiple lawsuits were filed challenging dozens of its provisions on a smattering of different legal theories asserted by a variety of defendants. As relevant here, the United States challenges sections 5.07 (Tex. Elec. Code § 86.001(f)) and 5.13 (Tex. Elec. Code § 87.041(b)(8)), which require an election official to reject mail-in ballot applications and mail-in ballots if the identification number provided does not match an identification number included with that voter's registration records. OCA-Greater Houston, League of Women Voters of Texas, and REVUP-Texas (collectively, the "OCA-Plaintiffs") also challenged S.B. 1's entire number-matching framework, including S.B. 1 sections 5.02, 5.03, 5.07, 5.08, 5.10, 5.12, 5.13, and 5.14 (codified at Tex. Elec. Code §§ 84.002(1-a), 84.011(a)(3-a), § 86.001(f), 86.002(g), 86.015(c)(4), 87.021, 87.041(b)(8), 87.0411).[3] In short, their theory is that these sections violate the Materiality Provision by requiring the rejection of mail-in ballot applications and carrier envelopes based on errors or omissions that allegedly are not material to determining whether a person is qualified to vote.

---

[3] To avoid confusion, unless otherwise specified, references in this brief to "S.B. 1" are to these sections—not to the dozens of other provisions challenged in the sprawling consolidated litigation below.

On February 8, 2022, State Defendants—including, most relevant here, the Secretary of State—moved to dismiss the operative complaints. ROA.7393-7421; ROA.4874-95. State Defendants argued in each case that the OCA-Plaintiffs could not overcome the Secretary's sovereign immunity for their claims brought via 42 U.S.C. § 1983[4] through the *Ex parte Young* exception, because the challenged provisions of S.B. 1 concerned either voting rules enforced by local officials or provisions that did not empower the Secretary to compel or constrain Plaintiffs. ROA.7404-07. For closely related reasons, State Defendants argued that all Plaintiffs lacked standing as their alleged harms were not fairly traceable to the Secretary or redressable by a court against her. ROA. 7406-09.

The district court denied Defendants' motions to dismiss, ROA.10754-827; ROA.10828-88, and Defendants promptly appealed, ROA.11024-25; ROA.11025-27. Those appeals remain pending. *See LUPE v. Scott*, No. 22-50775; *Mi Familia Vota v. Scott*, No. 22-50777; *OCA-Greater Hous. v. Nelson*, No. 22-50778.

**B.** Because the Secretary's appeal—together with that of the other State Defendants—did not completely strip the district court of jurisdiction, discovery continued. The facts that emerged showed that S.B. 1 has not suppressed voter turnout

---

[4] The OCA-Plaintiffs brought their constitutional claims and their claim under the Materiality Provision via 42 U.S.C. § 1983. ROA.6468-69. Because section 1983 does not abrogate the State's sovereign immunity, *see Raj v. La. State Univ.*, 714 F.3d 322, 328 (5th Cir. 2013), the OCA-Plaintiffs had to rely on the *Ex parte Young* exception to support their effort to overcome the Secretary's sovereign immunity. The United States did not have the same issue, *infra* at 20 n.6, but it also did not challenge the full range of provisions listed in the OCA-Plaintiffs' complaint.

or resulted in higher ballot rejection rates. Instead, once counties had sufficient time to implement S.B. 1's identification requirement, the rejection rate for both mail-in ballot applications and ballots declined each successive election. ROA.23164. According to the TEAM database, the statewide rejection rate for mail-in ballots dropped from its peak in the March 1, 2022 primary to 5.02 percent in the May 7, 2022 constitutional amendment election; 4.11 percent in the May 24, 2022 primary runoff; and **2.7 percent** in the November 8, 2022 general election. ROA.23882-917. Based on the record, the statewide rejection rate in Texas historically has been between 1 and 3 percent depending on the election. ROA.22600. The former Director of Elections Keith Ingram testified that with the decline witnessed since the 2022 primary, rejection rates in Texas "are back in the zone." ROA.22600. And in the 2022 general election, nearly half of rejected ballots were cured, including those from members of Plaintiff organizations. ROA.13203-06; ROA.40980-81.

According to the federal government's own expert, only 11,430 mail-in ballots in the 2022 November general election were initially rejected due to voters' failure to provide a matching identification number. ROA.15323; ROA.15465-66 (¶¶ 19-21). Only 6,355 mail-in ballots were rejected because the voter did not ultimately cure. ROA.15460-63 (¶¶ 6, 14 n.1); ROA.22560-61 ((¶¶ 6, 7). This is out of 332,281 mail-in ballots cast and 8,107,575 total ballots cast once in-person voting is taken to account. The figure for total ballots cast was derived by adding 7,775,194 in-person ballots to 332,281 mail-in ballots. *See* ROA.15463-65 (¶¶ 15, 18); ROA.22569-70 (¶ 27 n.6, noting that 0.078 percent (6,355/8,102,908) of all votes cast were potentially "lost" due to S.B. 1). It is unknown how many of these voters failed to follow

instructions as opposed to any alleged inaccuracy, omission, or incomplete record in the TEAM database. ROA.22560-61; ROA.22564-65 (¶¶ 6, 16). *See*, *e.g.*, ROA.22798-99 at 15:17–18:23 (entering passport number on mail-in ballot application); ROA.22803-04 at 9:13–11:21 (entering passport number on mail-in ballot application). Likewise, it is not clear how many of the 6,355 mail-in ballots were even submitted by legitimate voters. ROA.22560-61; ROA.22564-65; ROA.22565-66 (¶¶ 6, 16, 19). Yet OCA-Plaintiffs continue to claim, without evidence, that every ballot was legal.

Regardless of the source of these rejections, multiple election officials testified that, as voters have become more familiar with S.B. 1, overall mail-in ballot rejection rates have fallen to historical levels—or even *lower*. *See, e.g.*, ROA.22523-26 (Bexar County rejection rate lower in 2022 general election than in 2020 general election); ROA.22628-30 (Denton County); ROA.22846-47.[5]

**C.** On May 26, 2023, all Plaintiffs moved for partial summary judgment, arguing that various provisions of S.B. 1 violate the Materiality Provision. ROA.13265-95; ROA.15301-64. On November 29, 2023, the district court granted the United States' motion for summary judgment, ROA.33266-67; granted in part the OCA

---

[5] It is not State Defendants position that trial testimony in this brief *should* have been considered at summary judgment. Having granted summary judgement, however, the district court nonetheless waited to see how trial would develop before issuing its injunction. ROA.27041-48; ROA.33215-67. Because "the full record developed in court supersedes the record existing at the time of the summary-judgment motion," *Ortiz v. Jordan*, 562 U.S. 180, 184 (2011), this order of operations leaves the record profoundly unclear regarding which facts the district court considered when crafting its injunction.

Plaintiffs' motion for summary judgment solely as to S.B. 1 section 5.07, ROA.33266-67; and enjoined State Defendants, the now-defunct Harris County Elections Administrator, and the Travis County Clerk from enforcing the requirements of S.B. 1 sections 5.07 and 5.13. ROA.33266-67.

The district court held that the Materiality Provision preempts States' rules that do not require information "material to [a voter's] qualification to vote in a given election." ROA.33240. The district court reasoned that it "is self-evident that a voter's ID number is not material to her eligibility to vote under Texas law." ROA.33241. The court did acknowledge that the Materiality Provision is aimed at eradicating race discrimination, ROA.33251-54, but squarely rejected the argument that "the Materiality Provision does not apply to nondiscriminatory, 'neutrally applied' state laws such as Sections 5.07 and 5.13," ROA.33257. Instead, the court concluded that "regardless of any racial considerations," Congress could and did "require that votes in federal elections be counted despite immaterial paperwork errors." ROA.33260. The district court then proceeded to find that the relevant sections of S.B. 1 violated the Materiality Provision because, in its view, "a DPS number or SSN4 appearing in state databases is not material to voter qualifications"—regardless of race. ROA.33260. It therefore enjoined State Defendants from enforcing S.B. 1's identification requirement. ROA.33262-66.

On December 1, 2023, State Defendants filed a notice of appeal. ROA.33271-72. Noting that local runoff elections—some of them quite consequential—were then ongoing, and the actual tally in those elections was imminent, State Defendants also immediately sought a stay pending appeal or, alternatively, a seven-day

administrative stay of the district court's order. ROA.33273-85. The district court denied State Defendants' requested stay on December 4, 2023. ROA.33305-10. However, this Court granted State Defendants' request to stay the district court's injunction pending appeal. ECF 80-1 at 9. Among other reasons, the Court explained that it would likely reverse the district court's injunction because the Materiality Provision does not apply to "vote-by-mail restrictions," ECF 80-1 at 5-6—a position joined by one of its sister Circuits just weeks later, *Pa. State Conf. of NAACP*, 97 F.4th at 125.

## Summary of the Argument

**I.** Plaintiffs' Materiality Provision claims fail on the merits for two basic reasons:

**(A)** S.B. 1 is not subject to the Materiality Provision because: (1) S.B. 1 does not prevent eligible voters from registering to vote; (2) the Materiality Provision does not extend to regulations relating to vote by mail procedures (which is what S.B. 1 entails); and (3) the Materiality Provision does not apply to neutral, ballot-casting regulations, like S.B. 1's identification requirement that simply seeks to verify the identity of an already-registered voter.

**(B)** Even if the Materiality Provision applies to the challenged provisions, S.B. 1's identification requirement satisfies it because a voter's identity is material to determining whether an individual is qualified to vote. Specifically, identification is material to determining whether an already-registered voter is entitled to vote by mail—the only question implicated by the relevant provisions of S.B. 1. Courts must uphold state laws covered by the Materiality Provision whose "justification" is "more than tenuous" to protecting election integrity. *Vote.Org II*, 89 F.4th at 484-

85. Here, S.B. 1's identification requirement satisfies that standard because it is designed to ensure that voters submitting ballot envelopes "actually [are] who they say they are"—an "[u]ndeniabl[y]" material "premise for all the statutory qualifications" to vote. *Id.* at 487.

**II.** Plaintiffs' claims against the Secretary also fail for jurisdictional reasons. Even after the benefit of discovery, neither the district court nor the Plaintiffs has identified any action the Secretary, who plays no role in evaluating or rejecting mail-in ballot materials submitted by a voter, is legally authorized to take that will ensure compliance with the district court's permanent injunction in a uniform manner. While she can issue advisories, this Court has held that does *not* constitute enforcement of individual provisions of the Election Code. Rather, it is simply that: advisory. *Id.* at 674; *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022). The absence of an enforcement connection affects both sovereign immunity and standing.

**(A)** Although the Secretary's arguments that the OCA-Plaintiffs' claims are barred by sovereign immunity and that they lack standing are before this Court already, the district court refused to correct course and dismiss these claims (or wait for this Court to rule). It instead repeated the same errors again, contravening this Court's well settled precedent that the local election officials rather than the Secretary enforce most provisions of the Texas Election Code. Because this is no exception, the Secretary is not a proper defendant under *Ex parte Young*, which requires that to be a proper defendant, a state officer "must have '*some* connection with the enforcement of the [challenged] act.'" *Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 672 (5th Cir. 2022) (*TARA*) (alteration in original) (quoting *Ex parte Young*, 209

U.S. 123, 157 (1908)). Because there is no "enforcement connection" between the Secretary and the challenged provisions of S.B. 1, the Secretary is entitled to sovereign immunity and the OCA-Plaintiffs' claims are barred.

**(B)** Much the same is true with standing. "This court has acknowledged that [its] Article III standing analysis and *Ex parte Young* analysis 'significantly overlap.'" *City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019). Because Plaintiffs cannot show an enforcement connection, they cannot demonstrate standing. County officials, not the Secretary, enforce the ballot-application requirements. Tex. Elec. Code § 86.001(c). Likewise, election voting boards—not the Secretary—enforce mail-in-ballot requirements. *Id.* § 87.041(a). That lack of an enforcement connection destroys any claims by Plaintiffs that their requested injunction can remedy their harms. The district court should have followed the well-settled precedent of this Court. Instead, the district court deviated and concluded that the Secretary had a burden beyond this to defeat Plaintiffs' suits.

## Standard of Review

Summary judgment may only be granted if "there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about such a fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Because the requirements of federal jurisdiction "are not mere pleading requirements but rather an indispensable part of the plaintiff's case," the same rule applies to the elements of Plaintiffs' standing to sue the Secretary: Each "must be supported . . . with

the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). And absence of sufficient evidence to support standing at summary judgment can result in the dismissal of a plaintiff's claims. *E.g.*, *California v. Texas*, 593 U.S. 659, 675 (2021).

The Court reviews the grant of summary judgment and questions of statutory interpretation *de novo*, *Vote.Org II*, 89 F.4th at 469, "viewing all evidence in the light most favorable to the nonmovant." *Allen v. U.S. Postal Serv.*, 63 F.4th 292, 300 (5th Cir. 2023). The "[C]ourt reviews permanent injunctions for abuse of discretion," which can occur when the district court (1) relies on "clearly erroneous factual findings," or (2) "erroneous conclusions of law," or (3) "misapplies the factual or legal conclusions when fashioning its injunctive relief." *Ball v. LeBlanc*, 792 F.3d 584, 598 (5th Cir. 2015) (cleaned up).

## Argument

## I.   S.B. 1 Complies With Federal Law.

The Materiality Provision does not apply to S.B. 1's identification requirement. But even if the Materiality Provision applies, S.B. 1's identification requirement satisfies that provision. As a general rule, "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997). And "States have separate bodies of rules for separate stages of the voting process." *Pa. State Conf. of NAACP*, 97 F.4th at 129-30. "One stage, voter qualification, deals with *who* votes" and is governed by rules designed to answer that

question. *Id.* at 130. Meanwhile, a "different set of rules" "deals with *how* ballots are cast by those previously authorized to vote." *Id.*; *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983) (distinguishing laws that "govern[] the registration and qualifications of voters" from those regulating "the voting process itself"); *see also Ritter*, 142 S. Ct. at 1825-26 (Alito, J., dissenting). Post-registration rules often have nothing to do with assessing *who* is qualified to vote; they pursue other objectives, like the "prevention of fraud" or facilitating the "counting of votes." *Smiley v. Holm*, 285 U.S. 355, 366 (1932). That is certainly the case here: County officials utilize voter identification numbers to determine whether the person seeking to vote is the relevant voter, thus protecting the integrity of the election.

The district court's contrary conclusion conflates the fundamental right to vote with a right to vote by mail, *Tex. Dem. Party v. Abbott*, 961 F.3d 389, 408-09 (5th Cir. 2020) (*TDP I*); is in tension with Congress's requirement that voter-registration applications include identification numbers, HAVA, 52 U.S.C. § 20901 *et seq.*; and is contrary to existing circuit precedent. *See Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1174 (11th Cir. 2008). At bottom, the district court's decision prohibits States from adopting any mandatory procedural election rule—including any ballot-casting rule—unless it is used to determine voter eligibility. ROA.33240-47. That result cannot stand.

## A.  S.B. 1 is not subject to the Materiality Provision.

Assuming that both the United States and OCA-Plaintiffs can even bring an action to enjoin violations of the Materiality Provision,[6] their claims fail. The Materiality Provision prohibits only "deny[ing] the right of any individual to vote" on the grounds of race. *See* 52 U.S.C. § 10101(a)(2)(B). It does not preclude States from establishing race-neutral regulations for election administration or mail-in voting. And to read the statute as the district court has held would raise serious concerns about Congress's constitutional authority to impose the Materiality Provision on States, which have traditionally enjoyed "discretion to exercise the political judgment necessary to balance competing interests" inherent in regulating any election, *Miller v. Johnson*, 515 U.S. 900, 915 (1995), as well as a strong presumption that they exercise that authority in good faith and in conformity with the requirements of the Constitution, *e.g.*, *Alexander v. S.C. State Conference of the NAACP*, 144 S. Ct. 1221, 1235-36 (2024).

---

[6] The U.S. Attorney General may bring an action to enjoin violations of the Materiality Provision, and this Court has stated that private plaintiffs may sue under section 1983. *Vote.Org II*, 89 F.4th at 478. Although not necessary to *Vote.org II's* judgment, State Defendants recognize this is likely binding on the panel under this Court's rule of orderliness as an alternative holding. But they reserve the right to argue at an appropriate time that there is no private right of action or remedy that would permit OCA-Plaintiffs to pursue their claims. 52 U.S.C. § 10101(c); *McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000); *e.g.*, *McKay v. Altobello*, No. 2:96-cv-3458, 1996 WL 635987, at *2 (E.D. La. Oct. 31, 1996).

### 1. S.B. 1 does not implicate the Materiality Provision because it does not prevent eligible voters from registering to vote.

Plaintiffs' claims are flawed at the outset because though Congress would provide more generalized protections in the Voting Rights Act of 1965, the Civil Rights Acts of 1957 and 1960 used very specific language aimed at a very specific problem: that "[f]or many decades, the registration process has been the principle vehicle keeping voter registration down." *Condon v. Reno*, 913 F. Supp. 946, 949 (D.S.C. 1995). The narrow language of the Materiality Provision, as courts across the country have recognized, does not apply to provisions like those at issue here, which regulate election administration but do not prevent anyone from registering to vote.

a.    By its terms, the Materiality Provision is different in scope than its younger cousin, section 2 of the Voting Rights Act, which prohibits any "standard, practice, or procedure" that "results in a *denial or abridgment* of the right of any citizen . . . to vote," 52 U.S.C. § 10301(a) (emphasis added). By contrast, the Materiality Provision is far more limited and provides that no State actor may "*deny* the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting" that is not "material" to whether the "individual is qualified under State law to vote." *Id.* § 10101(a)(2)(B) (emphasis added).

Congress is always presumed to intend a different meaning when it uses different terms. *See Horton v. Bank One, N.A.*, 387 F.3d 426, 434 (5th Cir. 2004). Absent a specific statutory definition, the right to "vote" has long been understood to protect only the actual exercise of the franchise. *E.g.*, *McDonald*, 394 U.S. at 807; *Kramer*

21

*v. Union Free Sch. Dist. No. 15*, 395 U.S. 621, 626 n.6 (1969). The Materiality Provision expands the definition of "vote" to "include[] all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting." 52 U.S.C. § 10101(e). The Materiality Provision is limited to certain rules relating to registration that "deny" the right to vote—that is, to "refuse or withhold permission to; preclude occasion for or occurrence of." *Deny*, Websters Third International Dictionary 603 (1961). By contrast, as this Court has recognized, a law "abridges" the right to vote when it makes the exercise of that right more difficult compared to "some baseline." *TDP II*, 978 F.3d at 188 (quoting *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 334 (2000)). Taken together, the Materiality Provision protects a broader concept of the right to vote than might otherwise be applicable, but it requires proof of a greater imposition to find a violation.

**b.** Consistent with that plain text, courts have recognized for decades that the Materiality Provision deals with voter registration. Indeed, no "case law in [any] jurisdiction . . . indicates that section [10101](a)(2)(B) was intended to apply to the counting of ballots by individuals *already deemed qualified to vote*." *Friedman*, 345 F. Supp. 2d at 1371. Instead, the Materiality Provision addresses "the practice of disqualifying potential voters for their failure to provide information irrelevant to determining their eligibility to vote." *Schwier*, 340 F.3d at 1294; *see also Browning*, 522 F.3d at 1173; *Thrasher v. Ill. Republican Party*, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013); *Condon*, 913 F. Supp. at 950.

This Court recently recognized that applying the Materiality Provision outside the voter-registration context is "possibly overbroad." *Vote.Org II*, 89 F.4th at 479

22

n.7. And just weeks later, this Court's sister circuit expressly held that the Materiality Provision "only applies when the State is determining *who* may vote" and "does not apply to rules . . . that govern *how* a qualified voter must cast his ballot for it to be counted." *Pa. State Conf. of NAACP*, 97 F.4th at 125. In doing so, the Third Circuit warned that a contrary holding will severely harm the integrity of elections nationwide by "t[ying] state legislatures' hands in setting voting rules unrelated to eligibility." *Id.* at 134. Rather than adopt "a broader interpretation of the Materiality Provision," which "would mean that numerous rules related to vote casting would be invalid," *see Liebert v. Millis*, 23-cv-672, 2024 WL 2078216, at *14 (W.D. Wis. May 9, 2024), this Court should join the Third Circuit and hold that the Materiality Provision relates only to provisions regulating voter registration—not neutral rules of election administration like S.B.1's identification requirement.

### 2. The Materiality Provision does not extend to regulations relating to vote by mail.

Even if this Court concludes that S.B. 1 limits the *opportunity* to vote by mail, that does not implicate the *right* to vote. As this Court has recognized, the right to vote does not include the ability to vote by mail unless the challenged law works to completely disenfranchise voters—which S.B. 1 does not.

**a.** As the stay panel and other courts have already explained, ECF 80-1 at 5, by using the phrase "right to vote," the Materiality Provision "codified a *pre-existing* right" shaped by "history." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 20 (2022). To determine the content of that right, the Court must consult the "standard practice" at the time when the Materiality Provision was adopted (or

amended). *Brnovich v. DNC*, 594 U.S. 647, 669-70 (2021). And as this Court has already recognized, contemporaneous research and case law reflects that the drafters of the Civil Rights Act did not understand the right to vote to include "a claimed right to receive [and cast] absentee ballots." *McDonald*, 394 U.S. at 807; *TDP II*, 978 F.3d at 187.

True, significant to that analysis was *McDonald*, which post-dated the Civil Rights Act by a handful of years. *See TDP I*, 961 F.3d at 402-06 (citing *McDonald*). But *McDonald* did not purport to be a watershed opinion when it announced the principle that the "Illinois statutory scheme," which prohibited incarcerated plaintiffs to vote by mail, did not "impact" the inmates' "ability to exercise the fundamental right to vote," 394 U.S. at 807, because it did not "specifically disenfranchise" the plaintiffs, *id.* at 808. For good reason. As this Court recognized in *TDP II*, contemporaneous research compiled for Congress showed that only Maine offered "sweeping" absentee ballots; "[i]n all other [S]tates, voters who wish to cast an absentee ballot must demonstrate that they fall within a statutory classification." 978 F.3d at 187 (quoting Note, *The Submerged Constitutional Right to an Absentee Ballot*, 72 Mich. L. Rev. 157, 159-61 (1973)). Nor has Congress amended the Civil Rights Act in the intervening decades—a telling silence. *See e.g.*, *Monessen Sw. Ry. Co. v. Morgan*, 486 U.S. 330, 338 (1988).

As a result, the statutory definition of "vote" continues to refer to "all action necessary to make a vote effective" under state law. 52 U.S.C. § 10101(e). And it describes what it means to be effective as "casting a ballot[] and having such ballot counted and included in the appropriate totals." *Id.* Such a definition of what it

means to "vote" is entirely consistent with the traditional understanding that the right to vote includes a right to vote by mail only some other state action entirely prevented the class of voters from exercising the franchise. Specifically, in *Goosby v. Osser*, 409 U.S. 512 (1973), the Court explained that "the Pennsylvania statutory scheme absolutely prohibits [incarcerated persons] from voting" by denying them absentee ballots, access to polling places in prisons, or transportation to a poll. *Id.* at 521-22. This *combination* of laws unconstitutionally disenfranchised voters. *Id.*; *see also O'Brien v. Skinner*, 414 U.S. 524, 529-30 (1974).

   **b.** In *TDP I*, this Court recognized that nothing in Texas's rules regarding mail-in balloting runs afoul of this principle because "Texas permits [voters] to vote in person; that is the exact opposite of 'absolutely prohibiting' them from doing so." *TDP I*, 961 F.3d at 404 (quoting *McDonald*, 394 U.S. at 808 n.7). Nothing in S.B. 1 changes that: Early-voting clerks enforcing S.B. 1's identification requirement do not "disqualify potential voters" or otherwise prevent them from exercising the franchise—and certainly not based on race. *Schwier*, 340 F.3d at 1294. Instead, they simply decline to accept noncompliant applications or to count noncompliant ballots "because [individuals] did not follow the rules for" completing the application or "casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting); *see Pa. State Conf. of NAACP*, 97 F.4th at 133. For individuals who act in advance of relevant deadlines, S.B. 1 specifically provides a right to cure. *Supra* at 9-10. And even individuals who fail to do so remain free to vote in any election on equal terms with, and according to the same rules as, all other voters. *See id.*; *accord Rosario v. Rockefeller*, 410 U.S. 752,

757 (1973); *Democratic Nat'l Comm. v. Wis. State Leg.*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurring).

### 3. The Materiality Provision does not apply to race-neutral election regulations.

Finally, this Court should hold that Plaintiffs' claims fail because there is no evidence that S.B. 1's identification requirement amounts to racial discrimination. The Materiality Provision was "enacted pursuant to the Fifteenth Amendment for the purpose of eliminating racial discrimination in voting requirements." *Broyles v. Texas*, 618 F. Supp. 2d 661, 697 (S.D. Tex. 2009) (Rosenthal, J.), *aff'd*, 381 F. App'x 370 (5th Cir. 2011); *see also United States v. Mississippi*, 380 U.S. 128, 138 (1965). The district court's decision acknowledged that the Materiality Provision is aimed at eradicating race discrimination, ROA.33253-54, but squarely rejected the argument that "the Materiality Provision does not apply to nondiscriminatory, 'neutrally applied' state laws such as [s]ections 5.07 and 5.13," ROA.33257. Instead, the court concluded that "regardless of any racial considerations," Congress could and did "require that votes in federal elections be counted despite immaterial paperwork errors." ROA.33260. The district court then proceeded to find the relevant sections of S.B. 1 violated the Materiality Provision because, in its view, "a DPS number or SSN4 appearing in state databases is not material to voter qualifications"—regardless of race. ROA.33260.

This was error: Properly construed, "only racially motivated deprivations of rights are actionable" under the Materiality Provision. *Broyles*, 618 F. Supp. 2d at 697. Indeed, as the stay panel concluded (at 5-6), such an interpretation is necessary

to avoid placing the Materiality Provision on a collision course with the Constitution. The States "have 'broad powers to determine the conditions under which the right of suffrage may be exercised.'" *Shelby County v. Holder*, 570 U.S. 529, 543 (2013) (quoting *Carrington v. Rash*, 380 U.S. 89, 91 (1965)). And while Congress can employ "strong remedial and preventive measures to respond to the widespread and persisting deprivations of constitutional rights," it cannot engineer "a substantive change in constitutional protections." *City of Boerne v. Flores*, 521 U.S. 507, 526, 532 (1997). The Fifteenth Amendment forbids the denial or abridgement of the "right … to vote" only "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1. Assuming that right is implicated (and it is not), a facially neutral, equally applied law by no means discriminates "on account of" race or color. Because Appellees' interpretation would work a "substantive change" to the Fifteenth Amendment's standard, *City of Boerne*, 521 U.S. at 532, it should be rejected under the canon of constitutional avoidance.

True, this Court in *Vote.Org II* concluded that the Materiality Provision falls within Congress's enforcement power. 89 F.4th at 487. But it did so in a voter-registration case while explicitly declining to decide whether the Provision applies to "vote counting" rules. *Id.* at 479 n.7. That is a meaningful difference because, as the Third Circuit recognized, "vote-casting rules … serve entirely different purposes than voter-qualification rules." *Pa. State Conf. of NAACP*, 97 F.4th at 136; *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting). To conflate these distinct rules would ignore any limitations of congruence and proportionality, *see City of Boerne*, 521 U.S. at 530, because doing so would eviscerate what even *Vote.Org II* recognized was a State's

"considerable discretion in deciding what is an adequate level of effectiveness to serve [the] important interest" of ensuring "voter integrity," *Vote.Org* II, 89 F.4th at 485. Thus, the Court should hold that the Materiality Provision does not apply to the challenged provisions of S.B. 1—either as an ordinary matter of statutory construction or a matter of constitutional avoidance.[7]

### B. Even if the Materiality Provision applies, S.B. 1's identification requirement satisfies it.

Plaintiffs' claims also fail for a separate reason: If the Materiality Provision applies to S.B. 1's identification requirement, the challenged provisions are material "in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B)—or more specifically, whether the individual is entitled to vote by mail, which is the only thing regulated by the relevant provisions of S.B. 1. As *Vote.Org II* explained, even where the Materiality Provision applies, courts must defer to a State's "considerable discretion in deciding what is an adequate level of effectiveness to serve [the] important interest" of ensuring "voter integrity." *Vote.Org II*, 89 F.4th at 485. Thus, courts must uphold state laws covered by the Materiality Provision whose "justification" is "more than tenuous." *Id.* at 484-85. That standard is met here as the challenged requirements are designed to ensure that voters submitting ballot envelopes "actually [are] who they say they are"

---

[7] To the extent the Court considers itself bound by *Vote.Org II* as a matter of the rule of orderliness, State Defendants again reserve the right to seek reconsideration of that rule at an appropriate time.

is "[u]ndeniabl[y]" a material "premise for all the statutory qualifications" to vote. *Id.* at 487.

**1.**  The district court's analysis got off to the wrong start by determining the wrong answer to the question: Material to what? Although occasional errors are understandable and expected, generally, "Congress is presumed to know the rules of grammar." *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 494 (5th Cir. 2014) (citing *United States v. Goldenberg*, 1468 U.S. 95, 102-03 (1897)). And, in this context, "material" is an adjective meaning to "hav[e] a certain or proper bearing on the proper determination" of a question." Webster's, *supra* at 1392; *see also, e.g.*, *Material*, Black's Law Dictionary (5th ed. 1979) (being so "substantial and important as to influence").

Under its plain terms, the ordinary question would be whether a challenged provision has a proper bearing on the determination of whether an individual can register to vote. After all, the Materiality Provision provides, in pertinent part, that State actors cannot "deny the right of any individual to vote" based on "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting," unless "such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). These statutory terms relate to "only voter registration specifically." *Vote.Org I*, 39 F.4th at 305 n.6; *see Ritter*, 142 S. Ct. at 1825-26 (Alito, J., dissenting); *Pa. State Conf. of NAACP*, 97 F.4th at 132-33.

The district court, however, accepted Plaintiffs' position that the *same* meaning applies to S.B. 1's identification requirement, which does not implicate the question

whether an individual is qualified to vote. *Compare* ROA.33240-47, ROA.33261-62, *with* ROA.13287-93, ROA.15350-58. But even the district court acknowledged, ROA.33261, that local election officials do not "disqualify" individuals who fail to comply with the S.B. 1's identification requirements, and S.B. 1 does not prevent any qualified voters from exercising the right to vote. *Schwier*, 340 F.3d at 1294. Instead, officials merely determine that noncompliant applications and ballots are invalid; if a voter's application or ballot is rejected as invalid, voters retain the right to vote either by curing those defects or voting in person. *E.g.*, S.B. 1, § 5.02 (codified at Tex. Elec. Code § 84.0029(a)(1-a)); S.B. 1, § 5.07 (codified at Tex. Elec. Code § 86.001(f)-(f-2)).

By applying the same materiality standard to rules affecting the ability to vote and regulations of the conduct of elections, the district court created an analytical mismatch: It assessed the propriety of rules designed to regulate the casting of ballots by "those previously authorized to vote" by the standard applicable to rules designed to regulate who may vote in the first instance. *Pa. State Conf. of NAACP*, 97 F.4th at 130; *see Ritter*, 142 S. Ct. at 1825-26 (Alito, J., dissenting); *Vote.Org I*, 39 F.4th at 305 n.6. As those are fundamentally different questions, what is "material" to answering them is not the same. *Friedman*, 345 F. Supp. 2d at 1371 (explaining that the Materiality Provision does not regulate "the counting of ballots [cast] by individuals *already deemed qualified to vote*").

Indeed, it adopted a method "to judge the validity of voting rules based on whether they are material to eligibility" in the voter-registration process that some jurists have described as "absurd." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting);

30

*see Pa. State Conf. of NAACP*, 97 F.4th at 136. Most States, including Texas, determine voter eligibility during the voter-registration process. *See, e.g.*, U.S. Election Assistance Comm'n, *Voter FAQs*, https://perma.cc/FNQ3-SLC4 (noting 49 States require voters "to be registered to vote to participate in an election"). As the record reflects, S.B. 1 governs the validity of mail-voting applications and ballots submitted by individuals who have "already been . . . found qualified by an election official." ROA.33246; *see also* ROA.33244.

Perhaps most concerning, the district court adopted an approach under which "virtually every electoral regulation" utilized to verify a voter's eligibility would be illegal, thereby "hamper[ing] the ability of States to run efficient and equitable elections, and compel[ling] federal courts to rewrite state electoral codes."[8] *Clingman v. Beaver*, 544 U.S. 581, 593 (2005). And as *Vote.Org I* explains, that is not the law. 39 F.4th at 305 n.6.

**2.**    Instead, if the district court insisted on applying the Materiality Provision to S.B. 1's identification requirement (which it should not have done), the court should

---

[8] The United States while briefing its motion for summary judgment took the remarkable position that all regulations that "might help enforce the states' qualifications," including verifying a voter's identity, fall outside of the definition of "material" and therefore are preempted by the Materiality Provision. ROA.13292. Taken to its logical conclusion, the United States' position would invalidate a slew of regulations that currently help Texas enforce its eligibility criteria. *See, e.g.*, Tex. Elec Code §§ 84.001(b), 86.005, 87.041(b)(2) (signature requirement); *Id*. §§ 86.002, 87.041(b)(6) (statement of residence); *Id*. § 86.007(a)(2) (postmark); *Id*. §§ 87.0411(b)(1), 87.0411 (witness information).

have analyzed whether S.B. 1's identification requirement was material, not whether the fundamental right to vote is the same as the statutory privilege of voting by mail. This is a legally significant distinction because "[n]o court has ever held that a voter has a right to cast a ballot by the method of his choice." *Veasey*, 830 F.3d at 307 (Jones, J., concurring in part and dissenting in part). Voting by mail is not a right; it is a privilege that can (and must) be limited in ways that may be unconstitutional if applied to the general right to the franchise. *TDP I*, 961 F.3d at 408-09 (citing *McDonald*, 394 U.S. at 807-08).

As this Court has acknowledged, Texas has an important interest in "reduc[ing] the likelihood of fraud," S.B. 1, § 1.04, and, thus, promoting "voter integrity," *Vote.Org II*, 89 F.4th at 489; *see Liebert*, 2024 WL 2078216 at *17-18. As this Court has recognized, that interest is particularly acute when it comes to mail-in ballots because they are (by definition) completed outside the presence of election personnel. It is thus unsurprising that at least nine other States have joined Texas in adopting identification requirements like S.B. 1 to make sure that the person casting the ballot was the person who applied for as well as the person who registered to vote in the first place. *See Table 14: How States Verify Voted Absentee/Mail Ballots*, National Conference of State Legislatures, (Mar. 15, 2022), https://tinyurl.com/3fwkysxz.

And the connection between S.B. 1's methods and its "justification" is far "more than tenuous." *Vote.Org II*, 59 F.4th at 488. S.B. 1's identification requirement targeted gaps in Texas election law that made it difficult, if not impossible, to verify a voter's identity. In particular, before S.B. 1, Texas relied on signature matching to verify a voter's identity, which—as this Court has explained—presents its own

challenges for voters who may be illiterate or disabled. *See Richardson*, 978 F.3d at 226-27. And is particularly vulnerable to fraud. ROA.22782, 22785, 22789. By contrast, the Secretary's former Director of Elections explained that the identification requirement helps close those gaps by having the voter submit a unique identifier that is unlikely to change, at each juncture of the vote-by-mail process and thus can be "used to make sure the voter has properly identified themself on the application." ROA.23185. And Denton County Election Administrator Frank Phillips testified that the law would have made it more difficult for fraudsters to carry out a scheme to sway the mayoral election by forging mail-in ballot applications. ROA.22627-28, 22634-35. He further described how it is the "standard operating procedure" of the Denton County Elections Administrator to use the identification numbers "as a reliable way to positively identify voters." ROA.22635.

And Texas has taken steps to make it easier for Texans to comply with S.B. 1's identification requirement. S.B. 1 established a new cure process for individuals to correct mistakes on their vote-by-mail applications and ballots online, by mail, or in person, which Texas continues to improve. For example, in 2023, the Legislature enacted legislation to make it easier to cure online. *See* Act of May 28, 2023, 88th Leg., R.S., H.B. 357, § 2 (to be codified as an amendment to Tex. Elec. Code § 86.015(b)). Even before that amendment, nearly half of those who submitted defective ballots in the 2022 general election were able to cure the problem. *See supra* at 11-13. And voters who could not vote by mail still maintained the option to vote in person at a local polling location. *See* Tex. Elec. Code § 84.031(b).

By nonetheless finding that S.B. 1's identification requirement violated the Materiality Provision, the district court erroneously ignored the very real possibility that a third-party fraudster might claim someone else's identity when attempting to vote by mail—a scheme that has actually occurred in Texas. *See* ROA.22627-28, 22634-35. This was error for at least three reasons. *First*, *Crawford* allowed States to adopt "neutral, nondiscriminatory" regulations to reduce the "risk of voter fraud" even *without* evidence that the law was necessary. 553 U.S. at 196, 203. *Second*, even if evidence of necessity were required, it was provided: Mr. Philips explained how he detected a mail-in ballot fraud scheme in 2020. ROA.22627-28, 22634-35. *Third*, the record reflects that, apart from evidence of actual fraud, S.B. 1's identification requirements have "reduced concerns among voters about mail voting fraud." ROA.22631-32. And it is blackletter law that *confidence* in the electoral system has value independent of any actual evidence of fraud. *Purcell*, 549 U.S. at 4.

In doing so, the district court adopted an approach that would cause even more electoral chaos by eviscerating State vote-by-mail and vote-casting regulations nationwide. *See Pa. State Conf. of NAACP*, 97 F.4th at 134-35; *Liebert*, 2024 WL 2078216, at *14. This Court should decline to follow suit.

**3.** Even if the Court were to assess whether the identification requirement is "material in determining whether such individual is *qualified under State law* to vote" by mail, S.B. 1 would still survive because to determine who is qualified to vote by mail, courts must necessarily look to state law. 52 U.S.C. § 10101(a)(2)(B) (emphasis added). Like most (if not all) States, Texas determines whether an "individual is qualified [under State law] to vote," *id.*, during the voter-registration process, *see*

Tex. Elec. Code § 13.002; *see also* ROA.33217. However, while "any qualified voter is eligible for early voting by personal appearance," Tex. Elec. Code at § 82.005, Texas imposes additional criteria on voters before they are eligible to vote by mail. Not only must a prospective mail-in voter fall under one of the specified categories, *see id.* at §§ 82.001-82.004 (*e.g.*, 65-years of age or older)—indeed in large part *because* the voter must fall within such categories—the voter must also "make an application for an early voting ballot to be voted by mail as provided by this title," *id.* § 84.001(a).

In other words, "[i]n Texas, an individual is qualified to vote [by mail] only if" the individual has submitted a complete mail-in ballot application demonstrating that he falls within the categories of individuals qualified to vote by mail, *see In re State*, 602 S.W.3d 549, 560-61 (Tex. 2020), and to submit a complete application, the individual must comply with the identification requirement. *Vote.Org I*, 39 F.4th at 307; Tex. Elec. Code § 84.002. The same is true with respect to the ballot itself as Texas has determined that for an individual to be able to cast a ballot, it must contain an identification number that "identifies the same voter identified on the voter's application for voter registration." Tex. Elec. Code § 87.041(b)(8). Without an identification number, a person is not a qualified mail-in voter under Texas law. Accordingly, the identification requirement articulated in S.B. 1 necessarily cannot violate the Materiality Provision regardless of whether the requirements serve a strong state interest, which they do.

In holding otherwise, the district court limited its Materiality Provision analysis to Texas's voter registration laws generally, ROA.33241-42, but this ignores the

plain language of the Election Code, which states that "[t]o be entitled to vote an early voting ballot by mail," voters must submit a complete mail-in ballot application, which includes their identification number. Tex. Elec. Code §§ 84.001, 84.002. The district court rationalized this decision by exclaiming that qualifications reference "substantive voter attributes." ROA.33241. But this effectively adds a limitation to the Materiality Provision that does not appear in the statute.

As noted in *Common Cause v. Thomsen*, nothing in the Materiality Provision's text limits materiality to so-called "substantive voting qualifications," such as age, citizenship status, or residency. 574 F. Supp. 3d 634, 636 (W.D. Wis. 2021). The statute merely stipulates that the error or omission be material to determining whether a voter is qualified to vote under state law; that would encompass all qualifications implemented by the State, including S.B. 1's identification requirement. *Id.* The district court erred when reading language into the Civil Rights Act not enacted by Congress.

**4.** Still, S.B. 1's identification requirement addresses whether the person seeking to vote *is* the relevant voter in the first place. Indeed, federal law has required identification numbers on voter-registration applications since 2004 under HAVA. 52 U.S.C. § 20901 *et seq.* HAVA *forbids* Texas from accepting a voter-registration application unless that application includes the requisite identification numbers. *Id.* § 21083(a)(5)(A)(i).

Texas has implemented relevant provisions of federal law by requiring all registered voters to provide an identification number, meaning a Texas Driver's License or Personal Identification number or the last four digits of a social security number,

on their voter registration. Tex. Elec. Code § 13.002(c)(8). S.B. 1's identification requirement merely extends that requirement to mail-in balloting. That is, Texas now uses the identification number it is required to collect and maintain under federal law to confirm a voter's identity and to reduce the risk of election fraud where this Court has recognized it is most likely to occur—mail-in voting. *Veasey*, 830 F.3d at 238-39. That makes sense: without having registered to vote, a putative voter is not "qualified" to cast any ballot, including a mail-in ballot, under state law. *See* Tex. Elec. Code § 11.002(a); *id.* § 84.002(a)(1).

As the stay panel already recognized, "a law requiring voters to include the same information on mail-in voting materials that Congress itself asks voters to include on their voter registration applications" does not "violate[] the Materiality Provision." ECF 80-1 at 6. The Eleventh Circuit has similarly held that the HAVA identification requirement is "material to determining eligibility to register and to vote." *See Browning*, 522 F.3d at 1174. This Court should decline to create a split with the Eleventh Circuit by changing course now.

## II.  The District Court Lacked Jurisdiction to Enjoin the Secretary.

At the very least, the district court erred by enjoining the Secretary whose assertion of sovereign immunity and related assertions of lack of standing remain pending before this Court. Notwithstanding the different procedural posture (and thus necessary quantum of proof, *Lujan*, 504 U.S. at 561), the district court declined, ROA.33233, to revisit its early conclusion that the Secretary has an adequate enforcement connection to the challenged provisions to permit these claims to proceed. That was error. Neither standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431

(2021), nor a route around sovereign immunity is dispensed in gross, *TDP II*, 978 F.3d at 179. Instead, each requires a provision-by-provision, defendant-by-defendant analysis regarding whether the named government official enforces the challenged provision. *E.g., id.* (sovereign immunity); *California*, 593 U.S. at 675 (standing). There is no evidence that the Secretary enforces S.B. 1's identification requirement—because she doesn't. As a result, the OCA-Plaintiffs' section 1983 claims are barred because *Ex parte Young*'s exception to sovereign immunity does not apply. Moreover, because local officials—most of whom are not parties to this litigation—enforce the challenged provisions of S.B 1, Plaintiffs' alleged injuries are neither traceable to her nor redressable by an order against her.

## A. The Secretary is entitled to sovereign immunity.

The default rule is that private "individuals may not sue a state—either in its own courts, courts of other states, or federal courts—without the state's consent." *Russell v. Jones*, 49 F.4th 507, 512 (5th Cir. 2022) (quoting *Alden v. Maine*, 527 U.S. 706, 715 (1999)). And "unless the state has waived sovereign immunity or Congress has expressly abrogated it," the state sovereign immunity doctrine will bar the suit. *City of Austin*, 943 F.3d at 997. At the motion to dismiss phase, the district court relied on the *Ex parte Young* exception, which stands for the proposition that sovereign immunity does not prohibit "suits against state actors whose conduct violates federal law." *Haverkamp v. Linthicum*, 6 F.4th 662, 669 (5th Cir. 2021) (per curiam). For the reasons the Secretary has explained in her earlier appeal, this was error.

Under *Ex parte Young*, for a state official to be the proper defendant for injunctive relief, she "must have '*some* connection with the enforcement of the

[challenged] act.'" *TARA*, 28 F.4th at 672 (alteration in original) (quoting *Ex parte Young*, 209 U.S. at 157). The degree of connection is "hard to pin down," but this Court has identified three "guideposts." *Id.* "First, an official must have more than 'the general duty to see that the laws of the state are implemented.'" *Id.* (quoting *City of Austin*, 943 F.3d at 999-1000). "Second, the official must have 'the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty.'" *Id.* (quoting *TDP II*, 978 F.3d at 179). "This means the analysis is 'provision-by-provision': The officer must enforce 'the particular statutory provision that is the subject of the litigation.'" *Id.* (quoting *TDP II*, 943 F.3d at 179). "Third, 'enforcement' means 'compulsion or constraint.'" *Id.* (quoting *City of Austin*, 943 F.3d at 1000). Consequently, "[i]f the official does not compel or constrain anyone to obey the challenged law, enjoining that official could not stop any ongoing constitutional violation.'" *Id.* (citing *Air Evac EMS, Inc. v. Tex. Dep't of Ins., Div. of Workers' Comp.*, 851 F.3d 507, 520 (5th Cir. 2017)).

As the Secretary has explained in detail elsewhere, *e.g.*, Opening Brief for Defendants-Appellants at 26-35, *La Union del Pueblo Entero v. Scott*, No. 22-50778 (5th Cir. Dec. 9, 2022), these guideposts are entirely absent here. The Secretary has no role in enforcing the challenged provisions of S.B. 1. She plays no role in evaluating or rejecting mail-in ballot materials submitted by a voter, and there is no action that is legally authorized to take that will ensure compliance with the district court's

permanent injunction in a uniform manner. *See id.*[9] To the contrary, county officials, not the Secretary, enforce the ballot-application requirements. Tex. Elec. Code § 86.001(c). Likewise, early-voting boards, not the Secretary, enforce mail-in-ballot requirements. *Id.* § 87.041(a). The Secretary is not the early-voting clerk of any Texas county and does not serve on the early-voting board for any Texas county. *Id.* § 87.002. And it is well-settled that the Secretary's role over local elections is advisory. *See TARA*, 28 F.4th at 674; *Lewis*, 28 F.4th at 664.

True, the Secretary has "'expansive duties' in enforcing election laws—such as [her] role as 'chief election officer.'" *TARA*, 28 F.4th at 674 (quoting Tex. Elec. Code § 31.001). But, as this Court has explained, this role is "advisory." *Ostrewich v. Tatum*, 72 F.4th 94, 100 (5th Cir. 2023), *cert. denied sub nom. Ostrewich v. Hudspeth*, 144 S. Ct. 570 (2024). Yet nothing in her role as the "chief election officer" of Texas or her authority to issue election advisories amounts to "enforcement." Nor can it. As this Court has acknowledged, the Secretary's ability to issue advisories to local officials does not compel anyone—let alone these plaintiffs—to do anything. Rather, it is simply that: advisory. *See TARA*, 28 F.4th at 674; *Lewis*, 28 F.4th at 664. This

---

[9] By summarizing rather than copying her position here, the Secretary does not intend to waive any arguments she has made in her prior appeal. It is unclear whether she needs to re-raise them here because the trial court should not have proceeded to judgment against the Secretary while this Court had jurisdiction over these threshold issues. *See Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007) (per curiam) (discussing the extent to which an interlocutory appeal divests the district court of jurisdiction). Because sovereign immunity is, however, an affirmative defense, *Jackson v. Wright*, 82 F.4th 362, 368 (5th Cir. 2023), the Secretary re-raises them to prevent unnecessary litigation regarding any assertions of waiver.

Court repeatedly holds that her "advisory duties fall short" of establishing that she enforces a challenged provision of the Election Code. *Ostrewich*, 72 F.4th at 100; *TARA*, 28 F.4th at 674.

That does not change because the Election Code imposes duties that include "obtain[ing] and maintain[ing] uniformity" in the laws' application. *TARA*, 28 F.4th at 674 (quoting Tex. Elec. Code § 31.003). And she has the authority to "take appropriate action to protect" voting rights. *Id.* (quoting Tex. Elec. Code § 31.005). However, these "general duties under the [Texas Election] Code" fail to make the Secretary the enforcer of specific election code provisions. *Id.* (alteration in original) (quoting *TDP II*, 978 F.3d at 180 (citing Tex. Elec. Code §§ 31.003-.004)). County officials, not the Secretary, enforce the ballot-application requirements. Tex. Elec. Code § 86.001(c). Likewise, early-voting boards—not the Secretary—enforce mail-in-ballot requirements. *Id.* § 87.041(a).

Even with the benefit of discovery, neither the district court nor the Plaintiffs has identified any action of the Secretary, that might constitute enforcement within the meaning of this Court's jurisprudence. *Cf. Jackson*, 82 F.4th at 368 (acknowledging that, like standing, the applicability of *Ex parte Young* is a substantive aspect of plaintiffs' claim that can be revisited at summary judgment). At most, the district court pointed to evidence that REV-UP members—one of the OCA-Plaintiffs "had their [mail-in ballot applications] and/or mail[-in] ballots rejected based on S.B. 1's number matching requirements and are at risk of having their voting materials rejected again on the same basis in future elections." ROA.33236-37. The court also relied on "undisputed evidence that its members have been deterred from voting by

mail out of fear that their [mail-in ballot applications] or mail[-in] ballots will be rejected due to S.B. 1's matching-number requirement." ROA.33237. But such evidence does not establish that the *Secretary* was the person responsible for rejecting those ballots. Nor could she have sought, consistent with state law, to enforce S.B. 1 in such a matter in the absence of statutory authorization. *See State v. Zurawski*, No. 23-0629, 2024 WL 2787913, at *6 (Tex. May 31, 2024) (acknowledging that as a matter of Texas law, a threat of enforcement alone does not establish authority to engage in such enforcement). Because there is no "enforcement connection" between the Secretary and the challenged provisions of S.B. 1, sovereign immunity bars the OCA-Plaintiffs' claims.

## B.   The OCA-Plaintiffs lack standing to sue the Secretary.

For similar reasons, Plaintiffs cannot maintain their suit because they lack standing to bring any of their claims against the Secretary. To establish standing under Article III, Plaintiffs must prove that (1) they have suffered an "injury in fact," which is (2) fairly traceable to the enforcement of the specific challenged provision, and (3) likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61. Each element of standing is indispensable, and it is the plaintiffs' burden to demonstrate standing at every turn. *Id.* at 561. What that means at this stage is that Plaintiffs "must 'set forth' by affidavit or other evidence 'specific facts'" showing an injury resulting from Defendants' conduct, "which for purposes of the summary judgment motion will be taken to be true." *Id.* (quoting Fed. R. Civ. P. 56(e)). True, where multiple plaintiffs seek injunctive relief, only one needs to establish standing for each claim asserted. *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47, 52 n.2

(2006). But "[s]tanding is not dispensed in gross," and Plaintiffs here must plausibly allege "standing to challenge *each provision* of law at issue." *In re Gee*, 941 F.3d 153, 161-62 (5th Cir. 2019) (per curiam) (emphasis added).[10]

"This court has acknowledged that [its] Article III standing analysis and *Ex parte Young* analysis 'significant[ly] overlap.'" *City of Austin*, 943 F.3d at 1002 (quoting *Air Evac*, 851 F.3d at 520). But they are not identical. *Nat'l Press Photographers Ass'n v. McCraw*, 90 F.4th 770, 786-87 (5th Cir. 2024) (finding that plaintiffs demonstrated standing to sue certain defendants but no route around sovereign immunity); *cf. TARA*, 28 F.4th at 674 (noting that a route around sovereign immunity does not guarantee standing). Because "[a]n injunction is an empty vessel if the enjoined official never had the power"—or threatened to use it—"to enforce the law in the first place," *Zurawski*, 2024 WL 2787913, at *6, Plaintiffs must "assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future," *California*, 593 U.S. at 670. That is to say, Plaintiffs must show traceability and redressability. *Id.* at 669. Unlike sovereign immunity, *United States v. Texas*, 143 U.S. 621 (1892), this rule runs against the federal government, *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 408-410 (2013).

Here, standing is lacking for the same reason that Plaintiffs cannot meet the *Ex parte Young* exception to sovereign immunity: The Secretary does not enforce the

---

[10] As to OCA-Plaintiffs, though the district court premised its standing analysis on association standing, that still requires that "the association's members would independently meet the Article III standing requirements." ROA.33235 (quoting *Texas v. Nuclear Regul. Comm'n*, 78 F.4th 827, 836-37 (5th Cir. 2023)).

challenged provisions of S.B. 1. The district court erred when, consistent with its prior conclusion on the Secretary's motion to dismiss on *Ex parte Young* grounds, it largely sidestepped the Secretary's arguments and proceeded to a standing analysis. ROA.33233-40. If anything, the district court made the matter worse by stating that the Secretary has not discharged her burden under Federal Rule of Civil Procedure 56(e) "because [the plaintiffs] have suffered an injury-in-fact; the harm they have suffered is fairly traceable to the number-matching provisions of S.B. 1 requiring the rejection of certain voting materials; and the injunctive relief requested by the OCA Plaintiffs—barring enforcement of the number-matching requirements—would redress their harm." ROA.33237. The burden was on Plaintiffs to *prove* that standing existed—not on the *Secretary* to prove that it did not. *Lujan*, 504 U.S. at 561.

***

Local election officials, not the Secretary, enforce S.B. 1's identification requirement. The district court therefore lacked jurisdiction to enjoin the Secretary under basic principles of sovereign immunity (as to the OCA-Plaintiffs) and Article III standing (as to any of them).

## Conclusion

This Court should reverse the district court's order and vacate the injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Aaron L. Nielson
Solicitor General

Brent Webster
First Assistant Attorney General

Lanora C. Pettit
Principal Deputy Solicitor General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
  Fax: (512) 474-2697

/s/ Kateland R. Jackson
Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Coy Allen Westbrook
Assistant Attorney General

Counsel for State Defendants-Appellants

## CERTIFICATE OF SERVICE

On June 12, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
KATELAND R. JACKSON

## CERTIFICATE OF COMPLIANCE

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,081 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kateland R. Jackson
KATELAND R. JACKSON