# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 23-50885

_____

UNITED STATES OF AMERICA; OCA-GREATER HOUSTON,
LEAGUE OF WOMEN VOTERS OF TEXAS; REVUP-TEXAS,

*Plaintiffs-Appellees*,

versus

KEN PAXTON, *Attorney General, State of Texas*; JANE NELSON,
*in her official capacity as Texas Secretary of State*; STATE OF TEXAS;
HARRIS COUNTY REPUBLICAN PARTY; DALLAS COUNTY
REPUBLICAN PARTY; NATIONAL REPUBLICAN SENATORIAL
COMMITTEE; NATIONAL REPUBLICAN CONGRESSIONAL COMMITTEE,

*Defendants-Appellants,*

REPUBLICAN NATIONAL COMMITTEE,

*Movant-Appellant.*

_____

**Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844**

_____

**BRIEF OF AMICI CURIAE AARP AND AARP FOUNDATION
IN SUPPORT OF PLAINTIFFS-APPELLEES**

_____

William Alvarado Rivera*
Louis Lopez
Stefan Shaibani
Rebecca Rodgers
Allison Horwitz**

\* Counsel of Record
\*\*Admitted in MD and NH; Practice
supervised by members of DC Bar

AARP FOUNDATION
601 E Street, NW
Washington, DC 20049
Telephone: 202-434-3392

*Counsel for Amici Curiae*
*AARP and*
*AARP Foundation*

## CORPORATE DISCLOSURE STATEMENT
## AND CERTIFICATE OF INTERESTED PERSONS

### Case No. 23-50885, *United States v. Paxton*

The undersigned counsel of record certifies that the following listed persons and entities as described in Rule 28.2.1 of the Rules and Internal Operating Procedures of the U.S. Court of Appeals for the Fifth Circuit, in addition to those disclosed in the parties' statements of interested persons, have an interest in the outcome of this case. Amici make these representations so that the judges of this Court may evaluate possible disqualification or recusal.

1.      **AARP and AARP Foundation**

The Internal Revenue Service has determined that AARP is organized and operated exclusively for the promotion of social welfare pursuant to Section 501(c)(4) of the Internal Revenue Code and is exempt from income tax. The Internal Revenue Service has determined that AARP Foundation is organized and operated exclusively for charitable purposes pursuant to Section 501(c)(3) of the Internal Revenue Code and is exempt from income tax. AARP and AARP Foundation are also organized and operated as nonprofit corporations under the District of Columbia Nonprofit Corporation Act. Other legal entities related to AARP and AARP Foundation include AARP Services, Inc., and Legal Counsel for the Elderly. Neither AARP nor AARP Foundation has a parent corporation, nor has either issued shares or securities.

**2.**   **Counsel for Amici Curiae on this brief**

The following individuals are counsel for Amici Curiae on this brief:

William Alvarado Rivera
Louis Lopez
Stefan Shaibani
Rebecca Rodgers
Allison Horwitz


Date: August 19, 2024                          */s/ William Alvarado Rivera*
                                               William Alvarado Rivera

                                               *Counsel of Record for Amici Curiae*
                                               *AARP and AARP Foundation*

# TABLE OF CONTENTS

**PAGE**

CORPORATE DISCLOSURE STATEMENT
AND CERTIFICATE OF INTERESTED PERSONS ................................. i

TABLE OF AUTHORITIES ........................................................ iv

STATEMENT OF INTEREST ..................................................... 1

SUMMARY OF ARGUMENT ..................................................... 2

ARGUMENT ...................................................................... 3

I.    S.B. 1's Number Matching Requirement Violates the
      Materiality Provision Because It Is Neither Used Nor
      Necessary to Determine Voter Qualifications in Texas .............. 3

II.   Many Older People in Texas Vote by Mail and Have
      Been or Will Be Adversely Affected by S.B. 1 ...................... 6

      A.   *Older Adults Vote in Record Numbers and Often*
           *Vote by Mail* ............................................... 6

      B.   *The Opportunity to Vote by Mail Is Imperative for*
           *Older Adults Because They Face Heightened*
           *Barriers to Voting in Person* ............................... 8

III.  Record Evidence Demonstrates that S.B. 1's
      Number Matching Provision Systematically
      Disenfranchises Older Voters in Texas ............................ 11

CONCLUSION ................................................................... 16

COMBINED CERTIFICATION .................................................... 17

CERTIFICATE OF SERVICE .................................................... 18

# <u>TABLE OF AUTHORITIES</u>

**PAGE**

**CASES**

*In re Georgia Senate Bill 202*,
    No. 1:21-CV-01259-JPB, <u>2023 WL 5334582</u>
    (N.D. Ga. Aug. 18, 2023) ........................................................ 6

*Migliori v. Cohen*,
    <u>36 F.4th 153</u> (3d Cir. 2022),
    *vacated as moot, Ritter v. Migliori*, <u>143 S. Ct. 297</u> (2022) ................... 4

*Schwier v. Cox*,
    <u>340 F.3d 1284</u> (11th Cir. 2003) ............................................. 4

*Vote.org v. Callanen*,
    <u>89 F.4th 459</u> (5th Cir. 2023) ............................................. 4, 13

**REGULATIONS**

<u>Tex. Elec. Code</u>
    <u>§ 11.002</u> ........................................................................ 4
    § 82.001-.004 ................................................................ 5
    § 84.002(1-a) ................................................................ 5
    § 86.001(f) .................................................................. 5
    § 86.001(f)-(f-2) ............................................................ 5
    § 87.041(b)(8) .............................................................. 5

**STATUTES**

Civil Rights Act of 1964

<u>52 U.S.C. § 10101(a)(2)(B)</u> ........................................ 2, 3, 4, 6, 13, 16

<u>52 U.S.C. § 10101(a)(3)(A)</u> ...................................................... 3

<u>52 U.S.C. § 10101(e)</u> .............................................................. 3

**PUBLIC LAWS**

Texas Election Protection and Integrity Act of 2021,
      87th Leg., 2d Spec. Sess. (2021),
      2021 Tex. Gen. Laws 3873 ....................................... 2, 3, 5, 6, 11, 14, 15

**MISCELLANEOUS**

Brennan Center for Justice, *Citizens Without Proof: A Survey
      of Americans' Possession of Documentary Proof of Citizenship
      and Photo Identification*, 2 (Nov. 2006),
      https://www.brennancenter.org/sites/default/files/legacy/d/download_file_39
      242.pdf ....................................................................................... 8

 Nick Corasaniti, "Texas Voting Law Leads to Jump in Ballot Application
      Rejections," N.Y. Times (Feb. 18, 2022),
      https://www.nytimes.com/2022/02/18/us/politics/texas-primary-voting-
      law.html ....................................................................... 13, 14

Election Assistance Commission, *Election Administration and Voting
      Survey 2022 Comprehensive Report* (June 2023),
      https://www.eac.gov/sites/default/files/2023-
      06/2022_EAVS_Report_508c.pdf .......................................... 7

Laura Fraade-Blanar, Ryan Best & Regina A. Shih,
      *Transportation Equity for Older Adults*, Rand (June 3, 2022),
      https://www.rand.org/content/dam/rand/pubs/perspectives/PEA1600/PEA16
      15-1/RAND_PEA1615-1.pdf ................................................ 8

David Gonzalez,
      "Texas Seniors May Run Into Roadblocks When They Try to Renew
      Driver Licenses Under Real ID Act," KHOU 11 News (Sept. 11, 2019),
      https://www.khou.com/article/news/real-id-act-affecting-senior-drivers-
      renewing-licenses/285-3f2e30a2-4552-41b8-ae92-fe99479807d1....... 12

Mark Hollis,
      "AARP Texas Director Finds Ballot Rejections 'Deeply Troubling,'"
      AARP (Apr. 6, 2022),
      https://states.aarp.org/texas/aarp-texas-director-finds-ballot-rejections-
      deeply-troubling ................................................................. 15

Ina Jaffe,
>   "For Older Voters, Getting the Right ID Can Be Especially Tough,"
>   Nat'l Public Radio (Sept. 7, 2018),
>   https://www.npr.org/2018/09/07/644648955/for-older-voters-getting-the-right-id-can-be-especially-tough ........................................................... 12

Nina A. Kohn,
>   *Preserving Voting Rights in Long-Term Care Institutions:*
>   *Facilitating Resident Voting While Maintaining Election Integrity*,
>   38 McGeorge L. Rev. 1065 (2007) ...................................................... 11

Tamara Lytle,
>   *Older Voters Will Decide the 2024 Elections*, AARP (June 20, 2024)
>   https://www.aarp.org/politics-society/government-elections/info-2024/role-older-voters-2024-election.html ........................................................... 7

Kevin Morris & Coryn Grange,
>   "Records Show Massive Disenfranchisement & Racial Disparities
>   in 2022 Texas Primary," Brennan Center for Justice (Oct. 20, 2022),
>   https://www.brennancenter.org/our-work-research-reports/records-show-massive-disenfranchisement-and-racial-disparities-2022-texas ........... 15

Miriam Ryvicker, Evan Bollens-Lund & Katherine A. Ornstein,
>   *Driving Status and Transportation Disadvantage among*
>   *Medicare Beneficiaries*, 39 J. Applied Gerontology 935 (2018),
>   https://journals.sagepub.com/doi/10.1177/0733464818806834 ........... 8

Edgar Sandoval,
>   "'My Vote Was Rejected': Trial Underway in Texas Over New Voting
>   Law," N.Y. Times Section A, Page 16 (Sept. 20, 2023),
>   https://www.nytimes.com/2023/09/19/us/texas-voting-rights-trial.html
>   ........................................................................................................... 14

Lisa Schur & Douglas Kruse,
>   *Fact Sheet: Disability and Voter Turnout in the 2020 Elections*,
>   Election Assistance Commission (June 30, 2021),
>   https://www.eac.gov/sites/default/files/document_library/files/Fact_sheet_on_disability_and_voter_turnout_in_2020_0.pdf ........................................... 9

Texas Dep't of Public Safety,
      *Senior Drivers—Age 79 or Older*,
      https://www.dps.texas.gov/section/driver-license/senior-drivers-age-79-or-older (last visited Aug. 14, 2024) .......................................................... 12

Alexa Ura,
      "More Than 12% of Mail-In Ballots Were Rejected in Texas
      Under New GOP Voting Rules, Final Tally Shows,"
      Texas Tribune (Apr. 6, 2022),
      https://www.texastribune.org/2022/04/06/texas-mail-in-ballot-rejection-voting/ .................................................................................................. 15

U.S. Census Bureau,
      *Disability Characteristics*,
      https://data.census.gov/table?q=disability (last visited Aug. 14, 2024) .. 9

U.S. Census Bureau,
      *Table 1 Reported Voting and Registration,*
      *by Sex and Single Years of Age, November 2020* (Apr. 2021),
      https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-585.html ...................................................................... 7

U.S. Census Bureau,
      *Table 4c Reported Voting and Registration of the Total*
      *Voting-Age Population, by Age, for States* (Nov. 2022),
      https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-586.html ...................................................................... 7

U.S. Dep't of Transp.,
      Bureau of Transp. Statistics,
      *Travel Patterns of American Adults with Disabilities* (Jan. 3, 2022),
      https://www.bts.gov/travel-patterns-with-disabilities ............................ 9

## **STATEMENT OF INTEREST**[1]

AARP is the nation's largest nonprofit, nonpartisan organization dedicated to empowering Americans age 50 and older to choose how they live as they age. With nearly 38 million members and offices in every state, the District of Columbia, Puerto Rico, and the U.S. Virgin Islands, AARP works to strengthen communities and advocate for what matters most to families, with a focus on health security, financial resilience, and personal fulfillment. AARP's charitable affiliate, AARP Foundation, works to end senior poverty by helping vulnerable older adults build economic opportunity.

Amici submit this brief urging affirmance of the district court's grant of summary judgment in favor of the Plaintiffs-Appellees. AARP believes that all Americans, including older adults, should be able to exercise their right to vote freely, easily, and safely. Given that voting is an essential human right that is vital to democracy, AARP has long supported free and fair elections. In particular, AARP advocates for fair, simple, and accessible policies for voter registration, and policies that maximize participation in the electoral process. *See, e.g.*, Brief of AARP and AARP Foundation as Amici Curiae Supporting Plaintiff-Appellees,

---

[1] No party's counsel authored this brief in whole or in part. Likewise, no party nor party's counsel contributed money for preparing or submitting this brief. No person or entity other than Amici contributed money for preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E). Counsel of record for all parties and intervenors received timely notice of Amici's intent to file this brief and consented to same. Fed. R. App. P. 29(a)(2).

1

*People First of Alabama v. Sec'y of State for State of Alabama*, No. 20-13695-GG,

2020 WL 7028611 (11th Cir. Oct. 13, 2020).

## SUMMARY OF ARGUMENT

S.B. 1[2] places an undue burden on older Texans by requiring that they place

an identification (ID) number that matches a number in the state's error-ridden

voter registration database on both the application to vote by mail and the mail-in

ballot envelope. This immaterial number matching requirement is not used by

election officials to determine a voter's qualifications to vote, but instead has the

purpose and effect of disenfranchising older voters who are unable to vote in

person. This is precisely the type of unlawful election interference that Congress

sought to prevent in enacting Section 101(a)(2)(B) of the Civil Rights Act of 1964,

52 U.S.C. § 10101(a)(2)(B) (also known as the Materiality Provision).

S.B. 1's number matching requirement has meant that many older adults—

who often vote by mail—*cannot* exercise their right to vote. Older voters,

particularly those with disabilities, transportation limitations, low incomes, and

those residing in long-term care facilities, may not have access to the required ID

numbers, may have difficulty retrieving the correct ID number, and crucially may

---

[2] S.B. 1 is titled the Texas Election Protection and Integrity Act of 2021, 87th Leg., 2d Spec. Sess. (2021), 2021 Tex. Gen. Laws 3873.

not have a number that matches the one in the state's 20-year-old records system, which has well-documented errors.

As such, this Court should affirm the district court's grant of summary judgment in favor of Plaintiffs-Appellees.

## ARGUMENT

I. **S.B. 1's Number Matching Requirement Violates the Materiality Provision Because It is Neither Used Nor Necessary to Determine Voter Qualifications in Texas.**

Since 2021, Texas has imposed unnecessary requirements to vote by mail that are not material to voter qualifications. Significantly, the Materiality Provision of the Civil Rights Act of 1964 prohibits denying the right to vote to otherwise qualified voters because of minor errors or omissions in election related paperwork. The Provision specifically states:

> "No person acting under color of state law shall … deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under state law to vote in such election."

52 U.S.C. § 10101(a)(2)(B). Further, the Civil Rights Act of 1964 defines the term "vote" broadly as "all action necessary to make a vote effective including, but not limited to … casting a ballot, and having such ballot counted and included in the appropriate totals of votes cast." *Id.* § 10101(a)(3)(A), (e).

The Materiality Provision was enacted "to ensure qualified voters were not disenfranchised by immaterial and meaningless requirements that prevented eligible voters from casting their ballots but had nothing to do with determining one's qualifications to vote." *Migliori v. Cohen*, 36 F.4th 153, 164 (3d Cir. 2022), *vacated as moot, Ritter v. Migliori*, 143 S. Ct. 297 (2022). Thus, the Provision's aims were broadly remedial: "Congress drafted the provision to embrace errors or omissions beyond those used to discriminate based on race." *Vote.org v. Callanen*, 89 F.4th 459, 486 (5th Cir. 2023) (citations omitted); *see also Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) (Materiality Provision "intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application form, thus providing an excuse to disqualify potential voters"). No longer could states block voters' access to the ballot box for failing to calculate correctly their birthdate to the day or for misspelling a state's name.

In Texas, all persons are qualified to vote if they are 18 years of age or older, a U.S. citizen and Texas resident, registered to vote, and have not been adjudged mentally incompetent or convicted of a felony (unless they completed their sentence or received a pardon). Tex. Elec. Code (TEC) § 11.002. Texas law limits voting by mail to seniors age 65 and older, people with disabilities, out-of-state citizens, those expecting to give birth within three weeks of election day, and those

confined to jail or civil commitment. TEC § 82.001-.004. S.B. 1 further requires mail-in voters to include on their application to vote by mail as well as on their mail-in ballot envelope the number of the applicant's driver's license, election identification certificate number, or personal identification card issued by the Department of Public Safety. TEC §§ 84.002(1-a), 86.001(f)-(f-2). The voter's provided number is then checked against the Texas Election Administration Management (TEAM) database, which was established in 2004. The TEAM system is riddled with errors including incorrect numbers and inconsistencies between which of the three numbers are affiliated with any given person. ROA.33244, 13318-13330, 15314-15319. If the numbers do not match or are missing, the application to vote by mail or the mail-in ballot must be rejected. TEC § 86.001(f) (early voting clerks "shall reject" applications to vote by mail that do not include matching ID numbers), § 87.041(b)(8) (a mail-in ballot "may be accepted only if" it includes a matching ID number).

The district court found that in the March 2022 primary election, more than 25,000 ballots were rejected in Texas based on mismatched ID numbers, and that in the November 2022 primary election, "S.B. 1 required officials across Texas to reject more than 11,000 mail ballots." ROA.33170. It also found that the ID numbers required by S.B. 1 "are not used to ensure that voters are qualified to vote or to cast a mail ballot under Texas law, to identify voters, or to flag potential

fraud" but are instead used to reject mail-in ballots. ROA.33224, 33245. The court correctly determined that having made mail-in voting available, Texas is not permitted to refuse to count mail-in ballots solely because of an insignificant paperwork error. ROA.33256. *See, e.g., In re Georgia Senate Bill 202*, No. 1:21-CV-01259-JPB, 2023 WL 5334582, at *10 (N.D. Ga. Aug. 18, 2023) ("The text of the Materiality Provision does not distinguish between … 'an act requisite to voting *absentee'* and 'an act requisite to voting *in person*.' Instead, the statute prohibits the denial of the right to vote."). The court concluded that "a voter's ID number is not material to her eligibility to vote under Texas law." ROA.33247, 33266. It specifically held: "Section 101 does not permit state actors to require voters to recite redundant information that confirms a known identity" and thus "a voter's ability to provide the ID number associated with her voter registration record on TEAM is not material to her voter qualifications under Texas law." *Id.* The district court's findings are entirely supported by publicly available voter data and the record evidence in this case.

## II. Many Older People in Texas Vote by Mail and Have Been or Will Be Adversely Affected by S.B. 1.

### A. *Older Adults Vote in Record Numbers and Often Vote by Mail.*

Older voters represent one of the most active segments in the American electorate, historically voting at exceedingly high rates and amplifying the adverse impact of laws that may disenfranchise them. In 2020, more than three quarters of

U.S. citizens over age 65 were registered to vote, and over 70% voted in the 2020 presidential election.[3] Nearly two-thirds of voters were age 50 or older in the 2022 midterm elections.[4] Similarly, post-election data from the 2020 presidential election show 53% of the electorate was over age 50.[5] These numbers are similar in Texas. In the November 2022 election, 2,430,000 Texans age 65 and older voted, representing 64% of citizens age 65 and older.[6]

Voting by mail is widely utilized, particularly by older adults.[7] Almost half of the population voted by mail or voted early in 2022 (49.8%) and that number was even higher among people age 65 or older, with 58.6% voting by mail.[8] Being over age 65 is the most common reason many Texans indicate that they vote by mail. *See* ROA.34202.

---

[3] U.S. Census Bureau, *Table 1 Reported Voting and Registration, by Sex and Single Years of Age, November 2020* (Apr. 2021), https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-585.html.

[4] *See* Tamara Lytle, *Older Voters Will Decide the 2024 Elections*, AARP (June 20, 2024) https://www.aarp.org/politics-society/government-elections/info-2024/role-older-voters-2024-election.html

[5] *Id.*

[6] *See* U.S. Census Bureau, *Table 4c Reported Voting and Registration of the Total Voting-Age Population, by Age, for States* (Nov. 2022), https://www.census.gov/data/tables/time-series/demo/voting-and-registration/p20-586.html.

[7] The number of voters in the U.S. who have participated in federal general elections using mail-in voting has changed significantly in the past three election cycles. *See* Election Assistance Commission, *Election Administration and Voting Survey 2022 Comprehensive Report* (June 2023), https://www.eac.gov/sites/default/files/2023-06/2022_EAVS_Report_508c.pdf. In the 2018 elections, states reported 30,700,831 ballots cast by mail. *Id.* That number more than doubled to 69,337,349 in the 2020 elections as many states expanded opportunities to vote by mail in response to the COVID-19 pandemic. *Id.* In the 2022 elections, states reported that 35,316,617 ballots were cast by mail and counted. *Id.*

[8] *Id.*

**B.**     ***The Opportunity to Vote by Mail Is Imperative for Older Adults Because They Face Heightened Barriers to Voting in Person.***

The opportunity to vote by mail is particularly crucial for older adults who experience transportation barriers, have low incomes, have disabilities, or live in long term care facilities. For older adults who experience transportation barriers— including lack of access to a car or a driver's license and limited access to public transportation—voting by mail may be the only way to access the ballot.[9] Many older adults lack driver's licenses and a reliable means of transportation.[10] Adults over age 65 are less likely to use transportation options including trains, taxis, and buses, inhibiting their options for voting in person.[11] Older adults with disabilities and with low incomes are particularly likely to face transportation barriers. Older adults with an income below $15,000, for instance, are far less likely to own a vehicle and may have no other means to travel to the polls. Likewise, an estimated 11.2 million Americans age 65 and older report having travel-limiting

---

[9] By some estimates, about 12% of the voting population does not have a photo ID like a driver's license. *See* Brennan Center for Justice, *Citizens Without Proof: A Survey of Americans' Possession of Documentary Proof of Citizenship and Photo Identification*, 2 (Nov. 2006), https://www.brennancenter.org/sites/default/files/legacy/d/download_file_39242.pdf.

[10] *See* Miriam Ryvicker, Evan Bollens-Lund & Katherine A. Ornstein, *Driving Status and Transportation Disadvantage among Medicare Beneficiaries*, 39 J. Applied Gerontology 935 (2018), https://journals.sagepub.com/doi/10.1177/0733464818806834.

[11] *See* Laura Fraade-Blanar, Ryan Best & Regina A. Shih, *Transportation Equity for Older Adults*, Rand (June 3, 2022), https://www.rand.org/content/dam/rand/pubs/perspectives/PEA1600/PEA1615-1/RAND_PEA1615-1.pdf.

disabilities.[12] Notably, the percentage of people reporting travel-limiting disabilities increases with age. Before age 50, the number is less than 10%, then increases to over 18% by age 70, and then to nearly 32% by age 80.[13]

In general, older adults with disabilities are particularly likely to vote by mail. On a national scale, 17.7 million voters in 2020 were voters with disabilities.[14] Of that group, over half voted by mail.[15] Many older adults have disabilities, and a significant percentage of older adults have a disability that increases the likelihood of voting by mail. According to the Census Bureau's 2022 American Community Survey, 45.9% of Americans age 75 and older and 24.3% of those age 65 to 74 report having a disability, while only 12.6% of adults age 35 to 64 and 8.3% of adults under age 35 report having disabilities.[16] Older adults are nearly five times more likely to have an ambulatory disability.[17] They are also significantly more likely to experience a vision difficulty.[18] The numbers are even

---

[12] *See* U.S. Dep't of Transp., Bureau of Transp. Statistics, *Travel Patterns of American Adults with Disabilities* (Jan. 3, 2022), https://www.bts.gov/travel-patterns-with-disabilities.
[13] *Id.*
[14] *See* Lisa Schur & Douglas Kruse, *Fact Sheet: Disability and Voter Turnout in the 2020 Elections*, Election Assistance Commission, 2 (June 30, 2021), https://www.eac.gov/sites/default/files/document_library/files/Fact_sheet_on_disability_and_voter_turnout_in_2020_0.pdf.
[15] *Id.*
[16] *See* U.S. Census Bureau, *Disability Characteristics*, https://data.census.gov/table?q=disability (last visited Aug. 14, 2024).
[17] *Id.*
[18] *Id.*

higher for adults age 75 and older, with 29.7% experiencing an ambulatory difficulty and 8.3% experiencing a vision difficulty.[19]

These trends are applicable in Texas. *See* ROA.15590. Record evidence indicates that voters with disabilities are four times more likely to vote by mail based on 2020 numbers. ROA.34202. In Texas, voters with disabilities comprised 32% of all voters who voted by mail in the 2020 presidential elections. *Id.* In absolute numbers, of the estimated 1.3 million Texans with disabilities who voted in 2020, 398,000 of them voted by mail. *Id.* Indeed, there are more voters who have a disability and vote by mail than those who mark disability as their reason for eligibility to vote by mail. ROA.34203. For example, the majority of mail voters in Harris County check "over 65" as their reason for mail voting but many also have a disability. *Id.* Since marking only one eligibility option is required for mail voting, many voters with disabilities who are voting by mail are not tracked. *Id.* One former county official explained that "most older folks have … permanent or temporary disabilities, breaking an arm, having a stroke, maybe even vision just gets blurry over time, those count as different levels of disability." *Id.*

Voting by mail is also vitally important for adults in long-term care facilities. An estimated 2.2 million Americans live in nursing or assisted living

---

[19] *Id.*

facilities.[20] Studies indicate that people living in long-term care facilities have a heightened interest in voting, but often face enormous barriers to casting their ballots.[21] These barriers stem from a variety of issues including lack of information about how and when to exercise their right to vote, lack of transportation, and lack of access to various identification documents. Plaintiffs-Appellees' Expert, Dr. Douglas L. Kruse, testified that people with disabilities, particularly those with cognitive disabilities and those in congregate settings, may have difficulty remembering and locating their ID number to include with their application to vote by mail or mail-in ballot. ROA.34210. Further, because it may have been a long time since older adults registered to vote, they may have trouble remembering what ID number they used. *Id.*

## III.    Record Evidence Demonstrates that S.B. 1's Number Matching Provision Systematically Disenfranchises Older Voters in Texas.

Older voters are especially unlikely to be able to comply with S.B. 1's number matching requirement because they face unique challenges to providing their requisite ID numbers on the application to vote by mail and the mail-in ballot envelope. Notably, Texas did not require voters to provide any form of ID number upon registering to vote until January 1, 2004. ROA.33217. Over 90,000 voters

---

[20] *See* Nina A. Kohn, *Preserving Voting Rights in Long-Term Care Institutions: Facilitating Resident Voting While Maintaining Election Integrity*, 38 McGeorge L. Rev. 1065, 1077-79 (2007).
[21] *Id.*

have neither a driver's license number nor the last four digits of their Social

Security number in Texas's voter registration database, which alone may lead

election officials to reject their ballots. ROA.33223. Further, older voters are less

likely to have driver's licenses, which reduces the likelihood that they will be able

to locate the driver's license number that they used during voter registration and to

include on their mail-in ballot envelopes.[22] Older voters also face roadblocks to

obtaining and maintaining driver's licenses, including not having birth certificates

or documentation of name changes.[23] Further, because of the amount of time that

has passed since they registered to vote, older adults do not always remember what

ID number, if any, they provided for their initial voter registration. ROA.34210.

They are especially unlikely to be able to access the correct records if they live in a

congregate or long-term care facility. *Id*.

Even when older voters have access to their ID numbers, they often cannot

locate the section of the mail-in ballot envelope where they are supposed to include

---

[22] Texas Dep't of Public Safety, *Senior Drivers—Age 79 or Older*, https://www.dps.texas.gov/section/driver-license/senior-drivers-age-79-or-older (last visited Aug. 14, 2024) (requiring drivers over the age of 79 to renew their licenses in person and complete additional medical testing if there are any concerns about their driving ability).
[23] David Gonzalez, "Texas Seniors May Run Into Roadblocks When They Try to Renew Driver Licenses Under Real ID Act," KHOU 11 News (Sept. 11, 2019), https://www.khou.com/article/news/real-id-act-affecting-senior-drivers-renewing-licenses/285-3f2e30a2-4552-41b8-ae92-fe99479807d1; Ina Jaffe, "For Older Voters, Getting the Right ID Can Be Especially Tough," Nat'l Public Radio (Sept. 7, 2018), https://www.npr.org/2018/09/07/644648955/for-older-voters-getting-the-right-id-can-be-especially-tough.

an ID number. For instance, Linda and Jack White, a retired couple from Corpus Christi, applied to vote by mail for the 2022 primary election, but their applications were rejected because they overlooked the fields to add their ID numbers.[24] When Mrs. White applied to vote by mail a second time, she still could not see where she was supposed to add her ID number, so she wrote both numbers on the side of her application. The state rejected that application as well.[25] Stella Guerrero-Mata, a retired bus driver, could not vote in the 2022 general election because she could not see the text on the mail-in ballot envelope where she was required to write her ID number. ROA.34215. Importantly, none of these errors or omissions on the applications to vote by mail or the mail-in ballot envelope were related—much less material—to the question of whether Mr. and Mrs. White or Ms. Guerrero-Mata were qualified to vote in the 2022 elections at issue. *See, e.g.*, *Vote.Org*, 89 F.4th at 487 (Materiality Provision "prohibit[s] those acting under color of state law from using immaterial omissions, which were historically used to prevent racial minorities from voting, from blocking any individual's ability to vote—irrespective of racial animus").

---

[24] Nick Corasaniti, "Texas Voting Law Leads to Jump in Ballot Application Rejections," N.Y. Times (Feb. 18, 2022), https://www.nytimes.com/2022/02/18/us/politics/texas-primary-voting-law.html.

[25] *Id.*

The 2022 elections illustrate the systematic and severe harm to older adults'

right to vote in Texas resulting from S.B. 1's reliance on immaterial information

required on applications to vote by mail and mail-in ballots. Older voters

throughout the state struggled to apply to vote by mail and to cast their ballots by

mail. In 2022, Texas rejected about 40,000 applications to vote by mail because of

S.B. 1's number matching requirement.[26] For instance, Pam Gaskin attempted to

apply to vote by mail after 40 years of being a qualified voter in Fort Bend County,

but her application was rejected because she used her driver's license number that

was not in the state's TEAM database. ROA.33223-33224. Heidi Schoenfeld,

another qualified voter and precinct chair in San Antonio, also had her application

to vote by mail rejected because the county election office did not have her driver's

license number on file.[27] Even more senior voters were deterred from applying to

vote by mail because of the complexity of S.B. 1's mail-in voting restrictions.

ROA.34262.

Older qualified voters who successfully applied to vote by mail still strained

to have their mail-in ballots accepted. In the March 2022 primary, Texas election

officials rejected a total of 24,636 mail-in ballots, representing nearly one in eight

---

[26] Edgar Sandoval, "'My Vote Was Rejected': Trial Underway in Texas Over New Voting Law," N.Y. Times Section A, Page 16 (Sept. 20, 2023), https://www.nytimes.com/2023/09/19/us/texas-voting-rights-trial.html.
[27] Nick Corasaniti, "Texas Voting Law Leads to Jump in Ballot Application Rejections," N.Y. Times (Feb. 18, 2022), https://www.nytimes.com/2022/02/18/us/politics/texas-primary-voting-law.html.

such ballots.[28] The most common reason for rejecting mail-in ballots was S.B. 1's number matching requirement, which led to over 20,000 mail-in ballots being rejected.[29] For example, Roberto Benavides, a 76-year old resident of Travis County, attempted to vote by mail in the November 2022 general election, but could not do so because of a typographical error in the driver's license number in his voter registration record. ROA.33224. Yet it was never disputed that Mr. Benavides was in fact a qualified voter in Texas. These high figures of rejection of mail-in ballots reflect that "too many voters, including older voters, are being disenfranchised."[30]

Older adults in Texas and all over the country vote in record numbers and are particularly likely to exercise their right to vote by mail. But S.B. 1's number matching requirement means that many older adults in Texas will not be able to vote—not because they are not qualified but because the ID number on their application to vote by mail or their mail-in-ballot envelope does not match the number in TEAM, a database rife with errors. ROA.33244; 13318-13330; 15314-

---

[28] Alexa Ura, "More Than 12% of Mail-In Ballots Were Rejected in Texas Under New GOP Voting Rules, Final Tally Shows," Texas Tribune (Apr. 6, 2022), https://www.texastribune.org/2022/04/06/texas-mail-in-ballot-rejection-voting/.

[29] Kevin Morris & Coryn Grange, "Records Show Massive Disenfranchisement & Racial Disparities in 2022 Texas Primary," Brennan Center for Justice (Oct. 20, 2022), https://www.brennancenter.org/our-work-research-reports/records-show-massive-disenfranchisement-and-racial-disparities-2022-texas.

[30] Mark Hollis, "AARP Texas Director Finds Ballot Rejections 'Deeply Troubling,'" AARP (Apr. 6, 2022), https://states.aarp.org/texas/aarp-texas-director-finds-ballot-rejections-deeply-troubling.

15319. This undue and immaterial requirement is exactly what the Materiality

Provision is designed to prevent.

## CONCLUSION

For the above reasons, amici respectfully request that this Court affirm the

grant of summary judgment in favor of Plaintiffs-Appellees.

Date: August 19, 2024

/s/ William A. Rivera

WILLIAM ALVARADO RIVERA*
LOUIS LOPEZ
STEFAN SHAIBANI
REBECCA RODGERS
ALLISON HORWITZ**
AARP FOUNDATION
601 E Street, NW
Washington, DC 20049
202-434-3392
warivera@aarp.org
* Counsel of Record
**Admitted in MD and NH; Practice
supervised by members of the DC Bar

Counsel for Amici
AARP and AARP Foundation

## COMBINED CERTIFICATIONS

In accordance with the Federal Rules of Appellate Procedure and the Local Rules of this Court, I hereby certify the following:

1.  I am a member in good standing of the Bar of this Court.

2.  This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 3,742 words, excluding the parts exempted by Fed. R. App. P. 32(f).

3.  This Brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared using Microsoft Word in a proportionally spaced font (namely, Times New Roman) in 14-point in the text and 12-point in the footnotes.

4.  The text of the electronic Brief is identical to the text in the paper copies.

5.  The electronic file containing the Brief was scanned for viruses using the most recent version of a commercial virus scanning program, and no virus was detected.

Date: August 19, 2024

*/s/ William Alvarado Rivera*
William Alvarado Rivera

*Counsel of Record for Amici*
*AARP and AARP Foundation*

## **CERTIFICATE OF SERVICE**

I hereby certify that on August 27, 2024, this brief was electronically filed with the Clerk of Court using the appellate CM/ECF system. Service on counsel for all parties in the district court has been accomplished via notice filed through the court's CM/ECF system attaching a copy of this filing.

Date: August 27, 2024

*/s/ William Alvarado Rivera*
William Alvarado Rivera

*Counsel of Record for Amici*
*AARP and AARP Foundation*