No. 23-50885

# In the United States Court of Appeals for the Fifth Circuit

United States of America; OCA-Greater Houston, League of Women Voters of Texas; REVUP-Texas,

*Plaintiffs-Appellees*,

*v.*

Ken Paxton, Attorney General, State of Texas; Jane Nelson, in her official capacity as Texas Secretary of State; State of Texas; Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

## REPLY BRIEF FOR APPELLANTS

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General

Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Counsel for State Defendants-Appellants

# TABLE OF CONTENTS

Page

Table of Authorities ............................................................................. ii

Introduction ........................................................................................ 1

Argument ............................................................................................ 3

    I.    The Materiality Provision Does Not Apply to Neutral
          Regulations of Already-Registered Voters Like S.B. 1. .............................. 3

        A.   The challenged provisions of S.B. 1 do not implicate the
             Materiality Provision because they do not implicate the
             "right to vote." ...................................................................... 3

        B.   The Materiality Provision is limited to rules governing the
             voter-registration process. ...................................................... 8

        C.   The Materiality Provision does not apply to race-neutral
             election regulations. ............................................................. 11

    II.   Even if the Materiality Provision Applies, the Challenged
          Provisions Are Material. ............................................................. 12

    III.  Plaintiffs' Claims Are Jurisdictionally Barred ............................................ 17

Conclusion ........................................................................................ 22

Certificate of Service ......................................................................... 23

Certificate of Compliance .................................................................. 23

# Table of Authorities

Page(s)

**Cases:**

*Air Evac EMS, Inc. v. Tex. Dep't of Ins.*,
851 F.3d 507 (5th Cir. 2017) ..................................................................19

*Am. Party of Tex. v. White*,
415 U.S. 767 (1974) ............................................................................... 8

*Anderson v. Celebrezze*,
460 U.S. 780 (1983) ............................................................................... 8

*Arbraugh v. Altimus*,
26 F.4th 298 (5th Cir. 2022) ................................................................ 21

*California v. Texas*,
593 U.S. 659 (2021) .........................................................................17-19

*City of Austin v. Paxton*,
943 F.3d 993 (5th Cir. 2019) ................................................................19

*City of Boerne v. Flores*,
521 U.S. 507 (1997) ............................................................................... 5

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................... 20

*Clapper v. Amnesty Int'l. USA*,
568 U.S. 398 (2013) ..............................................................................19

*Condon v. Reno*,
913 F. Supp. 946 (D.S.C. 1995) ............................................................ 9

*Cozzo v. Tangipahoa Par. Council*,
279 F.3d 273 (5th Cir. 2002) ............................................................... 18

*Crawford v. Marion Cnty. Election Bd.*,
553 U.S. 181 (2008) ............................................... 1, 2, 7, 12, 14-16

*In re Debs*,
158 U.S. 564 (1895) ............................................................................. 21

*Democratic Nat'l Comm. v. Wis. State Leg.*,
141 S. Ct. 28 (2020) ............................................................................... 8

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) .........................................9, 13-14, 17

*Friedman v. Snipes*,
  345 F. Supp. 2d 1356 (S.D. Fla. 2004) .................................................. 9

*Hall v. Hall*,
  584 U.S. 59 (2018) ................................................................................ 5

*James v. Hegar*,
  86 F.4th 1076 (5th Cir. 2023) .............................................................. 18

*Lewis v. Scott*,
  28 F.4th 659 (5th Cir. 2022) ................................................................ 21

*Liebert v. Millis*,
  No. 23-cv-672, 2024 WL 2078216 (W.D. Wis. May 9, 2024) ............................ 11

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ............................................................................ 17

*McDonald v. Bd. of Election Comm'rs of Chi.*,
  394 U.S. 802 (1969) ......................................................................... 2, 4

*Mi Familia Vota v. Abbott*,
  977 F.3d 461 (5th Cir. 2020) ............................................................... 21

*Mi Familia Vota v. Ogg*,
  105 F.4th 313 (5th Cir. 2024) ........................................................ 18, 21

*Miller v. Johnson*,
  515 U.S. 900 (1995) ............................................................................ 3

*Moore v. Harper*,
  600 U.S. 1 (2023) ................................................................................ 5

*N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*,
  597 U.S. 1 (2022) ............................................................................ 3-4

*Pa. State Conf. of NAACP Branches v. Sec'y Commw. of Pa.*,
  97 F.4th 120 (3d Cir. 2024), *reh'g denied* (Apr. 30, 2024) ..................... 2, 4, 8-11

*Pub. Citizen, Inc. v. Bomer*,
  274 F.3d 212 (5th Cir. 2001) ............................................................... 18

*Purcell v. Gonzalez*,
  549 U.S. 1 (2006) (per curiam) ............................................................. 1

*Richardson v. Flores*,
  28 F.4th 649 (5th Cir. 2022) ......................................................... 20-21

*Ritter v. Migliori*,
  142 S. Ct. 1824 (2022) (Alito, J., dissenting) ............................... 2, 4, 11

*Rosario v. Rockefeller*,
  410 U.S. 752 (1973) ............................................................................ 8

*S.E.C. v. Forex Asset Mgmt. LLC*,
  242 F.3d 325 (5th Cir.2001) ...............................................................19

*Schwier v. Cox*,
  340 F.3d 1284 (11th Cir. 2003) ....................................................... 4, 9

*Storer v. Brown*,
  415 U.S. 724 (1974) ............................................................................ 4

*Taggart v. Lorenzen*,
  587 U.S. 554 (2019) ............................................................................ 5

*Tawakkol v. Vasquez*,
  87 F.4th 715 (5th Cir. 2023) ............................................................ 18

*Tex. All. for Retired Ams. v. Scott*,
  28 F.4th 669 (5th Cir. 2022) ...................................................... 20, 22

*Tex. Democratic Party v. Abbott*,
  978 F.3d 168 (5th Cir. 2020) ................................. 2, 4, 6, 8, 17, 20, 22

*Tex. Democratic Party v. Hughes*,
  860 F. App'x 874 (5th Cir. 2021) (per curiam) ................................ 20

*Thrasher v. Ill. Republican Party*,
  No. 4:12-cv-4071, 2013 WL 442832 (C.D. Ill. Feb. 5, 2013) .............. 9

*Timmons v. Twin Cities Area New Party*,
  520 U.S. 351 (1997) ............................................................................ 8

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ...........................................................................17

*Tully v. Okeson*,
  78 F.4th 377 (7th Cir. 2023) .......................................................... 7-8

*United States v. Johnson*,
  632 F.3d 912 (5th Cir. 2011) ............................................................ 21

*United States v. Texas*,
  143 U.S. 621 (1892) ...........................................................................19

*Veasey v. Abbott*,
  830 F.3d 216 (5th Cir. 2016) (en banc) .................................... 1, 2, 15

*Ex parte Virginia*,
  100 U.S. 339 (1879) ............................................................................ 5

*Vote.Org v. Callanen*,
  39 F.4th 459 (5th Cir. 2022) .............................................................. 2

*Vote.Org v. Callanen*,
  89 F.4th 459 (5th Cir. 2023) ......................................1-3, 7-8, 10, 12-17

*Ex parte Young,*
    209 U.S. 123 (1908).............................................................18, 21-22
*State v. Zurawski,*
    690 S.W.3d 644 (Tex. 2024)..............................................................19

**Constitutional Provisions, Statutes, and Rules:**

U.S. Const.:

    amend. XV ...............................................................................5

    amend. XV, § 1 .........................................................................5

    amend. XV, § 2 .........................................................................5

    art. I, § 4 ..................................................................................5

52 U.S.C.:

    § 10101(a)(2)(B)...................................... 3, 8-9, 11-13, 17

    § 10101(e)............................................................... 5, 11

    § 20901 *et seq.*.......................................................... 14

    § 21083(a)(5)(A)(i) .................................................... 14

Tex. Elec. Code:

    § 11.002(a) ................................................................15

    § 13.002(c)(8) ........................................................... 14

    § 63.001.......................................................................... 2

    § 64.009(a) .................................................................. 6

    § 84.002(1-a) .............................................................. 9

    § 84.002(a)(1) ...........................................................15

    § 86.001(c) ................................................................ 20

    § 86.002(g)-(i) .......................................................... 10

    § 86.003 ...................................................................... 6

    § 87.002 .................................................................... 20

    § 87.041...................................................................... 10

    § 87.041(a) ................................................................ 20

    § 87.041(b) ................................................................ 10

    § 87.041(d-1) ............................................................ 10

    § 87.041(e) ................................................................ 10

Fed. R. App. P.

    28(i) ........................................................................... 3

**Other Authorities:**

Webster's Third International Dictionary (3d ed. 1961) ........................ 6-7

Felix Frankfurter, *Some Reflections on the Reading of Statutes,*

47 Colum. L. Rev. 527 (1947) ................................................... 5

Note, *Protecting the Public Interest: Nonstatutory Suits by the United States*, 89 Yale L.J. 118 (1979) .............................................. 21

Tr. of Oral Arg. at 86, *Moyle v. United States*, 144 S.Ct. 205 (2024) (No. 23-726) (Gorsuch, J.) ..................................................... 21

# INTRODUCTION

As this Court has noted, "a premise for all … statutory qualifications"—whether to vote in person or by mail—is the answer to the question, "Are the individuals who are trying to register actually who they say they are?" *Vote.Org v. Callanen*, 89 F.4th 459, 487 (5th Cir. 2023) (*Vote.Org II*). "While the most effective method of" answering that question, and thereby "preventing voter fraud may well be debatable, the propriety of doing so is perfectly clear." *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 196 (2008). That is not just because fraudulent votes can sway the outcome of a close election, but also because "[v]oter fraud drives honest citizens out of the democratic process and breeds distrust of our government." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006) (per curiam). "[T]he potential and reality of [such] fraud is much greater in the mail-in ballot context than with in-person voting." *Veasey v. Abbott*, 830 F.3d 216, 239 (5th Cir. 2016) (en banc). That is because ballots are, by definition, "completed far from any government office or employee," which "limits the methods of assuring the identity" of the voter. *Vote.Org II*, 89 F.4th at 489.

The Texas Legislature enacted the challenged provisions of S.B. 1 to address these problems by requiring an individual whose identification cannot be physically checked by a state employee to provide the identification number on their application to vote by mail. Plaintiffs attempt to convince the Court that S.B. 1 somehow infringes the right to vote, but they simply misread and misapply the Materiality

Provision, which does not apply to laws outside the voter-registration context[1] and does not bar a State's neutral rules that govern the process for already-registered voters, *cf. Crawford*, 553 U.S. at 196; *Veasey*, 830 F.3d at 239, including that a voter provide identification, Tex. Elec. Code § 63.001. After all, "[e]ven the most permissive voting rules must contain some requirements," *Vote.Org v. Callanen*, 39 F.4th 459, 305 n.6 (5th Cir. 2022) (*Vote.Org I*), and "failure to follow these rules" would merely "constitute[] the forfeiture of the right to vote, not the denial of that right." *Id*. That is particularly true in the context of laws like S.B. 1, which address not the right to vote but the privilege to vote by mail. *Tex. Democratic Party v. Abbott*, 978 F.3d 168, 185 (5th Cir. 2020) (citing *inter alia McDonald v. Bd. of Election Comm'rs of Chi.*, 394 U.S. 802 (1969)). And even if the Materiality Provision applies, S.B. 1's identification requirement satisfies it because it "meaningfully, even if . . . imperfectly corresponds to the substantial State interest in assuring that those [who] vote are who they say they are." *Vote.Org II*, 89 F.4th at 489. Of course, Plaintiffs' arguments assume the Court has jurisdiction to consider this appeal, which it does not.

---

[1] *Pa. State Conf. of NAACP Branches v. Sec'y Commw. of Pa.*, 97 F.4th 120, 131 (3d Cir. 2024), *reh'g denied* (Apr. 30, 2024); *see also Ritter v. Migliori*, 142 S. Ct. 1824, 1825 (2022) (Alito, J., dissenting); *Vote.Org I*, 39 F.4th at 305 n.6; *Vote.Org II*, 89 F.4th at 479 n.7.

# Argument

## I. The Materiality Provision Does Not Apply to Neutral Regulations of Already-Registered Voters Like S.B. 1.

It is blackletter law that Texas, like all other States, "has considerable discretion in deciding what is the adequate level of effectiveness to serve its important interests in voter integrity, and "significan[t] . . . authority to set its electoral rules." *Vote.Org II*, 89 F.4th at 481, 485; *Miller v. Johnson*, 515 U.S. 900, 915 (1995) (explaining the need for such "discretion to exercise the political judgment necessary to balance competing interests"). The Materiality Provision displaces that discretion but only as to state laws that "*deny* the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting" that is not "material" to whether the "individual is qualified under State law to vote." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). It does not apply to S.B. 1 for at least three separate reasons, and Plaintiffs' arguments are not to the contrary.[2]

### A. The challenged provisions of S.B. 1 do not implicate the Materiality Provision because they do not implicate the "right to vote."

To start, by using the phrase "right to vote," the Materiality Provision "codified a *pre-existing* right" shaped by "history." *See N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 20 (2022). "Understanding what the right to vote meant at the

---

[2] For the avoidance of doubt, the State Defendant-Appellants agree with and adopt the arguments of Intervenor Appellants. *Cf.* Fed. R. App. P. 28(i). To avoid burdening the Court, the State Defendant-Appellants have sought to minimize the overlap between the two reply briefs.

time" the Civil Rights Act was passed in 1964 "is certainly assisted by the 1969 *McDonald* [*v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 807-08 (1969)] decision," which held that "denying mail-in ballots to [a class of voters] otherwise eligible to vote did not 'deny appellants the exercise of the franchise'" because it was "'not the right to vote that [was] at stake [t]here but a claimed right to receive absentee ballots.'" *Tex. Dem. Party v. Abbott*, 978 F.3d at 185 (quoting *McDonald*, 394 U.S. at 807).

None of the challenged provisions of S.B. 1 deny the "right to vote" as properly understood. Early-voting clerks who enforce S.B. 1's identification requirement do not "disqualify potential voters" or otherwise prevent them from exercising the franchise—and certainly not on a discriminatory or racial basis. *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). Instead, they simply decline to accept noncompliant applications to vote by mail or to count noncompliant mail-in ballots "because [individuals] did not follow the rules for" completing the application or "casting a ballot." *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting); *see Pa. State Conf.*, 97 F.4th at 133. Such regulations are required if elections "are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Storer v. Brown*, 415 U.S. 724, 730 (1974).

In response, the federal government (at 34-38) and OCA-Plaintiffs (at 33-34) primarily adopt a convoluted theory that the "right to vote" safeguarded by the Materiality Provision is different than the constitutional right to vote. This theory is untenable. To start, it is a "longstanding interpretive principle," *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019), that "if a word is obviously transplanted from another legal

4

source, whether the common law or other legislation, it brings the old soil with it." Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947); *see also, e.g.*, *Hall v. Hall*, 584 U.S. 59, 73 (2018). That principle is particularly important here because ordinarily it is the States that are constitutionally empowered to regulate elections. U.S. Const. art. I, § 4; *Moore v. Harper*, 600 U.S. 1, 10 (2023). Congress derives its ability to pass the Materiality Provision from its ability to enforce the Fifteenth Amendment's prohibition of any law abridging the "right . . . to vote" only "on account of race, color, or previous condition of servitude." U.S. Const. amend. XV, § 1; *id.* § 2. As a result, Congress cannot, by statute, expand the meaning assigned to that language by the Supreme Court. *Cf. City of Boerne v. Flores*, 521 U.S. 507, 517-18 (1997).

For that reason, the Materiality Provision may expand the definition of "vote" to "include[] all action necessary to make a vote effective including, but not limited to, registration or other action required by State law prerequisite to voting." 52 U.S.C. § 10101(e). But only to the extent that they are "adapted to carry out the objects the amendments have in view." *City of Boerne*, 521 U.S. at 517 (quoting *Ex parte Virginia*, 100 U.S. 339, 345-46 (1879)). Thus, the Materiality Provision certainly does not and did not create "a separate *statutory* right to vote." *Contra* U.S.Br.34.

Because the challenged provisions address only the ability to vote by mail, it does not *abridge*, let alone *deny* the right to vote itself. A law "abridges a person's right to vote for the purposes of the [Fifteenth] Amendment only if it makes voting, *more difficult* for that person than it was before the law was enacted." *Tex. Dem. Party*, 978

F.3d at 191. It "denies" the right to vote for the purposes of the Materiality Provision only if it "refuse[s] or withhold[s] permission to; preclude occasion for or occurrence of." *Deny*, Webster's Third International Dictionary (3d ed. 1961).

None of Plaintiffs' arguments show that the challenged provisions deny the right to vote as properly understood. For example, the OCA-Plaintiffs suggest (at 33) that "voters frequently have disability or age-related mobility issues that mean they cannot simply vote in person." This ignores, however, that Texas law makes special provision for any voter who "is physically unable to enter the polling place without personal assistance or likelihood of injuring the person's health." Tex. Elec. Code. § 64.009(a). True, it may be easier for such individuals to cast their ballots by mail, *id.* § 86.003, but that is not the test, *see Tex. Dem. Party*, 978 F.3d at 191 (noting that "a law that makes it easier for others to vote does not abridge any person's right to vote").[3]

Both the federal government (*e.g.*, at 18, 22-23, 36) and the OCA-Plaintiffs (*e.g.*, at 33, 37) also repeatedly endorse the district court's view that because failure to abide by the challenged provisions can result in the rejection of a voter's mail-in ballot, it deprives them of an "effective" vote. But "effective" merely means "capable

---

[3] For this reason (among others), Plaintiffs are wrong to suggest that the State Defendants-Appellants are ignoring language about forms that are "requisite to voting." More generally, the OCA-Plaintiffs include a lengthy dissertation about why the Court should ignore the State Defendants' or Intervenors' request to "ignore" the text. *See generally* OCA-Pls.Br.49-64. As these arguments repeatedly distort the State Defendants' position until they are almost unrecognizable, the State Defendants will not address them in detail here but instead rest on their opening brief.

of bringing about an effect," *Effective*, Webster's Third International Dictionary (3d ed. 1961)—not taking any form or having a certain effect that Plaintiffs may prefer. Instead, cases addressing the "*effective* exercise of the franchise" typically "focus[] on the right to register, the right to cast a ballot, and the right to have that ballot counted"—*not* "with peripheral matters typically left to the States." *Tully v. Okeson*, 78 F.4th 377, 384 (7th Cir. 2023) (collecting cases). Like providing a form of government identification before voting in person, the challenged provisions are the type of reasonable, neutral restrictions that are presumptively valid. *See Crawford*, 553 U.S. at 200.

Although failure to comply with the challenged provisions may lead to the rejection of a mail-in ballot, that does not mean the voter's *vote* is ineffective because S.B. 1 specifically provides a right to cure. *See id.* at 199 (noting that the "burden is, of course, mitigated by the fact that, if eligible, voters without photo identification may cast provisional ballots"); *see also* Tex.Br.33. The federal government dismisses (at 34) this ability to cure based on *Vote.Org II*'s expression of "doubt about the efficacy of an *ability* to cure" because the "*need* to cure an immaterial requirement creates a hurdle for . . . the right to vote." 89 F.4th at 487. *Vote.Org II*, however, involved voter-registration rules, which are different in kind from laws regulating "the voting process itself." *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983); *see also, e.g.*, *Pa. State Conf.*, 97 F.4th at 129-30.

Moreover, even individuals who fail to cure a problem with their mail-in ballot remain free to vote in any election on equal terms with, and according to the same rules as, all other voters. *See Rosario v. Rockefeller*, 410 U.S. 752, 757 (1973);

*Democratic Nat'l Comm. v. Wis. State Leg.*, 141 S. Ct. 28, 35 (2020) (Kavanaugh, J., concurring). Because the challenged provisions relate only to the ability to vote by mail, and there are other options, the "right to vote" is not implicated, and the Materiality Provision is not triggered. *See Tully*, 78 F.4th at 384; *Cf. Tex. Dem. Party*, 978 F3d at 193 (discussing *Am. Party of Tex. v. White*, 415 U.S. 767, 794-95 (1974)).

## B. The Materiality Provision is limited to rules governing the voter-registration process.

Even if the right to vote were implicated, the statutory text of the Materiality Provision is limited and provides that no State actor may "deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any *application, registration, or other act requisite to voting*" that is not "material" to whether the "individual is qualified under State law to vote." § 10101(a)(2)(B) (emphasis added). Because "States may, and inevitably must, enact reasonable regulations of parties, elections, and ballots to reduce election- and campaign-related disorder," *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 358 (1997), the Materiality Provision applies only as a safeguard against the uneven or discriminatory application of state voter qualification and registration rules, *see* Tex.Br. 25-28.

"Until recently, the Materiality Provision received little attention from federal appellate courts." *Pa. State Conf.*, 97 F.4th at 127. But as courts have recognized, voting laws are best understood as addressing two "separate stages of the voting process": (1) the "who" stage; and (2) the "how" stage. *Id.* at 129-30. The "Materiality Provision [provides] an important federal overlay on the state election requirements

during the 'who' stage" by "prohibit[ing] States from denying an applicant the right to vote based on an error" that "is immaterial in determining whether he is qualified to vote." *Id.* at 130. But there is no "case law in [any] jurisdiction . . . indicat[ing] that section [10101](a)(2)(B) was intended to apply to" the *how* stage—that is to "counting of ballots by individuals *already deemed qualified to vote.*" *Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1371 (S.D. Fla. 2004). Instead, the Materiality Provision addresses "the practice of disqualifying potential voters for their failure to provide information irrelevant to determining their eligibility to vote." *Schwier*, 340 F.3d at 1294; *see also Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008); *Thrasher v. Ill. Republican Party*, No. 4:12-cv-4071, 2013 WL 442832, at *3 (C.D. Ill. Feb. 5, 2013); *Condon v. Reno*, 913 F. Supp. 946, 950 (D.S.C. 1995).

The challenged provisions of S.B. 1 deal with the *how* stage of voting. To ensure that the person applying for a ballot by mail is *already* registered to vote, the challenged provisions require the voter to include on their ballot-by-mail application a government-issued identification number or "a statement by the applicant that the applicant has not been issued [such] a number." Tex. Elec. Code § 84.002(1-a). To ensure that the person completing the actual ballot is the voter who requested it, that voter must then record on the carrier envelope one of these same numbers, *id.* § 86.002(g)-(i), or their ballot will be rejected, *id.* § 87.041(b), (d-1), (e). Accordingly, S.B. 1 requires that an applicant's identification number appears both on the mail-in ballot application and mail-in ballot envelope. *Id.* § 87.041.

Perhaps recognizing that it would lose if this Court were to apply *Pennsylvania NAACP*, the federal government insists (at 25) that "the Third Circuit recognized

that [voter qualification] determinations can occur *after* a person already has registered to vote." To support this claim, the federal government looks to the Third Circuit's phrasing that a person voting by mail is qualified to vote when his voting registration application is approved and "again" when his mail-ballot application is accepted. *Id.* (citing *Pa. State Conf.*, 97 F.4th at 137). But that misses the point of the Third Circuit's decision and misconstrues its application to this case. In *Pennsylvania NAACP*, the Third Circuit expressly held that the Materiality Provision "only applies when the State is determining *who* may vote" and "does not apply to rules . . . that govern *how* a qualified voter must cast his ballot for it to be counted." *Pa. State Conf.*, 97 F.4th at 125. In doing so, the Third Circuit warned that a contrary holding will severely harm the integrity of elections nationwide by "t[ying] state legislatures' hands in setting voting rules unrelated to voter eligibility." *Id.* at 134.

Nothing in this Court's precedents requires rejecting the Third Circuit's decision. Indeed, as Plaintiffs recognize (at 47-52), this Court in *Vote.Org II* considered a voter-registration issue and the Court explicitly declined to decide whether the Materiality Provision applies to "vote counting" rules. 89 F.4th at 479 n.7. That conclusion is entirely consistent with the Third Circuit's opinion, which recognized that "vote-casting rules . . . serve entirely different purposes than voter-qualification rules." *Pa. State Conf.*, 97 F.4th at 136; *Ritter*, 142 S. Ct. at 1825 (Alito, J., dissenting). Rather than adopt "a broader interpretation of the Materiality Provision," which "would mean that numerous rules related to vote casting would be invalid," *see Liebert v. Millis*, No. 23-cv-672, 2024 WL 2078216, at *14 (W.D. Wis. May 9, 2024), this Court should join the Third Circuit and hold that the Materiality

10

Provision relates only to provisions regulating voter registration—not neutral rules of election administration like S.B.1's identification requirement.

### C. The Materiality Provision does not apply to race-neutral election regulations.

Finally, a plain reading of the Materiality Provision shows that it prohibits only "deny[ing] the right of any individual to vote" on the grounds of race. *See* 52 U.S.C. § 10101(a)(2)(B). It does not preclude States from establishing race-neutral regulations for election administration or mail-in voting. And there is simply no evidence that S.B. 1's identification requirement amounts to racial discrimination. *See* Tex.Br. 10-15. *Contra* U.S.Br.21-40; OCA-Pls.Br.37-46.

Indeed, the federal government acknowledges that errors and omissions on "voting-related paperwork" are "not material in determining a person's *qualifications to vote*." U.S.Br.21 (emphasis added). And the federal government asserts that the challenged provisions of S.B. 1 "deny *the right to vote* because they void actions that voters take to *make a vote effective* and to *have it counted*." *Id.* at 23 (quotation marks omitted) (citing 52 U.S.C. 10101(e)) (emphasis added). But the Supreme Court has recognized that the right to vote is not infringed—let alone denied—by neutral State regulations that deter and detect voter fraud. *See, e.g., Crawford*, 553 U.S.at 191, 196.[4] Moreover, because "not only is the risk of voter fraud real but that

---

[4] The federal government asserts (at 47 n.5) that *Vote.Org II* "forecloses" the argument that the Materiality Provision is limited to racially motivated deprivations of the right to vote. For the reasons stated in its opening brief (at 26-28), Texas rejects this proposition and, respectfully, reserves the right to seek further review on the issue at an appropriate time.

it could affect the outcome of a close election," *id.* at 196, the State can act to mitigate that risk even where "[t]he record contains no evidence of any such fraud actually occurring," *id.* at 195. Plaintiffs are thus wrong to suggest that they are entitled to summary judgment because "evidence of fraud . . . is wanting." OCA-Pls.Br.15.

## II. Even if the Materiality Provision Applies, the Challenged Provisions Are Material.

Even if the Materiality Provision applies, S.B. 1's identification requirement is material "in determining whether such individual is qualified under State law to vote" by mail "in such election." 52 U.S.C. § 10101(a)(2)(B); Tex.Br.28-37. As this Court recognized in *Vote.Org II*, the "[u]ndeniable … premise for all the statutory qualifications" subject to the Materiality Provision is the question of whether "the individuals who are trying to register"—or, more correctly here, trying to apply to vote by mail—"actually who they say they are[.]" 89 F.4th at 487. Matching a known identification number to information included on a mail-ballot application and ultimately a mail ballot may be an "imperfect" way to answer that question. *Id.* at 489. But because such "forms likely are completed far from any government office or employee" capable of checking an individual's identification, there are "limit[ed] methods of assuring the identity of the" applicant. *Id.* at 489. Even if the effects "may not be dramatic," the State's selected method will stand so long as its "justification . . . is legitimate" and "more than tenuous." *Id.* Texas meets both elements of that standard. Tex.Br.28-37.

**A.** Still, the federal government asserts (at 47-54) that S.B. 1 violates the Materiality Provision based on this Court's decision in *Vote.Org II* and the Eleventh

Circuit's decision in *Florida State Conference of NAACP v. Browning*. But as just noted, *Vote.Org II* supports the State Defendants because it reiterated that, even when the Materiality Provision applies, courts must defer to a State's "considerable discretion in deciding what is an adequate level of effectiveness to serve [the] important interests" of ensuring "voter integrity." *Vote.Org II*, 89 F.4th at 485. The Court further explained that courts must uphold state laws that implicate the Materiality Provision if the "justification" for the law is "more than tenuous" to protecting election integrity. *Id.* at 484-85. S.B. 1's identification requirement easily satisfies this standard because it is designed to ensure that voters submitting ballot envelopes "actually [are] who they say they are," which is an "[u]ndeniabl[y]" material "premise for all the statutory qualifications" to vote. *Id.* at 487. Specifically, the challenged provisions of S.B. 1 are material "in determining whether such individual is qualified under State law to vote in such election," 52 U.S.C. § 10101(a)(2)(B)—or whether the individual is entitled to vote by mail, which is the only thing regulated by the relevant provisions of S.B. 1.

If anything, the *Browning* decision is *less* helpful to Plaintiffs. In that case, the Eleventh Circuit recognized that "there appears to be two kinds of 'materiality,' one similar to minimal relevance and the other closer to outcome-determinative." *Browning*, 522 F.3d at 1174. The court expressly declined to decide between the two because HAVA's federal requirement that a voter provide an identification number on his voter-registration application is "material to determining eligibility to register and to vote." *Id.* Nonetheless, the federal government insists (at 54) that *Browning* helps its cause because it "does not require that states authenticate these numbers

by matching them against existing databases" and instead allows States to treat an identification number provided on a voter-registration application as "self-authenticating." *Id.* at 1174 n.21. That States don't *have* to verify against existing databases, however, says nothing about whether States *can* do so. And, as this Court has held, "a State has considerable discretion in deciding what is an adequate level of effectiveness to serve its important interest in voter integrity." *Vote.Org II*, 89 F.4th at 485 (discussing *Crawford*, 553 U.S. at 485).

Regardless, *Browning* is consistent with Texas's argument (at 36-37) that federal law has required identification numbers on voter-registration applications since 2004 under HAVA. 52 U.S.C. § 20901 *et seq.* In fact, HAVA *forbids* Texas from accepting a voter-registration application unless that application includes the requisite identification numbers. *Id.* § 21083(a)(5)(A)(i). To comply with HAVA, Texas requires all registered voters to provide an identification number, meaning a Texas Driver's License or Personal Identification number or the last four digits of a social security number, on their voter registration. Tex. Elec. Code § 13.002(c)(8). S.B. 1's identification requirement simply extends that requirement to mail-in balloting. That is, Texas now uses the identification number it is required to collect and maintain under federal law to confirm a voter's identity and to reduce the risk of election fraud where this Court has recognized it is most likely to occur—mail-in voting. *Veasey*, 830 F.3d at 238-39. And that makes practical sense: without having registered to vote, a putative voter is not "qualified" to cast any ballot, including a mail-in ballot, under state law. *See* Tex. Elec. Code § 11.002(a); *id.* § 84.002(a)(1).

**B.**  Perhaps in recognition that, following *Vote.Org II*, it may be necessary "to remand to allow the district court to apply the correct standard at the summary judgment phase" or to "advance the case to trial," OCA-Pls.Br.65 n.33, the OCA-Plaintiffs choose to fight this issue on the facts. Specifically, they insist that "[t]here is *no* specific evidence in the form of legislative debate, history, or documentation to show that the number-matching requirement is meant to accomplish that end," *id.* at 66, and that "[t]here are numerous other mechanisms to ensure the security of mail-ballot voting in Texas, including signature matching, unique digital identifiers, criminal penalties, and [unspecified] more." *id.* at 68. This, however, misstates the burden of proof.

Under *Vote.Org II*, States have broad discretion to decide how much voter-integrity protection is enough—at least so long as it does not impose a severe burden on the right to vote. 89 F.4th at 490. Leaving aside that the right to vote is not implicated in this case, *supra* Part I.A, under *Crawford*, identification requirements are deemed to impose only a slight burden on voters, subjecting them to rational basis review. *See, generally Crawford*, 553 U.S. at 196-203. This requires Plaintiffs to prove more than just that there are "other mechanisms" to verify a voter's identity, OCA-Pls.Br.68, or that an identification requirement "imposes some burdens on voters that other methods of identification do not share," 553 U.S. at 197, or even that some "burden may not be justified as to a few voters," *id*. at 199. But Plaintiffs cannot show anything more, and the "State's broad interests in protecting election integrity," *id*. at 200, justify any burden S.B. 1's identification requirement imposes.

15

In fact, Plaintiffs have come nowhere near the burden of proof for summary judgment on this point. For example, as they did at the stay stage, OCA-Plaintiffs insist that the identification requirement is pointless because county officials actually verify voter identities using other information. *E.g.*, OCA-Pls.Br.28. This misapprehends the record. For example, it is the "standard operating procedure" of the Denton County Elections Administrator to use the identification numbers "as a reliable way to positively identify voters." ROA.22635. Moreover, the Administrator explained, in 2020 S.B. 1's identification requirement would have helped detect a scheme by which a mayoral candidate tried to sway the election by forging more than 100 mail-ballot applications. ROA.22635; *see also* ROA.22784-85. Likewise, the Secretary of State's former Director of Elections expressly stated that the identification numbers "are used to make sure the voter has properly identified themself on the application, yes." ROA.23184-85. Such factual issues preclude the award of summary judgment following *Vote.Org II*. 89 F.4th at 488-89.

\* \* \*

In sum, neither *Vote.Org II* nor *Browning* provides the support Plaintiffs need to show that S.B. 1's identification requirement is not material. After all, the Materiality Provision provides, in relevant part, that State actors cannot "deny the right of any individual to vote" based on "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting," unless "such error or omission is not material in determining whether such individual is qualified under State law to vote in such election." 52 U.S.C. § 10101(a)(2)(B). And S.B. 1's identification requirement addresses whether the person seeking to vote *is* the

relevant voter in the first place. If the Materiality Provision applies, S.B. 1's identification requirement is material—or, at the very least, there is a triable question of material fact regarding whether it is material.

### III. Plaintiffs' Claims Are Jurisdictionally Barred.

The Court should not, however, send any claims against the Secretary back to trial because the court lacks jurisdiction over those claims. Plaintiffs do not dispute that the district court implicitly applied the wrong quantum of proof when it declined to reconsider its earlier conclusion that the Secretary lacks an adequate enforcement connection to be named as defendant. *Compare Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992), *with* ROA.33233. Because neither standing, *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021), nor a route around sovereign immunity is dispensed in gross, *Tex. Dem. Party*, 978 F.3d at 179, the trial court should have applied the summary judgment standard to each. *E.g.*, *California v. Texas*, 593 U.S. 659, 675 (2021). It didn't. And Plaintiffs attempts to resolve these fatal jurisdictional issues that bar their claims suffer the same problem: Neither the federal government (at 54-56) nor the OCA-Plaintiffs (at 70-75) point to any actual evidence that the Secretary "through her conduct, compels or constrains persons"—let alone Plaintiffs—"to obey the challenged law." *Mi Familia Vota v. Ogg*, 105 F.4th 313, 325 (5th Cir. 2024) (cleaned up). Because local officials—most of whom are not parties to this litigation—enforce the challenged provisions of S.B 1, none of Plaintiffs' alleged injuries are traceable to her or redressable by an order against her. Moreover, the OCA-Plaintiffs' claims are barred because the exception to sovereign immunity under *Ex parte Young*, 209 U.S. 123 (1908), does not apply.

**A.** To start, the OCA-Plaintiffs spill much ink (at 72-75) asserting that the Secretary has waived or forfeited her arguments that the claims against her should be decided on the merits. That is wrong as a matter of law. "Ordinarily, a failure to raise an issue below would constitute waiver," but precisely because "[s]overeign immunity is jurisdictional, and '[a] lack of subject matter jurisdiction may be raised at any time,'" it can be raised for the "first time on appeal." *Tawakkol v. Vasquez*, 87 F.4th 715, 718 n.2 (5th Cir. 2023) (quoting *Cozzo v. Tangipahoa Par. Council*, 279 F.3d 273, 280 (5th Cir. 2002)). So too with standing. *E.g.*, *James v. Hegar*, 86 F.4th 1076, 1081 (5th Cir. 2023) (citing *Pub. Citizen, Inc. v. Bomer*, 274 F.3d 212, 217 (5th Cir. 2001)). Here, the OCA-Plaintiffs admit that there was *already* an appeal pending that raised precisely this issue. The notion that State Defendants had yet more to do to preserve these issues, one of which the Court was under an obligation to raise sua sponte, is beyond meritless. *Cf. S.E.C. v. Forex Asset Mgmt. LLC*, 242 F.3d 325, 328 (5th Cir.2001).[5]

**B.** None of the Plaintiffs have standing to bring any of their claims against the Secretary. *See City of Austin v. Paxton*, 943 F.3d 993, 1002 (5th Cir. 2019) (quoting *Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017)). Because "[a]n injunction is an empty vessel if the enjoined official never had the power"— or threatened to use it—"to enforce the law in the first place," *State v. Zurawski*,

---

[5] The OCA-Plaintiffs also mischaracterize Texas's position in its opening brief (at 40 n.9), which is simply to preserve any arguments the Secretary has made in her prior appeal and to assert sovereign immunity as an affirmative defense. For the Court's convenience and clarity, Texas re-states that intent here.

690 S.W.3d 644, 659 (Tex. 2024), Plaintiffs must "assert an injury that is the result of a statute's actual or threatened enforcement, whether today or in the future," *California*, 593 U.S. at 670. In other words, Plaintiffs must show traceability and redressability. *Id.* at 669. And unlike sovereign immunity, *United States v. Texas*, 143 U.S. 621 (1892); *see* OCA-Pls.Br.76, this rule runs against the federal government, *Clapper v. Amnesty Int'l. USA*, 568 U.S. 398, 408-410 (2013).

Here, the federal government does not dispute that the Secretary does not enforce the challenged provisions of S.B. 1. Indeed, it concedes that county officials, not the Secretary, enforce mail voting requirements. U.S.Br.55 (internal citations omitted). Instead, the federal government argues (at 55-56) that under S.B. 1 the Secretary is responsible for designing the mail-in ballot application form and preparing the mail-ballot envelope. Accordingly, the federal government concludes, the Secretary "'had a role' in causing the United States' uncontested injury-in-fact," and is "in a position to redress it at least in part." U.S.Br.56 (citing *Tex. Dem. Party*, 978 F.3d at 178). But the record seems to reflect that anything the Secretary has done to design the form and ballot envelop is in the *past* and cannot show standing for prospective relief. *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983); *accord Tex. Democratic Party v. Hughes*, 860 F. App'x 874, 876 n.2 (5th Cir. 2021) (per curiam).

This Court has previously held at the *pleading* stage that the Secretary's participation in the development of forms may be sufficient under some circumstances to show an enforcement connection where the Plaintiffs "challenge the design or content of the forms associated with mail-in balloting." *Richardson v. Flores*, 28 F.4th 649, 654 (5th Cir. 2022) (discussing, *inter alia*, *Tex. Dem. Party*, 978 F.3d at 179). But

this Court has held it is *not* sufficient to show enforcement in a claim that "challenge[s] the processes of verifying mail-in ballots and notifying voters." *Id.* That is precisely the case here: Although Plaintiffs note (at 55) that the Secretary's form has a place to enter the required identification numbers, the gravamen of the complaint is not having to provide the number but instead having that number checked against existing, allegedly faulty databases. ROA.6424.

As acknowledged, county officials, not the Secretary, enforce the ballot-application requirements. Tex. Elec. Code § 86.001(c). Likewise, early-voting boards, not the Secretary, enforce mail-in-ballot requirements. *Id.* § 87.041(a). The Secretary is not the early-voting clerk of any Texas county and does not serve on the early-voting board for any Texas county. *Id.* § 87.002. The Secretary lacks an enforcement role over local elections. *See Tex. All. for Retired Ams. v. Scott*, 28 F.4th 669, 674 (5th Cir. 2022) (TARA); *Lewis v. Scott*, 28 F.4th 659, 664 (5th Cir. 2022). Because the law "confers the duty to verify ballots on local officials, . . . enjoining the Secretary to change the balloting forms 'would not afford the Plaintiffs the relief they seek, and therefore, the Secretary of State is not a proper defendant.'" *Richardson*, 28 F.4th at 654 (quoting *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467-68 (5th Cir. 2020)).

The federal government fares no better when it briefly cites (at 55) *In re Debs*, 158 U.S. 564 (1895), suggesting that precedent may confer standing. It is unclear precisely what the federal government means by this oblique reference to what one member of the Supreme Court recently acknowledged "wasn't exactly our brightest moment." Tr. of Oral Arg. at 86, *Moyle v. United States*, 144 S.Ct. 205 (2024) (No. 23-726) (Gorsuch, J.). Assuming that the issue hasn't been waived by insufficient

briefing,[6] and assuming *Debs* is about standing (which has long been subject to serious debate, Note, *Protecting the Public Interest: Nonstatutory Suits by the United States*, 89 Yale L.J. 118, 123 (1979)), it predates the Court's modern standing doctrine and is thus of questionable precedential value, *see United States v. Johnson*, 632 F.3d 912, 919 (5th Cir. 2011). Under that modern tri-partite test, the federal government was required to show that any injury it alleges is traceable to the Secretary.

**C.**   For similar reasons, the OCA-Plaintiffs' sovereign immunity argument (at 70-75) fails. The OCA-Plaintiffs argue (at 70-73) that the Secretary is not entitled to sovereign immunity because their claims fall under the *Ex parte Young* exception. As the OCA-Plaintiffs fully concede, akin to the traceability aspect of standing, "*Ex parte Young* applies on a showing that the defendant has the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty." OCA-Pls.Br.70-71 (citing *Tex. Dem. Party*, 978 F.3d at 179) (internal citations omitted). That is, for a state official to be the proper defendant for injunctive relief, she "must have '*some* connection with the enforcement of the [challenged] act.'" *TARA*, 28 F.4th at 672 (alteration in original) (quoting *Ex parte Young*, 209 U.S. at 157).

But here, the Secretary has no role in enforcing the challenged provisions of S.B. 1. She plays no role in evaluating or rejecting mail-in ballot materials submitted by a voter, and there is no action that she is legally authorized to take that will ensure compliance with the district court's permanent injunction in a uniform manner. And

---

[6] Unlike arguments *against* jurisdiction, arguments in *support* of jurisdiction can be waived or forfeited. *E.g.*, *Arbraugh v. Altimus*, 26 F.4th 298, 305 (5th Cir. 2022).

the OCA-Plaintiffs do not cite any such enforcement action in their brief; instead, they posit (at 71) that the Secretary "prescribe[s] the design and content of both the [mail-ballot application] and… carrier envelope." They further claim that "Texas law empowers the Secretary to prescribe any procedures necessary to implement" curing processes if a mail-ballot is rejected. OCA-Pls.Br.72 (internal citations omitted). But, as discussed above, because the OCA-Plaintiffs are not challenging the design of the mail-ballot forms (or the specifics of the curing procedures), this is insufficient to satisfy *Ex parte Young*.

In short, because Plaintiffs have not identified any action of the Secretary (either during discovery or in briefing) that might constitute enforcement within the meaning of this Court's jurisprudence, their standing and sovereign immunity arguments cannot succeed. The district court therefore lacked jurisdiction to enjoin the Secretary.

## Conclusion

This Court should reverse the district court's order and vacate the injunction.

Respectfully submitted.

Ken Paxton
Attorney General of Texas

Brent Webster
First Assistant Attorney General

Office of the Attorney General
P.O. Box 12548 (MC 059)
Austin, Texas 78711-2548
Tel.: (512) 936-1700
Fax: (512) 474-2697

Aaron L. Nielson
Solicitor General

Lanora C. Pettit
Principal Deputy Solicitor General

/s/ Kateland R. Jackson
Kateland R. Jackson
Assistant Solicitor General
Kateland.Jackson@oag.texas.gov

Counsel for State Defendants-
Appellants

## Certificate of Service

On September 17, 2024, this brief was served via CM/ECF on all registered counsel and transmitted to the Clerk of the Court. Counsel further certifies that: (1) any required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; (2) the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1; and (3) the document has been scanned with the most recent version of Symantec Endpoint Protection and is free of viruses.

/s/ Kateland R. Jackson
KATELAND R. JACKSON

## Certificate of Compliance

This brief complies with: (1) the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 6,182 words, excluding the parts of the brief exempted by Rule 32(f); and (2) the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Equity) using Microsoft Word (the same program used to calculate the word count).

/s/ Kateland R. Jackson
KATELAND R. JACKSON