# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
August 4, 2025
Lyle W. Cayce
Clerk

No. 23-50885

United States of America; OCA-Greater Houston, League of Women Voters of Texas; REVUP-Texas,

*Plaintiffs—Appellees,*

*versus*

Ken Paxton, *Attorney General, State of Texas*; Jane Nelson, *in her official capacity as Texas Secretary of State*; State of Texas; Harris County Republican Party; Dallas County Republican Party; National Republican Senatorial Committee; National Republican Congressional Committee,

*Defendants—Appellants,*

Republican National Committee,

*Movant—Appellant.*

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-844

No. 23-50885

Before HIGGINBOTHAM, WILLETT, and HO, *Circuit Judges*.

JAMES C. HO, *Circuit Judge*:

"Mail-in ballots are not secure." *Veasey v. Perry*, 71 F. Supp. 3d 627, 676 (S.D. Tex. 2014), *aff'd in relevant part*, 830 F.3d 216, 256 (5th Cir. 2016) (en banc) (crediting district court finding that "mail-in ballot fraud is a significant threat"). *See also Tex. Democratic Party v. Abbott*, 961 F.3d 389, 414 & nn.2–3 (5th Cir. 2020) (Ho, J., concurring) (collecting examples where "courts have repeatedly found that mail-in ballots are particularly susceptible to fraud," and also citing Brennan Center for Justice amicus brief documenting "extensive problems with absentee ballot fraud"); COMM'N ON FED. ELECTION REFORM, BUILDING CONFIDENCE IN U.S. ELECTIONS v, 46 (2005) (concluding that "[a]bsentee ballots remain the largest source of potential voter fraud," and urging "States . . . to do more to prevent voter registration and absentee ballot fraud").

The Election Protection and Integrity Act of 2021 combats mail-in ballot fraud in Texas by generally requiring voters who wish to vote by mail to provide an identification number—such as a driver's license, social security, or other personal identification number—first, on their mail-in ballot applications, and second, on the mail-in ballots themselves.

We have no difficulty concluding that this ID number requirement fully complies with a provision of federal law known by the parties as the materiality provision of the 1964 Civil Rights Act. Under that provision, "[n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is *not material in determining whether such individual is qualified under State law to vote in such election*." 52 U.S.C. § 10101(a)(2)(B) (emphasis added).

No. 23-50885

The ID number requirement is obviously designed to confirm that each mail-in ballot voter is precisely who he claims he is. And that is plainly "material" to "determining whether such individual is qualified under State law to vote." *Id.*

The district court reached the opposite conclusion. So we reverse and render judgment for Defendants.

## I.

To vote in Texas, one must satisfy various eligibility requirements, including age, citizenship, residency, and mental fitness. *See* Tex. Elec. Code § 11.002(a). One must also be registered to vote. *See id.*

The voter registration application asks each applicant to affirm, under penalty of perjury, that they are eligible to vote. Additionally, since 2004, in response to the Help America Vote Act, 52 U.S.C. § 20901 *et seq.*, Texas requires each applicant to provide an identification number—preferably, a Texas Driver's license number or Personal Identification Number, which the parties refer to as a DPS number. *See* 52 U.S.C. § 21083(a)(1)(A) ("each State . . . shall implement . . . a single, uniform, official, centralized, interactive computerized statewide voter registration list . . . that . . . assigns a unique identifier to each legally registered voter in the State"). If the applicant doesn't have a DPS number, they can provide the last four digits of their Social Security Number, which the parties call SSN4.

To vote by mail in Texas, the voter must meet additional criteria and take additional steps. To begin with, Texas only permits certain people to vote by mail—the elderly, disabled, incarcerated, and those out of state during the voting period. *See* Tex. Elec. Code §§ 82.001–.004; *see also Tex. Democratic Party*, 961 F.3d at 414 (Ho, J., concurring) ("[M]ail-in voting has been the exception—and in-person voting the rule—in Texas.").

3

No. 23-50885

In addition, prior to the 2021 Act, voters who wished to vote by mail-in ballot had to also submit a signed application to their county's early voting clerk that included the applicant's name, registration address, and the basis for their eligibility to vote by mail. *Id.* § 84.002(a).

But merely requiring mail-in ballot applications to list the voter's name and registration address triggers significant election security concerns. That information is easily available to anyone who simply requests it from Texas election officials—who readily provide copies of voter files with such information upon request.

As a result, any person can request and receive that information about a registered voter, use that information to apply for a mail-in ballot, and then cast the ballot, with minimal risk of detection.

This insecurity was addressed when the Texas Legislature enacted the Election Protection and Integrity Act of 2021. The Act alters Texas's vote-by-mail procedures by requiring voters to provide ID numbers on both their mail-in ballot applications and their mail-in ballot envelopes that match the ID numbers provided on their registration applications. *See id.* §§ 84.002(a)(1-a); 87.041(b). The applicant must supply a DPS number or SSN4, or indicate that they have not received either number. *Id.* §§ 84.002(a)(1-a); 87.041(b)(d-1). If a voter fails to comply, or the numbers do not match, the early voting clerks reject the application or mail-in ballot. *Id.* § 86.001(f); § 87.041(b), (d-1), (e).

Immediately upon the enactment of the 2021 legislation, the United States, as well as a group of private plaintiffs, filed multiple lawsuits against Texas and several state officials, including the Secretary of State—alleging, among other things, that the Act violates the materiality provision of the Civil Rights Act of 1964.

No. 23-50885

The United States challenges only §§ 86.001(f) and 87.041(b)(8) of the Act—the provisions that direct early voting clerks to reject mail-in ballot applications and mail-in ballots that fail the number-matching requirements. The private plaintiffs challenge the Act's entire framework. The district court consolidated the suits, and several Republican Party committees intervened as defendants.

Texas moved to dismiss the complaints, arguing that the private plaintiffs' claims were barred by sovereign immunity. Texas also contended that all of the plaintiffs lack standing to bring these claims because their alleged harms are not fairly traceable to the Secretary of State nor redressable.

The district court rejected the State's motion to dismiss, holding that all of the plaintiffs have standing, and that sovereign immunity does not preclude the private plaintiffs' claims. *See La Union del Pueblo Entero v. Abbott*, 604 F. Supp. 3d 512, 520–32 (W.D. Tex. 2022); *La Union del Pueblo Entero v. Abbott*, 618 F. Supp. 3d 388, 400–08, 427–30 (W.D. Tex. 2022). Texas appealed the denial of sovereign immunity, and that matter remains before this court. *See LUPE v. Scott*, No. 22-50775; *Mi Familia Vota v. Scott*, No. 22-50777; *OCA-Greater Hou. v. Nelson*, No. 22-50778.

Notwithstanding the pending appeal, the district court asserted jurisdiction over the remaining claims and proceeded with the litigation. The parties conducted two years of discovery, and each moved for summary judgment on the materiality provision challenges.

The district court entered summary judgment for all of the plaintiffs, and enjoined Texas from enforcing the number-matching requirements. *See La Union del Pueblo Entero v. Abbott*, 705 F. Supp. 3d 725, 767–68 (W.D. Tex. 2023). In doing so, the district court rejected the State's contention that the materiality provision does not apply because the Act does not impact voter

eligibility. *Id.* at 755–60. The district court then held that "it is self-evident that a voter's ID number is not material to her eligibility to vote under Texas law" because "a voter's DPS number or SSN4 cannot offer any information about a voter's substantive eligibility to vote." *Id.* at 751 (cleaned up).

Texas and intervenors filed this appeal.

## II.

Before we turn to the validity of the Act, we must determine that there are no jurisdictional issues that prevent the district court, and thus our court, from reaching the merits. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93–95 (1998).

Texas raises two jurisdictional challenges. First, with respect to the private plaintiffs, Texas argues that the district court lacked jurisdiction because the State has appealed the denial of sovereign immunity, and that appeal remains pending before our court. We agree. "It is the general rule that a district court is divested of jurisdiction upon the filing of the notice of appeal with respect to any matters involved in the appeal." *Alice L. v. Dusek*, 492 F.3d 563, 564 (5th Cir. 2007) (citation omitted). Here, the Secretary of State has appealed the denial of her sovereign immunity defense. That defense was raised on all claims brought by the private plaintiffs, and the appeal remains before this court. Accordingly, the district court lost—and still lacks—jurisdiction over claims filed by the private plaintiffs against the Secretary of State.

Next, Texas argues that the plaintiffs lack standing to sue because "traceability and redressability are absent." But this is foreclosed by circuit precedent. As we've previously held, "the facial invalidity of a Texas election statute is, without question, fairly traceable to and redressable by the . . . Secretary of State, who serves as the chief election officer of the

state." *OCA-Greater Hou. v. Texas*, 867 F.3d 604, 613 (5th Cir. 2017) (cleaned up).

So there is no jurisdictional bar to our court reaching the merits of this suit and determining the validity of the 2021 Act in light of federal law.

### III.

The materiality provision of the 1964 Civil Rights Act forbids denying the right of any individual to vote in any election "because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is *not material in determining whether such individual is qualified under State law to vote in such election*." 52 U.S.C. § 10101(a)(2) (emphasis added).

Accepting the plaintiffs' claims that the 2021 Act violates the materiality provision would bring us in direct conflict with our colleagues on the Third Circuit.

The Third Circuit has held that the materiality provision applies only to voter qualification determinations—and not mail-in balloting. To quote, "the phrase 'record or paper relating to application, registration, or other act requisite to voting' is best read to refer to paperwork used in the voter qualification process. It does not cover records or papers provided during the vote-casting stage." *Pa. State Conf. of NAACP Branches v. Sec'y Commonwealth of Pa.*, 97 F.4th 120, 133 (3rd Cir. 2024) (cleaned up).

The analysis of our distinguished colleagues on the Third Circuit is persuasive. And even if Congress were to amend the text of the materiality provision to foreclose the Third Circuit's reading, we would still reject the plaintiffs' claims, for one simple reason: The 2021 Act easily complies with the materiality provision in any event.

Our court recently articulated a two-step framework for assessing materiality under § 10101(a)(2). *See Vote.Org v. Callanen*, 89 F.4th 459, 485 (5th Cir. 2023). First, "there cannot be a total disconnect between the State's announced interests and the statute enacted." *Id.* Second, we consider whether, under the totality of circumstances, the provision "meaningfully corresponds" to "legitimate interests the State claims to have been advancing." *Id.* (cleaned up). "By 'meaningful' and 'legitimate' we mean that the measure advances that interest without imposing pointless burdens." *Id.* "Specifically, we ask: (1) how substantial is the State's interest in the 'requisite to voting' in which some 'error or omission' exists; (2) does that interest relate to 'determining whether such individual is qualified under State law to vote in such election'; and (3) under the totality of the circumstances, what is the strength of the connection between the State's interest and the measure, i.e., how well does the measure advance the interest?" *Id.*

We have no difficulty concluding that the 2021 Act easily satisfies this two-step test. The number-matching requirements are obviously designed to confirm that every mail-in voter is indeed who he claims he is. And that is plainly material to determining whether an individual is qualified to vote.

So there is no "disconnect between the State's announced interests and the statute enacted." *Id.* And the ID number requirement "meaningfully corresponds" to the State's legitimate interests in preventing the scourge of mail-in ballot fraud. *Id.*

Plaintiffs insist that there isn't enough evidence to show that the ID number requirement would meaningfully reduce voter fraud. Texas strongly disagrees.

Our precedents compel us to side with Texas. We have made clear that States have a legitimate interest in combating voter fraud, and thus enjoy

No. 23-50885

"considerable discretion in deciding what is an adequate level of effectiveness to serve [their] important interests in voter integrity." *Id.*

\* \* \*

We reverse and render judgment for Defendants.